**EXHIBIT A**

8-1

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

# OMNIBUS CALENDAR ASSIGNMENT FORM

SUPERIOR COURT

(X) PROVIDENCE/BRISTOL ( ) KENT ( ) WASHINGTON ( ) NEWPORT

The R.J. Carbone Company

VS

Timothy J. Regan et al.

CASE NO. 08-4942

**REQUESTED CALENDAR ASSIGNMENT**

TRIAL CALENDAR

(X) J JURY TRIAL ( ) N NON-JURY TRIAL

**FORMAL SPECIAL CAUSE CALENDAR**

( ) AGA AGENCY APPEAL
( ) AOD ASSESSMENT OF DAMAGES
( ) CNA CONFIRM ARBITRATION
( ) DEJ DECLARATORY JUDGMENT
( ) EOJ ENTRY of JUDGMENT
( ) FFR FIRST & FINAL REPORT
( ) FRR FORCLOSURE of RIGHT of REDEMPTION
( ) FRS FRIENDLY SUIT
( ) OPC ORAL PROOF OF CLAIM
( ) MMN MANDATORY INJUNCTION
( ) MEL MECHANIC'S LIEN
( ) MAT MOTION TO ATTACH
( ) PRT PARTITION PROCEEDINGS
( ) PAT PETITION TO APPOINT TEMPORARY RECIEVER
( ) OTH OTHER FSC MATTER
( ) PEN PETITION TO ENFORCE
( ) PIN PETITION FOR INSTRUCTIONS
( ) PRC PETITION TO RECLAIM
( ) PES PETITION TO SELL
(X) PPI PRELIMINARY INJUCTION
( ) PCL PROOF OF CLAIM
( ) RCP RECEIVERSHIP PROCEEDINGS
( ) SPP SUPPLEMENTARY PROCEEDINGS
(X) TPR TEMPORARY RESTRAINING ORDER
( ) TIP TITLE PROCEEDINGS
( ) TSP TRUSTEE PROCEEDINGS
( ) VAR VACATE ARBITRATION
( ) WOM WRIT OF MANDAMUS
( ) WOR WRIT OF REPLEVIN

**DISPOSITIVE MOTION CALENDAR**

( ) MTD MOTION TO DISMISS, UNDER RULE 12
( ) MJP MOTION FOR ENTRY OF JUDGMENT ON PLEADINGS
( ) MPS MOTION FOR PARTIAL SUMMARY JUDGMENT
( ) MSG MOTION FOR SUMMARY JUDGMENT
( ) MOT OTHER DISPOSITIVE MOTION

HEARING DATE 8-1-08 FSC/MOTION CLERK [signature] DATE 7-29-08

**SPECIAL MASTER CALENDAR**

( ) OTH OTHER MATTER:

HEARING DATE: CLERK:

**METHOD OF ASSIGNMENT**

( ) MOTION TO ASSIGN
( ) STIPULATION TO ASSIGN
( ) COURT ORDER PURSUANT TO TEMPORARY EX PARTE ORDER

BASED ON METHOD OF ASSIGNMENT STATE ANY RELEVANT INFORMATION BELOW

ATTORNEYS SIGNATURES [signature] DATE 7/29/08

DATE/TIME STAMP

PLAINTIFFS ~~DEFENDANTS~~

PRINT NAME STACEY P. NAKASIAN

JUL 29 P 2:51

SR-11 (REV. 5/05)

WHITE/COURT YELLOW/PLAINTIFFS ATTORNEY PINK/DEFENDANTS ATTORNEY GOLD/CALENDAR CLERK

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

THE R.J. CARBONE COMPANY,

Plaintiff,

vs.

C.A. NO. 08-4942

TIMOTHY J. REGAN &
ASSOCIATED WHOLESALE
FLORIST, INC. d/b/a Associated Wholesale
Florist of New Jersey,

Defendants.

**FIRST AMENDED VERIFIED COMPLAINT**

Plaintiff, The R. J. Carbone Company ("Carbone") brings this action for injunctive relief and for damages and alleges as follows.

**Parties**

1. Plaintiff Carbone is a Rhode Island corporation with its principal place of business at One Goddard Drive, Cranston, Rhode Island.

2. Upon information and belief, defendant Timothy J. Regan ("Regan") resides at 2608 Route 144, Fair Haven, Vermont.

3. Upon information and belief, defendant Associated Wholesale Florist, Inc. d/b/a Associated Wholesale Florist of New Jersey ("Associated") is a New Jersey corporation, with its principal place of business at 320 West Passaic Street, Rochelle Park, New Jersey..

Rec'vd 7/29/08 1:56

**Jurisdiction**

4. This Court has subject matter jurisdiction over this matter pursuant to R.I. Gen. Laws §§ 8-2-13 and 8-2-14 because Carbone seeks equitable relief, and the amount in controversy exceeds $10,000.

5. This Court has personal jurisdiction over Regan because he was employed by a company domiciled in Rhode Island, entered into an employment agreement in Rhode Island and because Regan's employment with Carbone required him to travel to Rhode Island periodically.

6. This Court has personal jurisdiction over Associated because it committed tortious acts outside of Rhode Island causing injury to person or property within Rhode Island.

7. Venue is proper pursuant to R.I. Gen. Laws § 9-4-4 as Carbone is based in Cranston, Rhode Island, part of Providence County, and as the defendants are nonresident parties.

**Facts Common to All Counts**

A. **Carbone's Business**

8. Carbone is a wholesale florist that has been operating since 1953. It is a family-run business with approximately 140 full and part-time employees.

9. The wholesale florist supply business is extremely competitive, and Carbone's sourcing and marketing information systems contribute to its position as a leading supplier of floral products in New England and New York.

10. The wholesale florist market is characterized by intense competition for customers and favorable supply agreements with floral brokers, growers, manufacturers and importers. Although the identity of brokers and growers are generally known in the industry,

the purchasing contracts, sourcing and marketing strategies are all highly confidential. This is due primarily to the fact that floral products are time-sensitive and styles change rapidly.

11. Carbone actively protects its confidential information, including its customer information, its marketing strategies, and the pricing and terms of each contract. It does so by, among other steps, requiring certain of its key employees, as a condition of employment with Carbone, to execute an agreement not to disclose confidential information and not to compete with Carbone for a period of one year after employment termination within the geographic area in which Carbone competes.

## B. Regan's Employment with Carbone

12. Defendant Regan joined Carbone on or about May 31, 1988, as a salesperson. He worked out of his home and would submit all sales orders to Carbone's Cranston facility.

13. On joining Carbone, Regan executed an agreement (the "Agreement") upon acceptance of Carbone's offer of employment and fringe benefits package. A true copy of the Agreement is attached hereto as Exhibit A.

14. The Agreement provides, in pertinent part, that:

> 1. The Employee will not during the term of his or her employment or at any time thereafter divulge to any third party any trade secret of the Company or the names of any customers or suppliers of the Company or the methods of obtaining business or obtaining products used by the Company, or any other information which is proprietary to the Company, nor will the Employee solicit, induce or otherwise encourage any employee of the Company to leave the employ of the Company.

> 2. So long as the Employee is employed by the Company and for a period of one (1) year after the termination of such employment for any reason whatsoever, the Employee will not, within a radius of one hundred (100) miles of Hartford, Connecticut, render any service to, or have any interest or participation in, directly or indirectly, any corporation, partnership or business selling any products sold by, or in any manner substantially competing with, the business of the Company.
>
> 3. The Employee recognizes that in the event of the breach of his or her agreements set forth above, damages would be difficult, if not impossible, to ascertain, and that accordingly, the Company will have the right to an injunction against the Employee or other appropriate equitable relief issued by a proper court in order to prevent any further breach hereof, in addition to any other right or remedy provided by law.

(Id.)

15. Carbone trained Regan to perform a variety of tasks, introduced him to Carbone's product line and provided him with lists of active/prospective customers.

16. Regan's employment responsibilities at Carbone included selling floral supplies and Christmas greens to retail florists, greenhouses and garden shops.

17. Regan's geographic sales territory was all of Connecticut west of Groton, Connecticut and the eastern portions of New York.

18. As a sales representative, without limitation, Regan (a) was intimately familiar with Carbone's pricing strategy; (b) was fully aware of Carbone's active and prospective customers and their respective product preferences and Carbone's pricing arrangements with those customers; (c) negotiated confidential sales arrangements with those customers; and (d) had access to and used confidential marketing and purchasing information.

**C. Carbone's Competition**

19. Associated competes directly with Carbone. It sells to and solicits some of the same customers as does Carbone in Connecticut and New York.

20. Carbone believes that it has an advantage over Associated by reason of its confidential customer and marketing strategies. This highly confidential information is extremely valuable to Carbone and critical to its business. It would be of significant value to Associated, which competes directly with Carbone in its purchasing as well as its sales.

**D. Regan's Termination**

21. On or about July 19, 2008, Regan verbally notified Thomas J. Carbone, Vice President of The R.J. Carbone Company, that he was considering retiring. Tom Carbone told Regan to take some time off to think about his decision.

22. On July 21, 2008, Regan left his company vehicle at a customer's business in Connecticut and phoned Carbone's sales manager, Stuart Cohen, to inform him where the vehicle was located and to tell him that he was quitting. At no point did Regan divulge his intent to work for a Carbone business competitor.

23. By overnight letter dated July 21, 2008, Carbone reminded Regan of his ongoing obligations with respect to the Agreement and demanded the return of all materials related to his employment, including, but not limited to, all sales reports, customer lists, price lists, catalogs and product samples by July 24, 2008.

24. No materials described in paragraph 23 herein were returned by Regan by July 24, 2008, or at any other time thereafter.

25. During the week of July 21, 2008, nine (9) different Carbone customers located in Connecticut notified Carbone that Regan was soliciting business from them on behalf of Associated.

26. All of Carbone's customers described in paragraph 25 herein are located within one hundred (100) miles of Hartford, Connecticut.

27. By overnight letter dated July 22, 2008, Carbone sent Associated a letter indicating that Regan was bound by the Agreement not to compete with Carbone. Carbone also informed Associated about the non-disclosure covenant of the Agreement as described in paragraph 14 herein.

28. On or about July 23, 2008, Steve P. Carbone, Vice President of The R.J. Carbone Company, telephoned Associated and requested to speak to Regan. Steven Carbone was promptly connected to Regan, but did not speak with him.

29. On the same day, Steve Carbone called Tom Pavlin, General Manager and part owner of Associated, who confirmed that Regan was now working for Associated.

30. On information and belief, Regan has begun selling products for Associated within one hundred (100) miles of Hartford, Connecticut; has communicated and used Carbone's secret and confidential business information in connection with his directly competitive activities for and on behalf of Associated; and has directly and indirectly interfered and attempted to interfere with Carbone's customers, business, trade and patronage. As such, Regan has caused and will cause irreparable damage to Carbone

31. On information and belief, Regan and Associated are unlawfully competing with Carbone. Moreover, on information and belief, Regan has or will use and disclose Carbone's confidential and sensitive business information, including, without limitation,

Carbone's trade secrets, names of customers, methods of obtaining business or obtaining products used by Carbone, or any other information which is proprietary to Carbone including, but not limited to, its confidential sales arrangements with its customers (including customer preferences) and sales data.

**COUNT I**
**(Breach of Contract)**

32. Carbone realleges and incorporates by reference the allegations contained in paragraphs 1 through 31 as if fully set forth herein.

33. Upon information and belief, Regan has breached his Agreement with Carbone by directly competing with Carbone within one (1) year of leaving the employment of Carbone.

34. Upon information and belief, Regan has or will breach his Agreement with Carbone by disclosing or using Carbone's secret and confidential business information.

35. Upon information and belief, Regan has or will breach his Agreement with Carbone by interfering or attempting to interfere with Carbone's customers, trade, business and patronage.

36. Carbone has been damaged thereby.

**COUNT II**
**(Misappropriation of Confidential Information)**

37. Carbone realleges and incorporates by reference the allegations contained in paragraphs 1 through 36 as if fully set forth herein.

38. Upon information and belief, defendants have or will knowingly, willfully and maliciously misappropriate and use Carbone's proprietary and confidential business information.

39. As a direct and proximate result, Carbone has suffered damages.

**COUNT III**
**(Conversion)**

40. Carbone realleges and incorporates by reference the allegations contained in paragraphs 1 through 39 as if fully set forth herein.

41. Upon information and belief, defendants have or will knowingly, willfully and maliciously convert to their own use Carbone's sensitive and confidential business information.

42. As a direct and proximate result, Carbone has suffered damages.

**COUNT IV**
**(Violation of R.I. Gen. Laws §§ 6-41-1 et seq.)**

43. Carbone realleges and incorporates by reference the allegations contained in paragraphs 1 through 42 as if fully set forth herein.

44. Defendants have violated R.I. Gen. Laws §§ 6-41-1, *et seq.* in that Regan and/or Associated has, upon information and belief, disclosed or used Carbone's trade secrets in violation of Rhode Island law.

45. Defendants' actions constitute willful and malicious misappropriation of Carbone's trade secrets.

46. As a direct and proximate result, Carbone has suffered damages.

**COUNT V**
**(Tortious Interference with Contract &**
**Prospective Business Relations)**

47. Carbone realleges and incorporates by reference the allegations contained in paragraphs 1 through 46 as if fully set forth herein.

48. Associated has, upon information and belief, knowingly, willfully and maliciously interfered with the contractual relations between Carbone and Regan by inducing him to breach his contract with Carbone.

49. As a direct and proximate result, Carbone has suffered damages.

**COUNT VI**
**(Intentional Interference with Prospective Economic Advantage)**

50. Carbone realleges and incorporates by reference the allegations contained in paragraphs 1 through 49 as if fully set forth herein.

51. Defendants have, upon information and belief, knowingly, willfully and maliciously interfered with Carbone's prospective economic advantage by soliciting and selling to Carbone's customers and prospective customers.

52. As a direct and proximate result, Carbone has suffered damages.

**COUNT VII**
**(Violation of Conn. Gen. Stat. § 42-110a et seq.)**

53. Carbone realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 as if fully set forth herein.

54. Upon information and belief, defendants have engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade and commerce by soliciting and selling to Carbone's customers and prospective customers.

55. Upon information and belief, Regan has engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade and commerce by disclosing or using Carbone's proprietary and confidential business information.

56. As a direct and proximate result, Carbone has suffered damages that are ascertainable.

**COUNT VIII**
**(Injunctive Relief)**

57. Carbone realleges and incorporates by reference the allegations contained in paragraphs 1 through 56 as if fully set forth herein.

58. Defendants' actual or threatened misappropriation of Carbone's confidential and sensitive business information should be enjoined pursuant to the Agreement, R.I. Gen. Laws § 6-41-2 and Super. Ct. R. Civ. P. 65.

59. Defendants' unlawful acts have and, unless and until they are temporarily restrained and/or preliminarily enjoined by this Court, will continue to irreparably injure Carbone in the following ways:

(a) Regan will continue to violate the provisions of his Agreement with Carbone;

(b) Defendants will continue to misappropriate for their own use Carbone's proprietary and confidential business information;

(c) Defendants will continue to convert and use Carbone's proprietary and confidential business information for their advantage, to the disadvantage of Carbone;

(d) Defendants will continue to violate R.I. Gen. Laws §§ 6-41-1 *et seq.* by disclosing and using Carbone's trade secrets;

(e) Defendants will continue to violate Conn. Gen. Stat. § 42-110a *et seq.* by competing unfairly and deceptively against Carbone;

(f) Defendants will continue to interfere with Carbone's prospective economic advantage; and

(g) Carbone will be in jeopardy of losing its strategic advantage over Associated and other competitors and will suffer incalculable losses of revenue as a direct result.

60. Carbone has no adequate remedy at law.

**Request for Relief**

**WHEREFORE**, plaintiff The R. J. Carbone Company requests that this Court:

A. Temporarily restrain and thereafter preliminarily and permanently enjoin defendants and all others acting for or on their behalf or in concert with them from disclosing and using Carbone's proprietary and confidential information and trade secrets;

B. Temporarily restrain and thereafter preliminarily enjoin Regan from competing with Carbone from selling and attempting to sell floral products to Carbone's customers and prospective customers within a radius of one hundred (100) miles of Hartford, Connecticut, render any service to, or have any interest or participation in, directly or indirectly, any corporation, partnership or business selling any products sold by, or in any manner substantially competing with, the business of Carbone, for a period of one year from the date of termination of his employment, up to and including July 21, 2009;

C. Temporarily restrain and thereafter preliminarily enjoy Regan and all others acting for or on his behalf or in concert with him from violating the terms of the Agreement;

D. Temporarily restrain and thereafter preliminarily enjoy Regan and all others acting for or on his behalf or in concert with him from using all materials related to his past employment with Carbone;

E. Order Regan and all others acting for or on his behalf or in concert with him to immediately return to Carbone all materials related to Regan's past employment with Carbone including, but not limited to, all sales reports (includes, without limitation, all weekly, seasonal and annual sales reports), customer lists, price lists (includes, without limitation, the Salesman Catalogue Case), catalogs, product samples, and supply order forms (includes, without limitation, prior years' completed and blank Christmas greens order forms);

F. Award Carbone compensatory and punitive damages plus costs, interest and attorneys' fees; and

G. Grant Carbone all the legal and equitable relief the Court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL**

THE R. J. CARBONE COMPANY

By its Attorneys,

Stacey P. Nakasian, Esq. (#5069)
Duffy, Sweeney & Scott, Ltd.
One Turks Head Place
Providence, Rhode Island 02903
(401) 455-0700
(401) 455-0701 (Fax)

Dated: July 29, 2008

**VERIFICATION**

I, Thomas J. Carbone of The R. J. Carbone Company, hereby certify that I am Vice-President of The R. J. Carbone Company, that I am authorized to make this Verification Affidavit on behalf of The R. J. Carbone Company, that I have read the foregoing First Amended Verified Complaint, and know the contents thereof, and that the allegations contained in the First Amended Verified Complaint are true and correct based on my knowledge and information, except as to those allegations alleged upon information and belief, and I believe those allegations to be true.

Thomas J. Carbone

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

SUBSCRIBED AND SWORN TO before me this 29th day of July 2008.

Notary Public

AGREEMENT

THIS AGREEMENT is made the 26th day of May, 1988, in favor of THE R. J. CARBONE CO., a Rhode Island corporation (the "Company"), by Timothy J. Regan, of Middlebury, Connecticut, (the "Employee"), in connection with the following facts:

(a) The Company is about to employ the Employee or has employed the Employee and is about to promote the Employee to a position involving new duties and responsibilities and increased compensation to the Employee.

(b) The Company will be devoting significant time and expense to the training of the Employee in the performance of his or her duties with the Company, and the Employee may in the course of such training or thereafter have access to certain confidential information relating to the Company and its methods of transacting business.

(c) The Employee is willing to enter into certain agreements with the Company in order to maintain the confidentiality of such information and to provide for related matters.

NOW, THEREFORE, in consideration of the Employee's employment by the Company, the Employee hereby agrees with the Company as follows:

1. The Employee will not during the term of his or her employment or at any time thereafter divulge to any third party any trade secret of the Company or the names of any customers or suppliers of the Company or the methods of obtaining business or obtaining products used by the Company, or any other information which is proprietary to the Company, nor will the Employee solicit, induce or otherwise encourage any employee of the Company to leave the employ of the Company.

2. So long as the Employee is employed by the Company and for a period of one (1) year after the termination of such employment for any reason whatsoever, the Employee will not, within a radius of one hundred (100) miles of Hartford, Connecticut, render any service to, or have any interest or participation in, directly or indirectly, any corporation, partnership or business selling any products sold by, or in any manner substantially competing with, the business of the Company.

3. The Employee recognizes that in the event of the breach of his or her agreements set forth above, damages would be difficult, if not impossible, to ascertain, and that accordingly, the Company will have the right to an injunction against the Employee or other appropriate equitable relief issued by a proper court in order to prevent any further breach hereof, in addition to any other right or remedy provided by law.

4. The invalidity of any paragraph or any part of any paragraph of this agreement shall not invalidate the remaining portion of this agreement.

5. This agreement shall be binding upon the Employee and the Employee's successors and assigns.

IN WITNESS WHEREOF, the employee has executed this agreement as of the date first referred to above.

WITNESS: [signature] [signature]
EMPLOYEE

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

THE R.J. CARBONE COMPANY,

Plaintiff,

vs.

C.A. NO. 08-4942

TIMOTHY J. REGAN & ASSOCIATED WHOLESALE FLORIST, INC. d/b/a Associated Wholesale Florist of New Jersey,

Defendants.

**PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff The R.J. Carbone Company, Inc. ("Carbone") hereby moves, pursuant to Super. Ct. R. Civ. P. 65 and R.I. Gen. Laws § 6-41-2, for an order temporarily restraining and preliminarily and permanently enjoining defendants Timothy J. Regan ("Regan") and Associated Wholesale Florist, Inc. d/b/a Associated Wholesale Florist of New Jersey ("Associated") from using, divulging and/or conveying to others Carbone's secret and confidential business information and trade secrets.

As requested in Carbone's First Amended Verified Complaint submitted herewith, plaintiff Carbone further moves for an order temporarily restraining and preliminarily enjoining defendant Regan from further breach of his covenants with plaintiff Carbone not to render any service to or have any interest or participation in a competitor of plaintiff Carbone, including, but not limited to, defendant Associated, from competing with Carbone, and from interfering or attempting to interfere with Carbone's customers, trade, business and/or patronage as defined in the non-compete Agreement fully executed between Carbone and

Rec'd 7/29/08 1:56

Regan on May 26, 1988. The aforementioned non-compete Agreement is annexed to the First Amended Verified Complaint as Exhibit A.

In support of its motion, Carbone submits herewith its First Amended Verified Complaint and the accompanying Memorandum of Law.

Respectfully submitted,

THE R. J. CARBONE COMPANY

By its Attorneys,

Stacey P. Nakasian, Esq. (#5069)
Duffy, Sweeney & Scott, Ltd.
One Turks Head Place
Providence, Rhode Island 02903
(401) 455-0700
(401) 455-0701 (Fax)

Dated: July 29, 2008

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

THE R.J. CARBONE COMPANY,

Plaintiff,

vs.

C.A. NO. 08-4942

TIMOTHY J. REGAN &
ASSOCIATED WHOLESALE
FLORIST, INC. d/b/a Associated Wholesale
Florist of New Jersey,

Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff The R.J. Carbone Company, Inc. ("Carbone") submits this Memorandum in Support of its Application for Temporary Restraining Order and Motion for Preliminary Injunction.

## FACTS

Carbone is a Rhode Island business corporation based principally in Cranston, Rhode Island. Carbone is a wholesale florist, which has been operating since 1953. It is a family-run business with approximately 140 full and part-time employees.

The wholesale florist market is characterized by intense competition for customers and favorable supply agreements with floral brokers, growers, manufacturers and importers. Although the identity of brokers and growers are generally known in the industry, the

Rec'd 7/29/08

purchasing contracts, sourcing and marketing strategies are all highly confidential. This is due primarily to the fact that floral products are time-sensitive and styles change rapidly.

Carbone actively protects its confidential information, its marketing strategies and the identity, pricing and terms of its contracts with its customers. It does so by, among other steps, requiring certain of its key employees, as a condition of employment, to execute an agreement not to disclose confidential information and not to compete with Carbone for a period of one year after employment termination within the geographic area in which Carbone competes.

On or about May 31, 1988, Carbone hired defendant Timothy J. Regan ("Regan") as a salesman. Regan's duties included floral related sales to Carbone's retail florist, garden center and farm stand customers located in Connecticut, throughout New England and parts of New York. During his employment at Carbone, Regan became intimately familiar with these customers, their preferences and usual orders as well as with Carbone's pricing strategy and pricing arrangements with those customers. Regan had access to and used confidential marketing and purchasing information.

On joining Carbone, Regan executed an employee Agreement (the "Agreement"), a true copy of which is attached to the First Amended Verified Complaint as Exhibit A. The Agreement provides in pertinent part:

> 1. The Employee will not during the term of his or her employment or at any time thereafter divulge to any third party any trade secret of the Company or the names of any customers or suppliers of the Company or the methods of obtaining business or obtaining products used by the Company, or any other information which is proprietary to the Company, nor will the Employee solicit, induce or otherwise encourage any employee of the Company to leave the employ of the Company.
>
> 2. So long as the Employee is employed by the Company and for a period of one (1) year after the termination of such employment for any reason whatsoever, the Employee will not, within a radius of one hundred (100) miles of Hartford, Connecticut, render any service to, or have any interest or participation in, directly or indirectly, any corporation, partnership or business selling any products sold by, or in any manner substantially competing with, the business of the Company.
>
> 3. The Employee recognizes that in the event of the breach of his or her agreements set forth above, damages would be difficult, if not impossible, to ascertain, and that accordingly, the Company will have the right to an injunction against the Employee or other appropriate equitable relief issued by a proper court in order to prevent any further breach hereof, in addition to any other right or remedy provided by law.

(Exhibit A.)

Carbone trained Regan to perform a variety of tasks, introduced him to Carbone's product line and provided him with lists of active/prospective customers. Regan's employment responsibilities at Carbone included selling floral supplies and Christmas greens to retail florists, greenhouses and garden shops. Regan's geographic sales territory was all of Connecticut west of Groton, Connecticut and the eastern portions of New York.

As a sales representative, without limitation, Regan (a) was intimately familiar with Carbone's pricing strategy; (b) was fully aware of Carbone's active and prospective customers and their respective product preferences and Carbone's pricing arrangements with

those customers; (c) negotiated confidential sales arrangements with those customers; and (d) had access to and used confidential marketing and purchasing information.

On or about July 19, 2008, Regan verbally notified Thomas J. Carbone, Vice President of The R.J. Carbone Company, that he was considering retiring. Thomas Carbone told Regan to take some time off to think about his decision.

On July 21, 2008, Regan left his company vehicle at a customer's business in Connecticut and phoned Carbone's sales manager, Stuart Cohen, to inform him where the vehicle was located and to tell him that he was quitting. At no time did Regan divulge his intent to work for a Carbone business competitor.

By overnight letter dated July 21, 2008, Carbone reminded Regan of his ongoing obligations with respect to the Agreement and demanded the return of all materials related to his employment, including, but not limited to, all sales reports, customer lists, price lists, catalogs and product samples by July 24, 2008. No materials were ever returned.

During the week of July 21, 2008, nine (9) different Carbone customers located in Connecticut notified Carbone that Regan was soliciting business from them on behalf of Associated. All of these customers are located within one hundred (100) miles of Hartford, Connecticut.

By overnight letter dated July 22, 2008, Carbone sent Associated a letter indicating that Regan was bound by the Agreement not to compete with Carbone. Carbone also informed Associated about the non-disclosure covenant of the Agreement as described above.

On or about July 23, 2008, Stephen P. Carbone, Vice President of The R.J. Carbone

Company, telephoned Associated and requested to speak to Regan. Stephen Carbone was promptly connected to Regan, but did not speak with him. On the same day, Stephen Carbone called Tom Pavin, General Manager and part owner of Associated, who confirmed that Regan was now working for Associated.

Associated is a direct competitor of Carbone, selling and soliciting to some of the same customers as does Carbone throughout most of Connecticut. Carbone believes that it has an advantage over Associated by reason of its confidential relationships and marketing strategies.

As an Associated employee, Regan has or will use and disclose to Associated, Carbone's proprietary and confidential business information. On information and belief, Regan has begun selling products for Associated within one hundred (100) miles of Hartford, Connecticut; has communicated and used Carbone's proprietary and confidential business information in connection with his directly competitive activities for and on behalf of Associated; and has directly and indirectly interfered and attempted to interfere with Carbone's customers, business, trade and patronage. As such, Regan has caused and will cause irreparable damage to Carbone

On information and belief, Regan and Associated are unlawfully competing with Carbone. Moreover, on information and belief, Regan has or will use and disclose Carbone's confidential and sensitive business information, including, without limitation, Carbone's trade secrets, names of customers, methods of obtaining business or obtaining products used by Carbone, or any other information which is proprietary to Carbone including, but not limited to, its pricing structure, its confidential sales arrangements with its customers (including customer preferences) and sales data.

**ARGUMENT**

Temporary and permanent injunctive relief is appropriate to restrain the continued use or threatened use of misappropriated trade secrets. *See, e.g.,* R.I. Gen. Laws § 6-41-2; *Nestle Food Co. v. Miller*, 836 F.Supp. 69, 78 (D.R.I. 1993); *J.B. Prata, Ltd. v. Bichay*, 468 A.2d 266, 268 (R.I. 1983). Restraining orders and injunctions are appropriate to restrain the continued violation of a covenant not to compete. *Rego Displays, Inc. v. Fournier*, 119 R.I. 469, 379 A.2d 1098 (1977).

Rhode Island courts consider four factors in determining whether to issue injunctive relief: (1) the likelihood of success on the merits; (2) irreparable harm; (3) the balance of the equities; and (4) the need to preserve the status quo. *Leone v. Town of New Shoreham*, 534 A.2d 871, 873 (R.I. 1987). Carbone need only show a "reasonable probability rather than a certainty of ultimate success on a final hearing" to be entitled to preliminary injunctive relief. *Coolbeth v. Berberian*, 112 R.I. 558, 556, 313 A.2d 656, 660 (1974).

**A. Carbone is Likely to Succeed on the Merits**

Carbone is likely to succeed on the merits of its claims because the Agreement is valid and enforceable and Regan has violated the Agreement in several respects.

**1. The Agreement is Valid and Enforceable**

Rhode Island has consistently recognized that non-competition agreements that serve a legitimate purpose are valid so long as they are reasonable under the circumstances. *Durapin, Inc. v. American Products, Inc.*, 559 A.2d 1051, 1053 (R.I. 1989); *Mento v. Lanni*, 106 R.I. 683, 262 A.2d 839 (1970); *Koppers Products Co. v. Readio*, 60 R.I. 207, 197 A. 441 (1938); *Oakdale Mfg. Co. v. Garst*, 18 R.I. 484, 28 A. 973 (1894); *French v. Parker*, 16 R.I. 219, 14 A. 870 (1888). Whether a restrictive covenant is reasonable is ultimately a question of law to

be determined by the court. *Durapin*, 559 A.2d at 1053; *Nestle*, 836 F.Supp. at 73. The party seeking to enforce the non-competition provision must show that:

> (1) the provision is ancillary to an otherwise valid transaction or relationship;
>
> (2) the provision is supported by adequate consideration; and
>
> (3) there is a legitimate interest that the provision is designed to protect.

*Durapin*, 559 A.2d at 1053. Carbone satisfies each of these factors.

First, the Agreement is not only ancillary to, it is an integral part of, Regan's employment with Carbone. Regan would not have been provided access to Carbone's sales and other confidential information had he not signed the Agreement.

Second, the provision is supported by adequate consideration: Regan's employment, including salary and fringe benefits, as well as his introduction to Carbone's business, all adequately support Regan's agreement not to compete and to not disclose any of Carbone's confidential and proprietary information. *See Nestle,* 836 F. Supp. at 77 (even if there was no consideration other than allowing an employee to continue employment with all of the associated benefits, such continuation of employment constitutes adequate consideration for non-competition agreement).

Third, the Agreement is plainly designed to protect Carbone's legitimate business interests. Those interests include protecting existing customer arrangements with whom Regan may have developed goodwill on behalf of Carbone during his employment with Carbone. The Agreement also protects the confidential business information, including customer lists, customer preferences and other trade secret information, imparted to Regan by Carbone as part of his employment. These interests are all legitimate business interests that

are properly and reasonably protected by the Agreement. *See, e.g., Rego Displays*, 379 A.2d at 1102; *Callahan v. Rhode Island Oil Co.*, 103 R.I. 656, 240 A.2d 411, 413 (1968); *Oakdale Manufacturing*, 18 R.I. at 490; *French*, 16 R.I. at 219.

The Agreement is also reasonable in time and scope. *Durapin*, 559 A.2d at 1053. The Agreement is less restrictive than the entire geographic customer base of Carbone – the Agreement only restricts Regan from competing one hundred (100) miles of Hartford, Connecticut. *See Mento,* 262 A.2d at 840; *French*, 14 A. at 873. Moreover, one year is not an unreasonable period of time to restrict competition, particularly where Carbone has existing annual standing orders with customers, the pricing and particulars of which Regan was privy to while an Carbone employee. *Nestle*, 836 F. Supp. at 75; *Rego Displays,* 379 A.2d at 1102-03. This is particularly obvious, given Regan's recent solicitation of Carbone's present customers throughout Connecticut, with whom Regan used to deal when at Carbone, indicating that the goodwill developed by Regan on behalf of Carbone has not yet expired.

**2. <u>Regan Violated the Agreement</u>**

Regan has violated the Agreement since terminating his employment with Carbone on July 21, 2008. Specifically, he is rendering service to Associated, one of Carbone's competitors and he has solicited Carbone's customers for Associated. Associated competes directly with Carbone in Connecticut and New York.

For the foregoing reasons, Carbone will likely succeed on the merits of its claims.

**B. <u>Regan's and Associated's Activities Are Causing Substantial and Irreparable Injury to Carbone</u>**

The nature of his services for a direct competitor of Carbone places Regan in a position to utilize the goodwill developed by him on behalf of Carbone and the confidential

information imparted to him by Carbone for Associated's benefit. In the Agreement, Regan recognized that in the event of his breach "damages will be difficult, if not impossible to ascertain." Exhibit A, ¶3. Regan also recognized in the Agreement that Carbone "will have the right to an injunction against the Employee or other appropriate equitable relief issued by a proper court in order to prevent any further breach hereof, in addition to any other right or remedy provided by law." Id.

Associated's use of Carbone's proprietary and confidential information imparted to it by Regan during the course of his services will likewise cause Carbone substantial and irreparable injury. (Uniform Trade Secrets Act, R.I. Gen. Laws § 6-41-2.) Already Regan, acting on behalf of Associated, has approached Carbone's customers and potential customers armed with the knowledge and information gained in the course of his employment at Carbone. This knowledge and information is essential to Carbone's operations and its ability to compete effectively against Associated and its other competitors. Associated is in a position where its use of this information is likely to cause significant harm to Carbone. More importantly, Carbone will suffer loss of goodwill to its business from Associated's use and disclosure of such information and knowledge. This constitutes irreparable harm for which there is no adequate remedy at law. *Leone*, 534 A.2d at 874.

**C. The Balance of the Equities Favor Carbone**

Regan executed the Agreement when he began working for Carbone and remains subject to its terms even now that he has left Carbone. It was Regan, not Carbone, who terminated that employment relationship over twenty years after it began and then lied about his intentions to retire. During his employment, Regan developed an intimate knowledge of Carbone's business strategies and methods of competing in the highly competitive New

England and New York wholesale florist market. Regan has chosen to render services to Carbone's competitor, Associated, in direct violation of the Agreement. Associated has, in turn, employed Regan with knowledge of the Agreement.

Regan and Associated have no equities in their favor. The restrictions that a temporary restraining order and a preliminary injunction will place upon Regan and Associated are not onerous. Regan will be prohibited from further breaches of the very Agreement he signed. The one-year restriction on his rendering services to a Carbone competitor within a hundred (100) miles of Hartford, Connecticut reasonably protects Carbone's ability to compete while placing only limited restrictions on Regan who lives in Vermont. The other restrictions are no greater than those by which Regan is otherwise bound under the Uniform Trade Secrets Act. (R.I. Gen. Laws § 6-41-2.) Associated will merely be deprived of its ill-gotten knowledge of Carbone's business secrets through its hire of Regan.

By contrast, Carbone's ability to compete effectively in its highly competitive business environment will be severely compromised if not granted the relief it seeks. Its proprietary and confidential information, knowledge and data will lose its confidential character and at least one of its competitors, Associated, will enjoy a significant competitive advantage over Carbone. The balance of the equities weighs heavily in favor of Carbone. *WGBH Educational Foundation, Inc. v. Penthouse International Limited*, 453 F. Supp. 1347, 1352 (S.D.N.Y. 1978), *affirmed*, 598 F.2d 610 (2nd Cir. 1979); *Iggy's Doughboys, Inc. v. Giroux*, 729 A.2d 701, 706 (R.I. 1999). The only way to prevent the continued disclosure of Carbone's proprietary and confidential information, knowledge and data prior to a final hearing of this case on the merits is through the issuance of a temporary restraining order and a preliminary injunction.

**D. A Preliminary Injunction will Preserve the Status Quo**

The purpose of this application for a temporary restraining order and motion for preliminary injunction is to hold matters in approximately the same status as they were before Regan began rendering services for Carbone's competitor, Associated. This is to allow the issues to be properly and finally heard and determined on their merits. *Studley Land Co. v. Myers*, 81 R.I. 426, 431, 103 A.2d 924, 926 (1954). The grant of Carbone's application for a temporary restraining order and motion for a preliminary injunction will hold matters in the status they were prior to Regan's departure from Carbone.

## CONCLUSION

For all the foregoing reasons, Carbone respectfully requests that this Court grant its Application for a Temporary Retraining Order and Motion for Preliminary Injunction.

Respectfully submitted,

THE R. J. CARBONE COMPANY

By its Attorneys,

Stacey P. Nakasian, Esq. (#5069)
Duffy, Sweeney & Scott, Ltd.
One Turks Head Place
Providence, Rhode Island 02903
(401) 455-0700
(401) 455-0701 (Fax)

Dated: July 29, 2008

**CERTIFICATION**

To:

Timothy J. Regan
2608 Route 144
Fair Haven, VT 05743-9228

Thomas Pavin
Associated Wholesale Florist of New Jersey
320 W. Passaic Street
Rochelle Park, NJ 07662

Simon I. Allentuch
Counsel for Associated Wholesale Florist of New Jersey
Neubert, Pepe & Monteith, P.C.
196 Church Street, 13th Floor
P.O. Box 1940
New Haven, Connecticut 06509-1940

I hereby certify that a true copy of the within Plaintiff's Application for Temporary Restraining Order and Motion for Preliminary Injunction, Memorandum in Support of Application for Temporary Restraining Order and Motion for Preliminary Injunction, the Affidavits of Thomas J. Carbone and Stephen P. Carbone, and the First Amended Verified Complaint was served via certified mail, return receipt requested and by federal express on the 29th day of July 2008.

[signature]

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

THE R.J. CARBONE COMPANY, :
:
Plaintiff, :
:
vs. : C.A. NO. 08-4942
:
TIMOTHY J. REGAN & :
ASSOCIATED WHOLESALE :
FLORIST, INC. d/b/a Associated Wholesale :
Florist of New Jersey, :
:
Defendants. :

**AFFIDAVIT OF THOMAS J. CARBONE**

I, Thomas J. Carbone, upon oath, depose and state as follows:

1. I am Vice President of The R. J. Carbone Company ("Carbone"), One Goddard Drive, Cranston, Rhode Island, 02920.

2. I have personal knowledge of the facts stated herein except where stated on information and belief, and I believe those facts to be true.

3. Carbone is a wholesale florist which has been operating since 1953. It is a family-run business with approximately 140 full and part-time employees. It is headquartered in Cranston, Rhode Island but supplies New England and New York.

4. The wholesale florist supply business is extremely competitive and Carbone's sourcing and marketing information systems contribute to its position as a leading supplier of floral products in Connecticut as well as other parts of New England and New York.

5. The wholesale florist market is characterized by intense competition for favorable supply agreements with floral brokers, growers, manufacturers and importers.

Rec'd 7/24/08

Although the identity of brokers, growers, manufacturers and importers is generally known in the industry, the purchasing contracts and sourcing and marketing strategies are all highly confidential. This is due primarily to the fact that floral products are time-sensitive and styles change rapidly.

6. To protect its confidential information, including customer information, its marketing strategies, and the pricing and terms of each contract, Carbone requires its salespeople, as a condition of employment, to execute an agreement not to disclose confidential information and not to compete with Carbone for a period of one year after employment termination within the geographic area in which each sold product for Carbone.

7. Defendant Timothy J. Regan ("Regan") was formerly a sales representative for Carbone. He joined the company on or about May 31, 1998, and worked out of his home and would submit all sales orders to Carbone's Cranston, Rhode Island facility.

8. On joining Carbone, Regan executed the agreement ("Agreement") attached to the First Amended Verified Complain as Exhibit A on acceptance of Carbone's offer of employment and fringe benefits package.

9. The Agreement provides, in pertinent part, that:

> 1. The Employee will not during the term of his or her employment or at any time thereafter divulge to any third party any trade secret of the Company or the names of any customers or suppliers of the Company or the methods of obtaining business or obtaining products used by the Company, or any other information which is proprietary to the Company, nor will the Employee solicit, induce or otherwise encourage any employee of the Company to leave the employ of the Company.

> 2. So long as the Employee is employed by the Company and for a period of one (1) year after the termination of such employment for any reason whatsoever, the Employee will not, within a radius of one hundred (100) miles of Hartford, Connecticut, render any service to, or have any interest or participation in, directly or indirectly, any corporation, partnership or business selling any products sold by, or in any manner substantially competing with, the business of the Company.
>
> 3. The Employee recognizes that in the event of the breach of his or her agreements set forth above, damages would be difficult, if not impossible, to ascertain, and that accordingly, the Company will have the right to an injunction against the Employee or other appropriate equitable relief issued by a proper court in order to prevent any further breach hereof, in addition to any other right or remedy provided by law.

(Id.)

10. Carbone trained Regan to perform a variety of tasks, introduced him to Carbone's product line and active/prospective lists of customers.

11. Regan's employment responsibilities at Carbone included selling floral supplies and Christmas greens to retail florists, greenhouses and garden shops.

12. Regan's geographic sales territory was all of Connecticut west of Groton, Connecticut and the eastern portions of New York.

13. As a sales representative, without limitation, Regan (a) was intimately familiar with Carbone's pricing strategy; (b) was fully aware of Carbone's active and prospective customers and their respective timing and product preferences and Carbone's pricing arrangements with those customers; (c) negotiated confidential sales arrangements with those customers; and (d) had access to and used confidential marketing and purchasing information.

14. Carbone has consistently treated the above information as highly sensitive and confidential, has disclosed it only to employees who have executed non-compete and non-disclosure agreements and considers the information to be vital to its continued business success.

15. On or about July 19, 2008, Regan verbally notified me via telephone that he was considering retiring. I told Regan to take some time off to think about his decision.

16. On July 21, 2008, Regan left his company vehicle at a customer's business in Connecticut and phoned Carbone's sales manager, Stuart Cohen to inform him where the vehicle was located and to tell him that he was quitting. Regan did not divulge his intent to work for a Carbone business competitor to me or anyone else at Carbone.

17. By overnight letter dated July 21, 2008, Carbone, through counsel, reminded Regan of his ongoing obligations with respect to the Agreement and demanded the return of all materials related to his employment, including, but not limited to, all sales reports, customer lists, price lists, catalogs and product samples by July 24, 2008.

18. No materials described in paragraph 17 herein were returned by Regan by July 24, 2008, or at any other time thereafter.

19. During the week of July 21, 2008, nine (9) different Carbone customers located in Connecticut notified Carbone that Regan was soliciting business from them on the behalf of Associated.

20. All of Carbone's customers described in paragraph 19 herein, are located within one hundred (100) miles from Hartford, Connecticut.

21. By overnight letter dated July 22, 2008, Carbone, through counsel, sent Associated a letter indicating that Regan was bound by the Agreement not to compete with Carbone for a period of one year after his resignation within a radius of one hundred (100) miles from Hartford, Connecticut. Carbone also informed Associated about the non-disclosure covenant of the Agreement as described in paragraph 9 herein.

22. On or about July 23, 2008, Stephen P. Carbone, Vice President of The R.J. Carbone Company, confirmed that Regan was in fact working for Associated as confirmed in the Affidavit of Stephen P. Carbone filed herewith.

23. Associated, based in Rochelle Park, New Jersey, competes directly with Carbone. It sells to and solicits some of the same customers as does Carbone in Connecticut and New York.

24. Carbone's highly confidential information is extremely valuable to Carbone and critical to its business. It would also be of significant value to Associated, which competes directly with Carbone in its purchasing as well as its sales.

25. Regan is unlawfully competing with Carbone. Moreover, on information and belief, Regan has used Carbone's goodwill for the benefit of Associated and has used or disclosed, or will use and disclose, Carbone's confidential and sensitive business information, including the identities of its customers, its customers' purchasing arrangements and preferences.

26. Carbone will be irreparably harmed if a temporary restraining order and/or preliminary injunction does not enter.

Thomas J. Carbone, Vice President
The R. J. Carbone Company

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

Subscribed and sworn to before me this 29TH day of July, 2008.

Notary Public

My Commission Expires: 3/19/09

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

THE R.J. CARBONE COMPANY,

Plaintiff,

vs.

C.A. NO. 08-4942

TIMOTHY J. REGAN &
ASSOCIATED WHOLESALE
FLORIST, INC. d/b/a Associated Wholesale
Florist of New Jersey,

Defendants.

**AFFIDAVIT OF STEPHEN P. CARBONE**

I, Stephen P. Carbone, upon oath, depose and state as follows:

1. I am Vice President of The R.J. Carbone Company ("Carbone").

2. I have personal knowledge of the facts set forth herein except where stated upon information and belief and I believe those facts to be true.

3. On or about July 23, 2008, after being told that our former employee, defendant Timothy J. Regan ("Regan") was soliciting Carbone customers in Connecticut, I telephoned defendant Associated Wholesale Florist, Inc. d/b/a Associated Wholesale Florist of New Jersey ("Associated") located in Rochelle Park, New Jersey and requested to speak to Regan.

4. I was promptly connected to Regan, but did not actually speak with him.

5. In an effort to again confirm the fact that Regan now worked for Associated, on July 23, 2008, I called Tom Pavin, General Manager and part owner of Associated. Mr. Pavlin confirmed to me during our phone conversation that Regan was now working for Associated.

Rec'd 7/29/08 lb

Stephen P. Carbone, Vice President
The R.J. Carbone Company

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

SUBSCRIBED AND SWORN TO before me this 29TH day of July, 2008.

Notary Public

My Commission Expires: 3/19/09