# EXHIBIT A

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

THE R.J. CARBONE COMPANY, :
:
Plaintiff, :
:
vs. :
:
TIMOTHY J. REGAN & :
ASSOCIATED WHOLESALE :
FLORIST, INC. d/b/a Associated Wholesale :
Florist of New Jersey, :
:
Defendants. :

C.A. NO. 08-4942

**FIRST AMENDED VERIFIED COMPLAINT**

Plaintiff, The R. J. Carbone Company ("Carbone") brings this action for injunctive relief and for damages and alleges as follows.

**Parties**

1. Plaintiff Carbone is a Rhode Island corporation with its principal place of business at One Goddard Drive, Cranston, Rhode Island.

2. Upon information and belief, defendant Timothy J. Regan ("Regan") resides at 2608 Route 144, Fair Haven, Vermont.

3. Upon information and belief, defendant Associated Wholesale Florist, Inc. d/b/a Associated Wholesale Florist of New Jersey ("Associated") is a New Jersey corporation, with its principal place of business at 320 West Passaic Street, Rochelle Park, New Jersey..

Rec'vd 7/29/08 :56

## Jurisdiction

4. This Court has subject matter jurisdiction over this matter pursuant to R.I. Gen. Laws §§ 8-2-13 and 8-2-14 because Carbone seeks equitable relief, and the amount in controversy exceeds $10,000.

5. This Court has personal jurisdiction over Regan because he was employed by a company domiciled in Rhode Island, entered into an employment agreement in Rhode Island and because Regan's employment with Carbone required him to travel to Rhode Island periodically.

6. This Court has personal jurisdiction over Associated because it committed tortious acts outside of Rhode Island causing injury to person or property within Rhode Island.

7. Venue is proper pursuant to R.I. Gen. Laws § 9-4-4 as Carbone is based in Cranston, Rhode Island, part of Providence County, and as the defendants are nonresident parties.

## Facts Common to All Counts

### A. Carbone's Business

8. Carbone is a wholesale florist that has been operating since 1953. It is a family-run business with approximately 140 full and part-time employees.

9. The wholesale florist supply business is extremely competitive, and Carbone's sourcing and marketing information systems contribute to its position as a leading supplier of floral products in New England and New York.

10. The wholesale florist market is characterized by intense competition for customers and favorable supply agreements with floral brokers, growers, manufacturers and importers. Although the identity of brokers and growers are generally known in the industry,

the purchasing contracts, sourcing and marketing strategies are all highly confidential. This is due primarily to the fact that floral products are time-sensitive and styles change rapidly.

11. Carbone actively protects its confidential information, including its customer information, its marketing strategies, and the pricing and terms of each contract. It does so by, among other steps, requiring certain of its key employees, as a condition of employment with Carbone, to execute an agreement not to disclose confidential information and not to compete with Carbone for a period of one year after employment termination within the geographic area in which Carbone competes.

**B. Regan's Employment with Carbone**

12. Defendant Regan joined Carbone on or about May 31, 1988, as a salesperson. He worked out of his home and would submit all sales orders to Carbone's Cranston facility.

13. On joining Carbone, Regan executed an agreement (the "Agreement") upon acceptance of Carbone's offer of employment and fringe benefits package. A true copy of the Agreement is attached hereto as Exhibit A.

14. The Agreement provides, in pertinent part, that:

> 1. The Employee will not during the term of his or her employment or at any time thereafter divulge to any third party any trade secret of the Company or the names of any customers or suppliers of the Company or the methods of obtaining business or obtaining products used by the Company, or any other information which is proprietary to the Company, nor will the Employee solicit, induce or otherwise encourage any employee of the Company to leave the employ of the Company.

> 2. So long as the Employee is employed by the Company and for a period of one (1) year after the termination of such employment for any reason whatsoever, the Employee will not, within a radius of one hundred (100) miles of Hartford, Connecticut, render any service to, or have any interest or participation in, directly or indirectly, any corporation, partnership or business selling any products sold by, or in any manner substantially competing with, the business of the Company.
>
> 3. The Employee recognizes that in the event of the breach of his or her agreements set forth above, damages would be difficult, if not impossible, to ascertain, and that accordingly, the Company will have the right to an injunction against the Employee or other appropriate equitable relief issued by a proper court in order to prevent any further breach hereof, in addition to any other right or remedy provided by law.

(Id.)

15. Carbone trained Regan to perform a variety of tasks, introduced him to Carbone's product line and provided him with lists of active/prospective customers.

16. Regan's employment responsibilities at Carbone included selling floral supplies and Christmas greens to retail florists, greenhouses and garden shops.

17. Regan's geographic sales territory was all of Connecticut west of Groton, Connecticut and the eastern portions of New York.

18. As a sales representative, without limitation, Regan (a) was intimately familiar with Carbone's pricing strategy; (b) was fully aware of Carbone's active and prospective customers and their respective product preferences and Carbone's pricing arrangements with those customers; (c) negotiated confidential sales arrangements with those customers; and (d) had access to and used confidential marketing and purchasing information.

## C. Carbone's Competition

19. Associated competes directly with Carbone. It sells to and solicits some of the same customers as does Carbone in Connecticut and New York.

20. Carbone believes that it has an advantage over Associated by reason of its confidential customer and marketing strategies. This highly confidential information is extremely valuable to Carbone and critical to its business. It would be of significant value to Associated, which competes directly with Carbone in its purchasing as well as its sales.

## D. Regan's Termination

21. On or about July 19, 2008, Regan verbally notified Thomas J. Carbone, Vice President of The R.J. Carbone Company, that he was considering retiring. Tom Carbone told Regan to take some time off to think about his decision.

22. On July 21, 2008, Regan left his company vehicle at a customer's business in Connecticut and phoned Carbone's sales manager, Stuart Cohen, to inform him where the vehicle was located and to tell him that he was quitting. At no point did Regan divulge his intent to work for a Carbone business competitor.

23. By overnight letter dated July 21, 2008, Carbone reminded Regan of his ongoing obligations with respect to the Agreement and demanded the return of all materials related to his employment, including, but not limited to, all sales reports, customer lists, price lists, catalogs and product samples by July 24, 2008.

24. No materials described in paragraph 23 herein were returned by Regan by July 24, 2008, or at any other time thereafter.

25. During the week of July 21, 2008, nine (9) different Carbone customers located in Connecticut notified Carbone that Regan was soliciting business from them on behalf of Associated.

26. All of Carbone's customers described in paragraph 25 herein are located within one hundred (100) miles of Hartford, Connecticut.

27. By overnight letter dated July 22, 2008, Carbone sent Associated a letter indicating that Regan was bound by the Agreement not to compete with Carbone. Carbone also informed Associated about the non-disclosure covenant of the Agreement as described in paragraph 14 herein.

28. On or about July 23, 2008, Steve P. Carbone, Vice President of The R.J. Carbone Company, telephoned Associated and requested to speak to Regan. Steven Carbone was promptly connected to Regan, but did not speak with him.

29. On the same day, Steve Carbone called Tom Pavlin, General Manager and part owner of Associated, who confirmed that Regan was now working for Associated.

30. On information and belief, Regan has begun selling products for Associated within one hundred (100) miles of Hartford, Connecticut; has communicated and used Carbone's secret and confidential business information in connection with his directly competitive activities for and on behalf of Associated; and has directly and indirectly interfered and attempted to interfere with Carbone's customers, business, trade and patronage. As such, Regan has caused and will cause irreparable damage to Carbone

31. On information and belief, Regan and Associated are unlawfully competing with Carbone. Moreover, on information and belief, Regan has or will use and disclose Carbone's confidential and sensitive business information, including, without limitation,

Carbone's trade secrets, names of customers, methods of obtaining business or obtaining products used by Carbone, or any other information which is proprietary to Carbone including, but not limited to, its confidential sales arrangements with its customers (including customer preferences) and sales data.

**COUNT I**
**(Breach of Contract)**

32. Carbone realleges and incorporates by reference the allegations contained in paragraphs 1 through 31 as if fully set forth herein.

33. Upon information and belief, Regan has breached his Agreement with Carbone by directly competing with Carbone within one (1) year of leaving the employment of Carbone.

34. Upon information and belief, Regan has or will breach his Agreement with Carbone by disclosing or using Carbone's secret and confidential business information.

35. Upon information and belief, Regan has or will breach his Agreement with Carbone by interfering or attempting to interfere with Carbone's customers, trade, business and patronage.

36. Carbone has been damaged thereby.

**COUNT II**
**(Misappropriation of Confidential Information)**

37. Carbone realleges and incorporates by reference the allegations contained in paragraphs 1 through 36 as if fully set forth herein.

38. Upon information and belief, defendants have or will knowingly, willfully and maliciously misappropriate and use Carbone's proprietary and confidential business information.

39. As a direct and proximate result, Carbone has suffered damages.

**COUNT III**
**(Conversion)**

40. Carbone realleges and incorporates by reference the allegations contained in paragraphs 1 through 39 as if fully set forth herein.

41. Upon information and belief, defendants have or will knowingly, willfully and maliciously convert to their own use Carbone's sensitive and confidential business information.

42. As a direct and proximate result, Carbone has suffered damages.

**COUNT IV**
**(Violation of R.I. Gen. Laws §§ 6-41-1 et seq.)**

43. Carbone realleges and incorporates by reference the allegations contained in paragraphs 1 through 42 as if fully set forth herein.

44. Defendants have violated R.I. Gen. Laws §§ 6-41-1, *et seq*. in that Regan and/or Associated has, upon information and belief, disclosed or used Carbone's trade secrets in violation of Rhode Island law.

45. Defendants' actions constitute willful and malicious misappropriation of Carbone's trade secrets.

46. As a direct and proximate result, Carbone has suffered damages.

**COUNT V**
**(Tortious Interference with Contract &**
**Prospective Business Relations)**

47. Carbone realleges and incorporates by reference the allegations contained in paragraphs 1 through 46 as if fully set forth herein.

48. Associated has, upon information and belief, knowingly, willfully and maliciously interfered with the contractual relations between Carbone and Regan by inducing him to breach his contract with Carbone.

49. As a direct and proximate result, Carbone has suffered damages.

**COUNT VI**
**(Intentional Interference with Prospective Economic Advantage)**

50. Carbone realleges and incorporates by reference the allegations contained in paragraphs 1 through 49 as if fully set forth herein.

51. Defendants have, upon information and belief, knowingly, willfully and maliciously interfered with Carbone's prospective economic advantage by soliciting and selling to Carbone's customers and prospective customers.

52. As a direct and proximate result, Carbone has suffered damages.

**COUNT VII**
**(Violation of Conn. Gen. Stat. § 42-110a et seq.)**

53. Carbone realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 as if fully set forth herein.

54. Upon information and belief, defendants have engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade and commerce by soliciting and selling to Carbone's customers and prospective customers.

55. Upon information and belief, Regan has engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade and commerce by disclosing or using Carbone's proprietary and confidential business information.

56. As a direct and proximate result, Carbone has suffered damages that are ascertainable.

**COUNT VIII**
**(Injunctive Relief)**

57. Carbone realleges and incorporates by reference the allegations contained in paragraphs 1 through 56 as if fully set forth herein.

58. Defendants' actual or threatened misappropriation of Carbone's confidential and sensitive business information should be enjoined pursuant to the Agreement, R.I. Gen. Laws § 6-41-2 and Super. Ct. R. Civ. P. 65.

59. Defendants' unlawful acts have and, unless and until they are temporarily restrained and/or preliminarily enjoined by this Court, will continue to irreparably injure Carbone in the following ways:

(a) Regan will continue to violate the provisions of his Agreement with Carbone;

(b) Defendants will continue to misappropriate for their own use Carbone's proprietary and confidential business information;

(c) Defendants will continue to convert and use Carbone's proprietary and confidential business information for their advantage, to the disadvantage of Carbone;

(d) Defendants will continue to violate R.I. Gen. Laws §§ 6-41-1 *et seq.* by disclosing and using Carbone's trade secrets;

(e) Defendants will continue to violate Conn. Gen. Stat. § 42-110a *et seq.* by competing unfairly and deceptively against Carbone;

(f) Defendants will continue to interfere with Carbone's prospective economic advantage; and

(g) Carbone will be in jeopardy of losing its strategic advantage over Associated and other competitors and will suffer incalculable losses of revenue as a direct result.

60. Carbone has no adequate remedy at law.

**Request for Relief**

**WHEREFORE**, plaintiff The R. J. Carbone Company requests that this Court:

A. Temporarily restrain and thereafter preliminarily and permanently enjoin defendants and all others acting for or on their behalf or in concert with them from disclosing and using Carbone's proprietary and confidential information and trade secrets;

B. Temporarily restrain and thereafter preliminarily enjoin Regan from competing with Carbone from selling and attempting to sell floral products to Carbone's customers and prospective customers within a radius of one hundred (100) miles of Hartford, Connecticut, render any service to, or have any interest or participation in, directly or indirectly, any corporation, partnership or business selling any products sold by, or in any manner substantially competing with, the business of Carbone, for a period of one year from the date of termination of his employment, up to and including July 21, 2009;

C. Temporarily restrain and thereafter preliminarily enjoy Regan and all others acting for or on his behalf or in concert with him from violating the terms of the Agreement;

D. Temporarily restrain and thereafter preliminarily enjoy Regan and all others acting for or on his behalf or in concert with him from using all materials related to his past employment with Carbone;

E. Order Regan and all others acting for or on his behalf or in concert with him to immediately return to Carbone all materials related to Regan's past employment with Carbone including, but not limited to, all sales reports (includes, without limitation, all weekly, seasonal and annual sales reports), customer lists, price lists (includes, without limitation, the Salesman Catalogue Case), catalogs, product samples, and supply order forms (includes, without limitation, prior years' completed and blank Christmas greens order forms);

F. Award Carbone compensatory and punitive damages plus costs, interest and attorneys' fees; and

G. Grant Carbone all the legal and equitable relief the Court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL**

THE R. J. CARBONE COMPANY

By its Attorneys,

Stacey P. Nakasian, Esq. (#5069)
Duffy, Sweeney & Scott, Ltd.
One Turks Head Place
Providence, Rhode Island 02903
(401) 455-0700
(401) 455-0701 (Fax)

Dated: July 29, 2008

**VERIFICATION**

I, Thomas J. Carbone of The R. J. Carbone Company, hereby certify that I am Vice-President of The R. J. Carbone Company, that I am authorized to make this Verification Affidavit on behalf of The R. J. Carbone Company, that I have read the foregoing First Amended Verified Complaint, and know the contents thereof, and that the allegations contained in the First Amended Verified Complaint are true and correct based on my knowledge and information, except as to those allegations alleged upon information and belief, and I believe those allegations to be true.

Thomas J. Carbone

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

SUBSCRIBED AND SWORN TO before me this 29th day of July 2008.

Notary Public

# EXHIBIT A

AGREEMENT

THIS AGREEMENT is made the 26th day of May, 1988, in favor of THE R. J. CARBONE CO., a Rhode Island corporation (the "Company"), by Timothy J. Regan, of Middlebury, Connecticut, (the "Employee"), in connection with the following facts:

(a) The Company is about to employ the Employee or has employed the Employee and is about to promote the Employee to a position involving new duties and responsibilities and increased compensation to the Employee.

(b) The Company will be devoting significant time and expense to the training of the Employee in the performance of his or her duties with the Company, and the Employee may in the course of such training or thereafter have access to certain confidential information relating to the Company and its methods of transacting business.

(c) The Employee is willing to enter into certain agreements with the Company in order to maintain the confidentiality of such information and to provide for related matters.

NOW, THEREFORE, in consideration of the Employee's employment by the Company, the Employee hereby agrees with the Company as follows:

1. The Employee will not during the term of his or her employment or at any time thereafter divulge to any third party any trade secret of the Company or the names of any customers or suppliers of the Company or the methods of obtaining business or obtaining products used by the Company, or any other information which is proprietary to the Company, nor will the Employee solicit, induce or otherwise encourage any employee of the Company to leave the employ of the Company.

2. So long as the Employee is employed by the Company and for a period of one (1) year after the termination of such employment for any reason whatsoever, the Employee will not, within a radius of one hundred (100) miles of Hartford, Connecticut, render any service to, or have any interest or participation in, directly or indirectly, any corporation, partnership or business selling any products sold by, or in any manner substantially competing with, the business of the Company.

3. The Employee recognizes that in the event of the breach of his or her agreements set forth above, damages would be difficult, if not impossible, to ascertain, and that accordingly, the Company will have the right to an injunction against the Employee or other appropriate equitable relief issued by a proper court in order to prevent any further breach hereof, in addition to any other right or remedy provided by law.

4. The invalidity of any paragraph or any part of any paragraph of this agreement shall not invalidate the remaining portion of this agreement.

5. This agreement shall be binding upon the Employee and the Employee's successors and assigns.

IN WITNESS WHEREOF, the employee has executed this agreement as of the date first referred to above.

WITNESS: ______________________ ______________________
EMPLOYEE