**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

FILED
AUG - 1 2008
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

THE R.J. CARBONE COMPANY, :
Plaintiff, :
vs. : C.A. NO. 08-291 S
TIMOTHY J. REGAN &
ASSOCIATED WHOLESALE
FLORIST, INC. d/b/a Associated Wholesale
Florist of New Jersey, :
Defendants. :

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff The R.J. Carbone Company, Inc. ("Carbone") submits this Memorandum in Support of its Application for Temporary Restraining Order and Motion for Preliminary Injunction.

## FACTS

Carbone is a Rhode Island business corporation based principally in Cranston, Rhode Island. Carbone is a wholesale florist, which has been operating since 1953. It is a family-run business with approximately 140 full and part-time employees.

The wholesale florist market is characterized by intense competition for customers and favorable supply agreements with floral brokers, growers, manufacturers and importers. Although the identity of brokers and growers are generally known in the industry, the purchasing contracts, sourcing and marketing strategies are all highly confidential. This is due primarily to the fact that floral products are time-sensitive and styles change rapidly.

Carbone actively protects its confidential information, its marketing strategies and the identity, pricing and terms of its contracts with its customers. It does so by, among other steps, requiring certain of its key employees, as a condition of employment, to execute an agreement not to disclose confidential information and not to compete with Carbone for a period of one year after employment termination within the geographic area in which Carbone competes.

On or about May 31, 1988, Carbone hired defendant Timothy J. Regan ("Regan") as a salesman. Regan's duties included floral related sales to Carbone's retail florist, garden center and farm stand customers located in Connecticut, throughout New England and parts of New York. During his employment at Carbone, Regan became intimately familiar with these customers, their preferences and usual orders as well as with Carbone's pricing strategy and pricing arrangements with those customers. Regan had access to and used confidential marketing and purchasing information.

On joining Carbone, Regan executed an employee Agreement (the "Agreement"), a true copy of which is attached to the First Amended Verified Complaint as Exhibit A. The Agreement provides in pertinent part:

> 1. The Employee will not during the term of his or her employment or at any time thereafter divulge to any third party any trade secret of the Company or the names of any customers or suppliers of the Company or the methods of obtaining business or obtaining products used by the Company, or any other information which is proprietary to the Company, nor will the Employee solicit, induce or otherwise encourage any employee of the Company to leave the employ of the Company.
>
> 2. So long as the Employee is employed by the Company and for a period of one (1) year after the termination of such employment for any reason whatsoever, the Employee will not, within a radius of one hundred (100) miles of Hartford, Connecticut, render any service to, or have any interest or participation in, directly or indirectly, any corporation,

> partnership or business selling any products sold by, or in any manner substantially competing with, the business of the Company.
>
> 3. The Employee recognizes that in the event of the breach of his or her agreements set forth above, damages would be difficult, if not impossible, to ascertain, and that accordingly, the Company will have the right to an injunction against the Employee or other appropriate equitable relief issued by a proper court in order to prevent any further breach hereof, in addition to any other right or remedy provided by law.

(Exhibit A.)

Carbone trained Regan to perform a variety of tasks, introduced him to Carbone's product line and provided him with lists of active/prospective customers. Regan's employment responsibilities at Carbone included selling floral supplies and Christmas greens to retail florists, greenhouses and garden shops. Regan's geographic sales territory was all of Connecticut west of Groton, Connecticut and the eastern portions of New York.

As a sales representative, without limitation, Regan (a) was intimately familiar with Carbone's pricing strategy; (b) was fully aware of Carbone's active and prospective customers and their respective product preferences and Carbone's pricing arrangements with those customers; (c) negotiated confidential sales arrangements with those customers; and (d) had access to and used confidential marketing and purchasing information.

On or about July 19, 2008, Regan verbally notified Thomas J. Carbone, Vice President of The R.J. Carbone Company, that he was considering retiring. Thomas Carbone told Regan to take some time off to think about his decision.

On July 21, 2008, Regan left his company vehicle at a customer's business in Connecticut and phoned Carbone's sales manager, Stuart Cohen, to inform him where the vehicle was located and to tell him that he was quitting. At no time did Regan divulge his intent to work for a Carbone business competitor.

By overnight letter dated July 21, 2008, Carbone reminded Regan of his ongoing obligations with respect to the Agreement and demanded the return of all materials related to his employment, including, but not limited to, all sales reports, customer lists, price lists, catalogs and product samples by July 24, 2008. No materials were ever returned.

During the week of July 21, 2008, nine (9) different Carbone customers located in Connecticut notified Carbone that Regan was soliciting business from them on behalf of Associated. All of these customers are located within one hundred (100) miles of Hartford, Connecticut.

By overnight letter dated July 22, 2008, Carbone sent Associated a letter indicating that Regan was bound by the Agreement not to compete with Carbone. Carbone also informed Associated about the non-disclosure covenant of the Agreement as described above.

On or about July 23, 2008, Stephen P. Carbone, Vice President of The R.J. Carbone Company, telephoned Associated and requested to speak to Regan. Stephen Carbone was promptly connected to Regan, but did not speak with him. On the same day, Stephen Carbone called Tom Pavin, General Manager and part owner of Associated, who confirmed that Regan was now working for Associated.

Associated is a direct competitor of Carbone, selling and soliciting to some of the same customers as does Carbone throughout most of Connecticut. Carbone believes that it has an advantage over Associated by reason of its confidential relationships and marketing strategies.

As an Associated employee, Regan has or will use and disclose to Associated, Carbone's proprietary and confidential business information. On information and belief, Regan has begun selling products for Associated within one hundred (100) miles of Hartford,

Connecticut; has communicated and used Carbone's proprietary and confidential business information in connection with his directly competitive activities for and on behalf of Associated; and has directly and indirectly interfered and attempted to interfere with Carbone's customers, business, trade and patronage. As such, Regan has caused and will cause irreparable damage to Carbone

On information and belief, Regan and Associated are unlawfully competing with Carbone. Moreover, on information and belief, Regan has or will use and disclose Carbone's confidential and sensitive business information, including, without limitation, Carbone's trade secrets, names of customers, methods of obtaining business or obtaining products used by Carbone, or any other information which is proprietary to Carbone including, but not limited to, its pricing structure, its confidential sales arrangements with its customers (including customer preferences) and sales data.

## ARGUMENT

Temporary and permanent injunctive relief is appropriate to restrain the continued use or threatened use of misappropriated trade secrets. *See, e.g.,* R.I. Gen. Laws § 6-41-2; *Nestle Food Co. v. Miller*, 836 F.Supp. 69, 78 (D.R.I. 1993); *J.B. Prata, Ltd. v. Bichay*, 468 A.2d 266, 268 (R.I. 1983). Restraining orders and injunctions are appropriate to restrain the continued violation of a covenant not to compete. *Rego Displays, Inc. v. Fournier*, 119 R.I. 469, 379 A.2d 1098 (1977).

Rhode Island courts consider four factors in determining whether to issue injunctive relief: (1) the likelihood of success on the merits; (2) irreparable harm; (3) the balance of the equities; and (4) the need to preserve the status quo. *Leone v. Town of New Shoreham*, 534 A.2d 871, 873 (R.I. 1987). Carbone need only show a "reasonable probability rather than a

certainty of ultimate success on a final hearing" to be entitled to preliminary injunctive relief. *Coolbeth v. Berberian*, 112 R.I. 558, 556, 313 A.2d 656, 660 (1974).

**A. Carbone is Likely to Succeed on the Merits**

Carbone is likely to succeed on the merits of its claims because the Agreement is valid and enforceable and Regan has violated the Agreement in several respects.

**1. The Agreement is Valid and Enforceable**

Rhode Island has consistently recognized that non-competition agreements that serve a legitimate purpose are valid so long as they are reasonable under the circumstances. *Durapin, Inc. v. American Products, Inc.*, 559 A.2d 1051, 1053 (R.I. 1989); *Mento v. Lanni*, 106 R.I. 683, 262 A.2d 839 (1970); *Koppers Products Co. v. Readio*, 60 R.I. 207, 197 A. 441 (1938); *Oakdale Mfg. Co. v. Garst*, 18 R.I. 484, 28 A. 973 (1894); *French v. Parker*, 16 R.I. 219, 14 A. 870 (1888). Whether a restrictive covenant is reasonable is ultimately a question of law to be determined by the court. *Durapin*, 559 A.2d at 1053; *Nestle*, 836 F.Supp. at 73. The party seeking to enforce the non-competition provision must show that:

> (1) the provision is ancillary to an otherwise valid transaction or relationship;
>
> (2) the provision is supported by adequate consideration; and
>
> (3) there is a legitimate interest that the provision is designed to protect.

*Durapin*, 559 A.2d at 1053. Carbone satisfies each of these factors.

First, the Agreement is not only ancillary to, it is an integral part of, Regan's employment with Carbone. Regan would not have been provided access to Carbone's sales and other confidential information had he not signed the Agreement.

Second, the provision is supported by adequate consideration: Regan's employment, including salary and fringe benefits, as well as his introduction to Carbone's business, all adequately support Regan's agreement not to compete and to not disclose any of Carbone's confidential and proprietary information. *See Nestle,* 836 F. Supp. at 77 (even if there was no consideration other than allowing an employee to continue employment with all of the associated benefits, such continuation of employment constitutes adequate consideration for non-competition agreement).

Third, the Agreement is plainly designed to protect Carbone's legitimate business interests. Those interests include protecting existing customer arrangements with whom Regan may have developed goodwill on behalf of Carbone during his employment with Carbone. The Agreement also protects the confidential business information, including customer lists, customer preferences and other trade secret information, imparted to Regan by Carbone as part of his employment. These interests are all legitimate business interests that are properly and reasonably protected by the Agreement. *See, e.g., Rego Displays*, 379 A.2d at 1102; *Callahan v. Rhode Island Oil Co.,* 103 R.I. 656, 240 A.2d 411, 413 (1968); *Oakdale Manufacturing*, 18 R.I. at 490; *French*, 16 R.I. at 219.

The Agreement is also reasonable in time and scope. *Durapin*, 559 A.2d at 1053. The Agreement is less restrictive than the entire geographic customer base of Carbone – the Agreement only restricts Regan from competing one hundred (100) miles of Hartford, Connecticut. *See Mento,* 262 A.2d at 840; *French*, 14 A. at 873. Moreover, one year is not an unreasonable period of time to restrict competition, particularly where Carbone has existing annual standing orders with customers, the pricing and particulars of which Regan was privy to while an Carbone employee. *Nestle*, 836 F. Supp. at 75; *Rego Displays,* 379

A.2d at 1102-03. This is particularly obvious, given Regan's recent solicitation of Carbone's present customers throughout Connecticut, with whom Regan used to deal when at Carbone, indicating that the goodwill developed by Regan on behalf of Carbone has not yet expired.

### 2. Regan Violated the Agreement

Regan has violated the Agreement since terminating his employment with Carbone on July 21, 2008. Specifically, he is rendering service to Associated, one of Carbone's competitors and he has solicited Carbone's customers for Associated. Associated competes directly with Carbone in Connecticut and New York.

For the foregoing reasons, Carbone will likely succeed on the merits of its claims.

## B. Regan's and Associated's Activities Are Causing Substantial and Irreparable Injury to Carbone

The nature of his services for a direct competitor of Carbone places Regan in a position to utilize the goodwill developed by him on behalf of Carbone and the confidential information imparted to him by Carbone for Associated's benefit. In the Agreement, Regan recognized that in the event of his breach "damages will be difficult, if not impossible to ascertain." Exhibit A, ¶3. Regan also recognized in the Agreement that Carbone "will have the right to an injunction against the Employee or other appropriate equitable relief issued by a proper court in order to prevent any further breach hereof, in addition to any other right or remedy provided by law." Id.

Associated's use of Carbone's proprietary and confidential information imparted to it by Regan during the course of his services will likewise cause Carbone substantial and irreparable injury. (Uniform Trade Secrets Act, R.I. Gen. Laws § 6-41-2.) Already Regan, acting on behalf of Associated, has approached Carbone's customers and potential customers armed with the knowledge and information gained in the course of his employment at

Carbone. This knowledge and information is essential to Carbone's operations and its ability to compete effectively against Associated and its other competitors. Associated is in a position where its use of this information is likely to cause significant harm to Carbone. More importantly, Carbone will suffer loss of goodwill to its business from Associated's use and disclosure of such information and knowledge. This constitutes irreparable harm for which there is no adequate remedy at law. *Leone*, 534 A.2d at 874.

**C. <u>The Balance of the Equities Favor Carbone</u>**

Regan executed the Agreement when he began working for Carbone and remains subject to its terms even now that he has left Carbone. It was Regan, not Carbone, who terminated that employment relationship over twenty years after it began and then lied about his intentions to retire. During his employment, Regan developed an intimate knowledge of Carbone's business strategies and methods of competing in the highly competitive New England and New York wholesale florist market. Regan has chosen to render services to Carbone's competitor, Associated, in direct violation of the Agreement. Associated has, in turn, employed Regan with knowledge of the Agreement.

Regan and Associated have no equities in their favor. The restrictions that a temporary restraining order and a preliminary injunction will place upon Regan and Associated are not onerous. Regan will be prohibited from further breaches of the very Agreement he signed. The one-year restriction on his rendering services to a Carbone competitor within a hundred (100) miles of Hartford, Connecticut reasonably protects Carbone's ability to compete while placing only limited restrictions on Regan who lives in Vermont. The other restrictions are no greater than those by which Regan is otherwise bound under the Uniform Trade Secrets Act.

(R.I. Gen. Laws § 6-41-2.) Associated will merely be deprived of its ill-gotten knowledge of Carbone's business secrets through its hire of Regan.

By contrast, Carbone's ability to compete effectively in its highly competitive business environment will be severely compromised if not granted the relief it seeks. Its proprietary and confidential information, knowledge and data will lose its confidential character and at least one of its competitors, Associated, will enjoy a significant competitive advantage over Carbone. The balance of the equities weighs heavily in favor of Carbone. *WGBH Educational Foundation, Inc. v. Penthouse International Limited*, 453 F. Supp. 1347, 1352 (S.D.N.Y. 1978), *affirmed*, 598 F.2d 610 (2nd Cir. 1979); *Iggy's Doughboys, Inc. v. Giroux*, 729 A.2d 701, 706 (R.I. 1999). The only way to prevent the continued disclosure of Carbone's proprietary and confidential information, knowledge and data prior to a final hearing of this case on the merits is through the issuance of a temporary restraining order and a preliminary injunction.

**D. <u>A Preliminary Injunction will Preserve the Status Quo</u>**

The purpose of this application for a temporary restraining order and motion for preliminary injunction is to hold matters in approximately the same status as they were before Regan began rendering services for Carbone's competitor, Associated. This is to allow the issues to be properly and finally heard and determined on their merits. *Studley Land Co. v. Myers*, 81 R.I. 426, 431, 103 A.2d 924, 926 (1954). The grant of Carbone's application for a temporary restraining order and motion for a preliminary injunction will hold matters in the status they were prior to Regan's departure from Carbone.

**CONCLUSION**

For all the foregoing reasons, Carbone respectfully requests that this Court grant its Application for a Temporary Retraining Order and Motion for Preliminary Injunction.

Respectfully submitted,

THE R. J. CARBONE COMPANY

By its Attorneys,

/s/ Stacey P. Nakasian

Stacey P. Nakasian, Esq. (#5069)
Duffy, Sweeney & Scott, Ltd.
One Turks Head Place
Providence, Rhode Island 02903
(401) 455-0700
(401) 455-0701 (Fax)

Dated: August 1, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the within ***Plaintiff's Memorandum of Law in Support of Its Application for Temporary Restraining Order and Motion for Preliminary Injunction*** was served on the following via First Class Mail:

S. Michael Levin, Esq.
Winograd, Shine & Zacks, P.C.
123 Dyer Street
Providence, RI 02903

/s/ Stacey P. Nakasian
Stacey P. Nakasian