UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

FILED
AUG - 1 2008
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THE R.J. CARBONE COMPANY, Plaintiff, vs. TIMOTHY J. REGAN & ASSOCIATED WHOLESALE FLORIST, INC. d/b/a Associated Wholesale Florist of New Jersey, Defendants. | : | C.A. NO. 08-291 S |

**AFFIDAVIT OF THOMAS J. CARBONE**

I, Thomas J. Carbone, upon oath, depose and state as follows:

1. I am Vice President of The R. J. Carbone Company ("Carbone"), One Goddard Drive, Cranston, Rhode Island, 02920.

2. I have personal knowledge of the facts stated herein except where stated on information and belief, and I believe those facts to be true.

3. Carbone is a wholesale florist which has been operating since 1953. It is a family-run business with approximately 140 full and part-time employees. It is headquartered in Cranston, Rhode Island but supplies New England and New York.

4. The wholesale florist supply business is extremely competitive and Carbone's sourcing and marketing information systems contribute to its position as a leading supplier of floral products in Connecticut as well as other parts of New England and New York.

5. The wholesale florist market is characterized by intense competition for favorable supply agreements with floral brokers, growers, manufacturers and importers.

Although the identity of brokers, growers, manufacturers and importers is generally known in the industry, the purchasing contracts and sourcing and marketing strategies are all highly confidential. This is due primarily to the fact that floral products are time-sensitive and styles change rapidly.

6. To protect its confidential information, including customer information, its marketing strategies, and the pricing and terms of each contract, Carbone requires its salespeople, as a condition of employment, to execute an agreement not to disclose confidential information and not to compete with Carbone for a period of one year after employment termination within the geographic area in which each sold product for Carbone.

7. Defendant Timothy J. Regan ("Regan") was formerly a sales representative for Carbone. He joined the company on or about May 31, 1998, and worked out of his home and would submit all sales orders to Carbone's Cranston, Rhode Island facility.

8. On joining Carbone, Regan executed the agreement ("Agreement") attached to the First Amended Verified Complain as Exhibit A on acceptance of Carbone's offer of employment and fringe benefits package.

9. The Agreement provides, in pertinent part, that:

> 1. The Employee will not during the term of his or her employment or at any time thereafter divulge to any third party any trade secret of the Company or the names of any customers or suppliers of the Company or the methods of obtaining business or obtaining products used by the Company, or any other information which is proprietary to the Company, nor will the Employee solicit, induce or otherwise encourage any employee of the Company to leave the employ of the Company.

> 2. So long as the Employee is employed by the Company and for a period of one (1) year after the termination of such employment for any reason whatsoever, the Employee will not, within a radius of one hundred (100) miles of Hartford, Connecticut, render any service to, or have any interest or participation in, directly or indirectly, any corporation, partnership or business selling any products sold by, or in any manner substantially competing with, the business of the Company.
>
> 3. The Employee recognizes that in the event of the breach of his or her agreements set forth above, damages would be difficult, if not impossible, to ascertain, and that accordingly, the Company will have the right to an injunction against the Employee or other appropriate equitable relief issued by a proper court in order to prevent any further breach hereof, in addition to any other right or remedy provided by law.

(Id.)

10. Carbone trained Regan to perform a variety of tasks, introduced him to Carbone's product line and active/prospective lists of customers.

11. Regan's employment responsibilities at Carbone included selling floral supplies and Christmas greens to retail florists, greenhouses and garden shops.

12. Regan's geographic sales territory was all of Connecticut west of Groton, Connecticut and the eastern portions of New York.

13. As a sales representative, without limitation, Regan (a) was intimately familiar with Carbone's pricing strategy; (b) was fully aware of Carbone's active and prospective customers and their respective timing and product preferences and Carbone's pricing arrangements with those customers; (c) negotiated confidential sales arrangements with those customers; and (d) had access to and used confidential marketing and purchasing information.

14. Carbone has consistently treated the above information as highly sensitive and confidential, has disclosed it only to employees who have executed non-compete and non-disclosure agreements and considers the information to be vital to its continued business success.

15. On or about July 19, 2008, Regan verbally notified me via telephone that he was considering retiring. I told Regan to take some time off to think about his decision.

16. On July 21, 2008, Regan left his company vehicle at a customer's business in Connecticut and phoned Carbone's sales manager, Stuart Cohen to inform him where the vehicle was located and to tell him that he was quitting. Regan did not divulge his intent to work for a Carbone business competitor to me or anyone else at Carbone.

17. By overnight letter dated July 21, 2008, Carbone, through counsel, reminded Regan of his ongoing obligations with respect to the Agreement and demanded the return of all materials related to his employment, including, but not limited to, all sales reports, customer lists, price lists, catalogs and product samples by July 24, 2008.

18. No materials described in paragraph 17 herein were returned by Regan by July 24, 2008, or at any other time thereafter.

19. During the week of July 21, 2008, nine (9) different Carbone customers located in Connecticut notified Carbone that Regan was soliciting business from them on the behalf of Associated.

20. All of Carbone's customers described in paragraph 19 herein, are located within one hundred (100) miles from Hartford, Connecticut.

21. By overnight letter dated July 22, 2008, Carbone, through counsel, sent Associated a letter indicating that Regan was bound by the Agreement not to compete with Carbone for a period of one year after his resignation within a radius of one hundred (100) miles from Hartford, Connecticut. Carbone also informed Associated about the non-disclosure covenant of the Agreement as described in paragraph 9 herein.

22. On or about July 23, 2008, Stephen P. Carbone, Vice President of The R.J. Carbone Company, confirmed that Regan was in fact working for Associated as confirmed in the Affidavit of Stephen P. Carbone filed herewith.

23. Associated, based in Rochelle Park, New Jersey, competes directly with Carbone. It sells to and solicits some of the same customers as does Carbone in Connecticut and New York.

24. Carbone's highly confidential information is extremely valuable to Carbone and critical to its business. It would also be of significant value to Associated, which competes directly with Carbone in its purchasing as well as its sales.

25. Regan is unlawfully competing with Carbone. Moreover, on information and belief, Regan has used Carbone's goodwill for the benefit of Associated and has used or disclosed, or will use and disclose, Carbone's confidential and sensitive business information, including the identities of its customers, its customers' purchasing arrangements and preferences.

26. Carbone will be irreparably harmed if a temporary restraining order and/or preliminary injunction does not enter.

Thomas J. Carbone, Vice President
The R. J. Carbone Company

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

Subscribed and sworn to before me this 29TH day of July, 2008.

Notary Public

My Commission Expires: 3/19/09