UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF RHODE ISLAND

| | | |
|---|---|---|
| THE R.J. CARBONE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY J. REGAN and ASSOCIATED WHOLESALE FLORIST INC. d/b/a Associated Wholesale Florist of New Jersey,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | C.A. No.: 08 CV 00291 S |

**DEFENDANTS' MOTION TO DISMISS OR TRANSFER**

Defendants, Timothy J. Regan and Associated Wholesale Florist, Inc. d/b/a Associated Wholesale Florist of New Jersey move pursuant to Fed. R. Civ. P. 12 (b)(2), (3), (6) to dismiss the First Amended Complaint, or in the alternative to transfer this case, pursuant to 28 U.S.C. § 1404 to the District of Connecticut or the Northern District of New York. In support of this motion, Defendants rely on the accompanying Memorandum of Law.

Respectfully submitted,

TIMOTHY J. REGAN and ASSOCIATED WHOLESALE FLORIST, INC. d/b/a Associated Wholesale Florist of New Jersey
By their attorneys
WINOGRAD, SHINE & ZACKS, P.C.

By: /s/ S. Michael Levin

S. Michael Levin, Esq. (#3796)
Winograd, Shine and Zacks, P.C.
123 Dyer Street
Providence, RI 02903-3980
Phone: 401-273-8300
Fax: 401-272-5728
mlevin@wszlaw.com

NEUBERT, PEPE & MONTEITH, P.C.

By: /s/ Simon I.Allentuch
Simon I. Allentuch, Esq. (Pro Hac Vice)
195 Church Street
New Haven, CT 06510
Phone: 203-821-2000
Fax: 203-821-2009
sallentuch@npmlaw.com

Date: August 8, 2008

**CERTIFICATION**

I hereby certify that August 8, 2008, a copy of the foregoing, was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

/s/ S. Michael Levin

UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF RHODE ISLAND

| | | |
|---|---|---|
| THE R.J. CARBONE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY J. REGAN and ASSOCIATED WHOLESALE FLORIST INC. d/b/a Associated Wholesale Florist of New Jersey,<br><br>Defendants. | : | C.A. No.: 08 CV 00291 S |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR TRANSFER**

Defendants, Timothy J. Regan and Associated Wholesale Florist, Inc. d/b/a Associated Wholesale Florist of New Jersey (individually "Regan" and "Associated") (collectively "Defendants"), respectfully submit this Memorandum of Law in Support of their Motion to Dismiss or Transfer pursuant to Fed. R. Civ. P. 12 (b)(2), (3), (6), or in the alternative seek to transfer this case, pursuant to 28 U.S.C. § 1404 to the District of Connecticut or the Northern District of New York.

**PRELIMINARY STATEMENT**

In this era of globalization, it is not uncommon for a manufacturer or wholesaler, such as The R.J. Carbone Company ("Carbone"), to have a single location, whether in the United States or abroad, and then for the wholesaler to use an army of sales people to sell its wares to customers in the United States and abroad. Since jurisdiction, venue and choice of law are necessarily thorny issues in these circumstances, employers often have members of their sales force sign contracts with non-competition agreements containing choice of law and choice of forum clauses. Otherwise, it can be manifestly unfair and a violation of the Due Process Clause

of the Fourteen Amendment to drag residents of distant states and a new employer across the country, or internationally, away from all of the witnesses, into court in the former employer's jurisdiction.

In addition, the choice of law to be applied can also be determinative. In the area of non-compete agreements, Rhode Island law, for example, is very helpful to employers while non-competes are generally illegal under California law. A non-competition provision which would be overbroad and therefore unenforceable as unreasonable under New York, New Jersey or Connecticut law, could be enforceable under Rhode Island law since its non-competition law permits the court to modify the terms. In order to ensure the use of a particular state's law in a non-competition agreement, employers include choice of law and forum clauses. For example, in a case which was recently tried before Judge Lisi by plaintiff's counsel, Astro-Med, Inc. v. Plant and Nihon Kohden America, Inc. (C.A. No. 06-533-ML), the employee, Mr. Plant signed an Employee Agreement with his employer providing that

> This Agreement shall be governed by and interpreted in accordance with the laws of the State of Rhode Island. This Agreement is made and entered into in Rhode Island and I consent to the jurisdiction of a competent court in Rhode Island to hear any dispute arising out of this Agreement. By my execution and delivery of this amendment, I irrevocably submit to and accept the exclusive jurisdiction of each of such courts and waive any objection (including any objection to venue or any objection based upon the grounds of forum non conveniens) which might be asserted against the bringing of any such action, suit or other legal proceeding, in such courts.

Par. 7, Exhibit 1, Allentuch Declaration.

Significantly, the non-compete at issue here does not contain a choice of law or forum clause. See Exhibit A, First Amended Complaint (the "Complaint") and Exhibit 2, Allentuch Declaration.

In this case, Mr. Regan is a sixty year old salesperson for Carbone who lives in Vermont near the New York border, approximately sixty miles from the edge of his sales territory. See Regan Affidavit. He was paid approximately fifty thousand dollars a year in 2007 and typically worked about seventy hours a week. Although he worked primarily in Connecticut, Carbone paid him in Vermont and withheld Vermont taxes. Regan contends that Carbone violated Vermont wage and hour law when it withdrew monies from his paycheck in violation of Vermont statues. As set forth below, Connecticut law applies to plaintiff's claims against defendants, not Rhode Island law. Plaintiff has failed to state a claim under Connecticut law.

Furthermore, whether one analyzes the claims and potential counterclaims in this case under Connecticut or Rhode Island law, the Court nonetheless lacks personal jurisdiction over Regan or Associated. Regan is a Vermont resident who worked for Carbone in Connecticut and New York. Associated is a New Jersey corporation with no connections to Rhode Island. Plaintiff simply cannot prove that Defendants have sufficient minimum contacts with the State of Rhode Island to create personal jurisdiction. For the reasons more fully set forth below, the Court should grant Defendants' Motion to Dismiss and Order this case dismissed with prejudice or in the alternative transfer the case to a different forum.

## STATEMENT OF FACTS

### Regan's Employment History

Regan first started working in the floral industry when he was about ten years old, in the late 1950s. He is currently sixty years old. Par. 2, Regan Affidavit. In or about 1971, he accepted a position at a floral wholesaler named Nyren Brothers in Plantsville, Connecticut. He was a salesperson selling the same type of floral products and supplies he eventually sold for Carbone. His territory was New York State. Par. 3, Regan Affidavit.

During 1979, he accepted a position at Fall River Floral Supply in Massachusetts, selling the same type of floral products and supplies he sold for Carbone. His territory was primarily Connecticut and a small part of New York. Par. 4, Regan Affidavit. When he accepted a position at Carbone, he brought to Carbone all of the customers he developed at Fall River Floral Supplies. The customers he sold products to when he joined Carbone were the same customers he sold products for Carbone in 2008. Par. 5, Regan Affidavit. In May, 1988, when Regan started his employment at Carbone, he signed a non-compete agreement. The agreement was signed in Rhode Island. A copy is attached to the Complaint and the Allentuch Declaration.

While he was employed by Carbone, Regan's primary territory was Connecticut, excluding a strip of land near Rhode Island. He also sold Carbone's merchandise to customers in New London and Willimantic, Connecticut. Historically more than eighty percent of his sales were in Connecticut. In addition, he sold Carbone products to customers in New York near the Connecticut border and north of the Connecticut border. He also sold product for Carbone in Vermont but was asked to cede the territory to another salesperson. Par. 6, Regan Affidavit. When he left his employment with Carbone, Regan's nearest customers were about an hour away, in Cambridge, New York. Par. 7, Regan Affidavit. There are twelve to fifteen wholesalers who sell essentially the same products as Carbone in Connecticut. These wholesalers sell similar products to approximately three hundred flower shops and garden centers in Connecticut. They are all listed in the phone book so there is nothing confidential about the customer list. Carbone sells products to over half of them. Almost all of these stores buy products from competitor wholesalers. Par. 8, Regan Affidavit.

Carbone sends newspaper mailers listing its products to its customers. It also sends faxes to customers with sales. These documents contain some prices or Regan gives customers an

order sheet with prices. Therefore, pricing is not secret. Regan does not know Carbone's cost of goods sold for any product. He is not aware of any non-public confidential information belonging to Carbone. Par. 9, Regan Affidavit.

**Regan's Contacts With Rhode Island**

Regan has lived in Connecticut from the day he was born until 2003, when he moved to Vermont. He has never lived in Rhode Island nor does he own any property in Rhode Island. Par. 10, Regan Affidavit.

Because he was a salesperson, substantially all of Regan's work for Carbone was with customers, primarily in Connecticut and none in Rhode Island. Regan worked out of his house in Connecticut and then Vermont where he made telephone calls and did paperwork. He was paid in Vermont for his work for Carbone. When he received orders, they were generally faxed directly from the customer to Carbone, or, on occasion, Regan would fax orders for customers from his house in Vermont to Carbone. Par 11, Regan Affidavit.

Each year, he spent a few days at the Carbone offices in Rhode Island. Just before Valentines Day, Mother's Day, around Christmas/the second day after Christmas and occasionally before Thanksgiving, Regan would go to the Carbone offices to pick up product samples for the next season and to have his truck serviced, if necessary. While in Rhode Island for those reasons, he typically used some of his time to make telephone calls to customers. There were no sales meetings in Rhode Island. These approximately four days a year constituted Regan's only time in Rhode Island for Carbone. Par. 12, Regan Affidavit.

**Regan's Termination of Employment With Carbone**

In 2007, Regan made approximately fifty thousand dollars working for Carbone but the compensation dropped in 2008. He is the sole bread winner for his family and he left Carbone

because he could no longer afford to work there with the deductions from his paycheck, the higher health insurance costs, and the reduced commissions. With respect to any benefits he received from Carbone, his doctors are all in Vermont and he had a 401K through the Great-West Retirement Services. Par. 13, Regan Affidavit.

A few days before he gave notice to Carbone, Regan had lunch with Tom Pavlin of Associated in New York. Regan was unhappy in his job because money was very tight since Carbone had been taking money out of his paycheck and reducing his commission rate. Regan received a job offer the next day and gave his notice to Tom Carbone by telephone from Vermont. Par. 14, Regan Affidavit.

Regan told Tom Carbone, "I had enough. It's not worth it any more." Mr. Carbone told Regan to take a week off and to call him in August. Regan repeated that he had had enough. They never spoke again. Par. 15, Regan Affidavit. Regan left his company car with product samples at the Wallingford Flower Shop in Connecticut because he could get a ride from there. Carbone made three deliveries a week to the Wallingford Flower Shop. Since Regan had sold product to the Wallingford Flower shop for years even before he worked for Carbone, the Wallingford customer agreed to hold the car keys. Regan informed Stuart Cohen at Carbone that he was leaving the car at the Wallingford Flower shop, and Mr. Cohen indicated that he was fine with this arrangement. Id.

A week later, Regan dropped off most of the additional Carbone materials he had at Garden Path, a customer in Southington, CT. Because Carbone often left materials for Regan or picked up materials from Regan at this shop, it was a standard procedure to utilize this customer as a drop-off. Regan notified Carbone that he had dropped the materials off there. Par. 16, Regan Affidavit.

Regan no longer has any Carbone materials in his possession and has not given any Carbone materials to his new employer. Par. 17., Regan Affidavit. Regan did call some of his customers after he left Carbone. Since he had worked with them, in some cases for over thirty years, he called them and thanked them for their business, told them that he had left Carbone, and further said that he would see them in the future. Regan did not solicit or receive any orders from any of them. Par. 17, Regan Affidavit.

Before this lawsuit was filed, Regan did go to a few customers in New York only. According to mapquest.com, these customers were about 100 miles or more from Hartford. Regan did receive some orders. To his knowledge, the orders have never been filled. In addition, products were delivered to two other shops. According to mapquest.com, these stores are 122 and 132 miles by car from Hartford, CT. Par. 19, Regan Affidavit.

Thereafter, plaintiff commenced this litigation. Since it was filed, Regan has not worked. Par. 20, Regan Affidavit.

## ARGUMENT

### I. The Court Lacks Personal Jurisdiction Over Associated and Regan

The claims against Regan and Associated should be dismissed because the Court lacks personal jurisdiction over both parties. Whether based on the theory of general or specific jurisdiction, dismissal is required.

#### A. Plaintiff Bears the Burden of Proof

Plaintiff has not met its burden "to prove the necessary facts to establish that defendant is indeed amenable to judicial proceedings in this forum." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 49 (1st Cir. 2002); Celta Agencies, Inc. v. Denizcililrsanayi Ve Ticaret, A.S., 269 F. Supp. 2d 1, 2 (D.P.R. 2003); Bolt v. Gar -Tee Products,

967 F.2d 671, 675-76 (1st Cir. 1992). The plaintiff's "demonstration of personal jurisdiction must be based on specific facts set forth in the record in order to defeat a defendant's motion to dismiss." N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 536 F. Supp. 2d 181, *10-11 (D.RI 2008).

**B. Plaintiff Cannot Meet Its Burden of Proof**

In its Complaint, plaintiff alleges that the Court has personal jurisdiction over the defendants based on the theory of specific jurisdiction.[1] For specific jurisdiction to exist over a defendant: (1) the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities, (2) the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, and (3) the exercise of jurisdiction must be reasonable. Sawtelle v. Farrell, 70 F.3d 1381, 1388-1389 (1st Cir. 1995); accord Brian Jackson & Co. v. Eximias Pharm. Corp., 248 F. Supp. 2d 31, 35 (D.R.I.2003). Each of these requirements must be separately met. See Cambridge Literary Properties, Ltd. v. W Goebel Porzellanfabrik GmbH, 295 F.3d 59, 53 (1st Cir. 2002).

**1. The Court Lacks Personal Jurisdiction Over Associated**

The Complaint is devoid of any allegations that establish that Associated entered into business transactions in Rhode Island. In fact, there is no evidence that plaintiff can satisfy any of the requirements of the specific jurisdiction test. Associated has no contact with Rhode Island. It does not even sell products into Rhode Island or have employees in Rhode Island.[2] All discussions concerning the hiring of Regan took place outside of Rhode Island. Even if one were to give credence to plaintiff's allegations that Regan solicited customers on behalf of

[1] Rhode Island's long arm statute extends to the jurisdictional limits of the Fourteenth Amendment so a statutory analysis is unnecessary and the Court may simply apply a due process analysis. See Brian Jackson & Co. v. Eximias Pharm. Corp., 248 F. Supp. 2d 31, 34-35 (D.R.I.2003).

[2] See, attached Affidavit of George Kantakis ("Kantakis Affidavit").

Associated (par. 25-26, Complaint), those solicitations took place in Connecticut. In addition, all of the claims against Associated concern conduct that, if proven, happened in New Jersey or New York, not Rhode Island.

For example, in Count II, III, and IV, plaintiff attempts to assert several causes of action concerning Associated's alleged use of plaintiff's confidential information. Defendants deny that this happened. Regardless, plaintiff is not alleging that this misuse or misappropriation occurred in Rhode Island. In Count V, plaintiff alleges that Associated induced Regan to breach his non-competition agreement with Carbone. Associated states that this allegation has no factual basis. However, even if true, any acts related to such a claim could not have taken place in Rhode Island since Regan did not work or live in Rhode Island. In Count VII, Carbone alleges that Regan violated Connecticut's Unfair Trade Practices Act presumably by performing acts in Connecticut, rather than Rhode Island. Count VIII merely seeks relief and does not state a cause of action. In sum, there are no allegations in the Complaint which allege, or even suggest that Associated's purported wrongful acts occurred in Rhode Island.

Similarly, there is no evidence that Associated's non-existent Rhode Island contacts represent "a purposeful availment of the privilege of conducting activities" in Rhode Island or that the exercise of jurisdiction is reasonable, especially when both defendants are subject to jurisdiction in Connecticut and New York. In assessing these tort claims, it is clear that there is no causal nexus between Associated's contacts with Rhode Island (of which there were none) and the plaintiff's cause of action. Under these conditions, the Court cannot exercise personal jurisdiction over Associated. See Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir.1999), citing Nowak v. How Invs., Ltd, 94 F.3d 708, 715-16 (1st Cir. 1996); Sawtelle v. Farrell, 70 F.3d 1381, 1390 (1st Cir. 1995).

On August 5, 2008, plaintiff orally represented to the Court that it can satisfy the specific jurisdiction requirement arguing that where a non-resident directs its tortious actions at a resident of the forum, the defendant intended the injury to be experienced in the forum state. For example, in Hugel v. McNeil, 886 F.2d 1, 5 (1st Cir. 1989), defendant McNeil gave defamatory information to Washington Post reporters with the intent that it be published and thus disseminated nationwide and cause damage to Hugel's reputation in New Hampshire. In Hugel, New Hampshire had jurisdiction because people knew Hugel in New Hampshire and thus his reputation was damaged in New Hampshire. The injury to the reputation actually occurred in New Hampshire.

Here, Carbone complains of two tortuous acts; namely Associated allegedly induced Regan to breach his non-compete and it allegedly misappropriated some sort of confidential information (perhaps a customer list) to acquire Carbone's customers in Connecticut and New York. The Court must analyze these claims. When "the assertion of jurisdiction is bound up with the claim on the merits," but there exists "the possibility of permitting a dubious case to proceed beyond the pleading stage, and even to trial, though the court eventually will be found to lack jurisdiction," we have noted that the "likelihood" standard may be appropriate. Foster-Miller, 46 F.3d at 146. The affidavits submitted to the Court demonstrate that these claims on which jurisdiction is based have no foundation as Regan elected to leave Carbone because Carbone removed money from his paycheck and cut his commissions. Moreover, no documents belonging to Carbone were given to Associated. See Kantakis Affidavit. The claims therefore have no merit.

Assuming, arguendo, that plaintiff's allegations have merit, Carbone suffered its injury in Connecticut and New York when Regan allegedly attempted to compete with Carbone there and

caused Carbone to lose customers in these states (albeit that in reality no customers have been lost). Thus, the injury to Carbone occurred in Connecticut and New York, not Rhode Island.[3] The same can be said about the customer list. While the allegation that Regan disclosed it to Associated is false, even if it were true, taking plaintiff's customer list results in a loss of customers in Connecticut and New York, not Rhode Island. If Carbone is correct, any alleged tort anywhere in the world would subject the alleged tortfeasor to jurisdiction in Rhode Island because the tort could affect Carbone's profitability in Rhode Island. Thus, according to plaintiff, ExxonMobil can file suit against anyone, regardless where they are located, on a tort theory at the courthouse closest to its headquarters in Irving, Texas, simply because that is where ExxonMobil's headquarters are located. Clearly, that is not true. Purposeful availment actually means something much more substantive than plaintiff argues; it is not mere verbiage.

While Carbone has not alleged that jurisdiction is proper under a general jurisdiction theory, Associated also lacks the necessary contacts with the State of Rhode Island to create a basis for general jurisdiction. The Complaint lacks even a single conclusory allegation that Associated maintained continuous and systematic contacts with Rhode Island. As set forth above, Associated has no contacts with Rhode Island. The Complaint does not allege that Associated registered to do business in Rhode Island or maintains an office or mailing address in Rhode Island and, therefore, fails to establish general jurisdiction over Associated. See, e.g., Morel v. Estate of John J. Davidson, 148 F. Supp. 2d 161, 167 (D.R.I.2001) (finding no general jurisdiction where contact was lacking "in several key areas" since defendant did not have an office, other property, a mailing address or a phone number in Rhode Island); Sandstrom v. Chemlawn Corp., 904 F.2d 83, 88-89 (1st Cir. 1990) (the defendant's contacts with the forum

---

[3] Carbone claims that it has "3 locations throughout New England including Rhode Island, Massachusetts and New Hampshire . . . ." Carbone Website, http://www.rjcarbone.com/ last visited August 8, 2008.

must "exist in sufficient abundance"). Because plaintiff has failed to allege any facts demonstrating continuous and systematic contacts with Rhode Island (and thus cannot establish the purposefulness of such contacts), there can be no jurisdiction over Associated. Therefore, the Court need not reach the question of whether the exercise of jurisdiction would be reasonable. See United Elec., Radio & Mach. Workers v 1 63 Pleasant St. Corp., 960 F.2d 1080, 1091 n. 11 (1st Cir. 1992) ("The Gestalt factors for reasonableness come into play only if the first two segments of the test for specific jurisdiction have been fulfilled."); Donatelli v. National Hockey League, 893 F.2d 459, 465 (1st Cir. 1990) (stating that the Gestalt factors "are secondary rather than primary; unless the defendant has some cognizable contacts with the proposed forum, the court cannot assert general jurisdiction") (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477-78 (1985)).

Furthermore, even if plaintiff had established minimum contacts by Associated, in light of the "Gestalt Factors"[4] considered in the First Circuit, the exercise of jurisdiction over Associated would be unreasonable. The Gestalt Factors[5] weigh against exercising jurisdiction over Associated in Rhode Island. Associated is a small company located in New Jersey and the burden of appearing in court and for depositions in Rhode Island is significant. Plaintiff need only travel a short distance to Connecticut where all defendants are clearly subject to jurisdiction.

---

[4] The "Gestalt Factors" include: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. Nowak v. Talc How Invest., 94 F.3d 708, 717 (1st Cir. 1996) citing United Elec. Radio & Mach. Workers of Am., 960 F.2d at 1088).

[5] At the time of the alleged breach of the Agreement, Plaintiff had lived in Vermont for five years.

### 2. Regan Is Not Subject to Jurisdiction In Rhode Island

There is insufficient evidence to establish personal jurisdiction over Regan under a specific jurisdiction theory. Like Associated, Carbone's claims against Regan purportedly arise out of his alleged activities in Connecticut, New York and New Jersey, not Rhode Island. Because Carbone cannot meet this first element of the specific jurisdiction three part test, the Court lacks personal jurisdiction over Regan.

Regan's alleged conduct in violation of the Agreement does not arise out of any transactions conducted within Rhode Island. Plaintiff alleges that Regan worked out of his home and submitted all of his customers' sales orders to [Plaintiff's] Cranston facility via fax.[6] Complaint; Regan Affidavit. Regan sold Carbone's products in Connecticut and limited parts of New York along the Connecticut and Vermont border, not in Rhode Island. Regan Affidavit. Plaintiff does not allege that Regan conducted any sales activities or solicitations in Rhode Island. As set forth in the Regan Affidavit, Regan spent about four days a year in Rhode Island obtaining new samples, getting his company vehicle serviced, and while waiting for his vehicle, making telephone calls to his customers, none of whom were in Rhode Island.

As stated above, in order to establish personal jurisdiction, (1) the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities, (2) the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, and (3) the exercise of jurisdiction must be reasonable. Sawtelle, 70 F.3d at 1388-1389 (1st Cir. 1995). The jurisdictional contacts must evidence participation by Regan in the economic life of the forum, not just the formation of a contract with a resident plaintiff. See Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928, 933 (1st Cir. 1985) ("We have held that the fact that a nonresident enters into a single commercial contract with a resident

of the forum state is not necessarily sufficient to meet the constitutional minimum for jurisdiction.").

Although the non-competition agreement was signed in Rhode Island, plaintiff also fails to allege that any wrongful acts took place in Rhode Island. Regan called customers in Connecticut but not to solicit orders since he had worked with them for decades, even proceeding his employment with Carbone. These calls were not a breach of the non-competition agreement and are not a basis for jurisdiction. Plaintiff simply cannot make a showing that Regan "actually reached out to [Rhode Island] to create a relationship." See Phillips Exeter Academy, 196 F.3d at 292; see also Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 36 (1st Cir. 1998) (Massachusetts district court properly declined to exercise personal jurisdiction where "in-forum effects of extra-forum activities" harmed an entity organized in Massachusetts.).

The reasonableness analysis also weighs against exercising personal jurisdiction over Regan. In performing this analysis, the Court must consider the following factors: 1) plaintiff's interest in obtaining convenient and effective relief; (2) the burden imposed upon Regan by requiring them to appear; (3) the forum's adjudicatory interest; (4) the interstate judicial system's interest in the place of adjudication; and (5) the common interest of all affected sovereigns, state and federal, in promoting substantive social policies. Donatelli v. Nat'l Hockey League, 893 F.2d 459, 465 (1st Cir. 1990) (citations omitted). As this Court recently reiterated, "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." See N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 536 F. Supp. 2d 181 at **39-40 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994)

First, it is unduly burdensome to require Regan to appear in Rhode Island to defend this action. He lives in Vermont and works in New Jersey and possibly in New York and Connecticut. Except for four days a year, he does not transact business in Rhode Island. Plaintiff does not allege that Regan committed a tortious act inside Rhode Island, and there is no evidence that he committed a tortious act outside Rhode Island causing injury to plaintiff or its property within Rhode Island. He does not own, use or possess any real property situated in Rhode Island

Second, Rhode Island has a limited interest in adjudicating this action. Plaintiff does not allege that it lost any specific customers or orders as a result of defendants' actions. In fact, there is no evidence of a material violation of the non-compete. Of any state, Vermont has the greatest interest because the non-compete could render a resident and his wife, who have no savings, unemployable and subject to public support. Connecticut has a far greater interest than Rhode Island in adjudicating this matter as the Agreement contemplates a geographic region of 100 miles in every direction from Hartford, Connecticut, and an alleged sales territory that effectively encompasses the entire state. Most of Regan's customers are Connecticut businesses. Most of these customers worked with Regan for over a decade before Regan joined Associated.

Even under general jurisdiction theory, Carbone's claim of jurisdiction is tenuous. Regan went to Carbone's offices for approximately four days a year. That is the limit of his contacts. Regan was paid in Vermont, had Vermont taxes taken out of his paycheck and worked from his home office in Vermont and at customer's shops in New York and Connecticut. His contacts with the state are intermittent, at best. For all of these reasons, the Court lacks personal jurisdiction over Regan.

## II. Rhode Island Is Not the Proper Venue for Plaintiff's Lawsuit

In diversity cases, venue is only proper in a judicial district in which either (1) the

defendant resides, (2) a substantial part of the events giving rise to the claim occurred, or (3) the defendant is subject to personal jurisdiction. 28 U.S.C. § 1391. The plaintiff bears the burden to present facts sufficient to support its allegation that venue is proper. Cordis Corp. v. Cardiac Pacemakers, 559 F.2d 1085, 1086 (1st Cir. 1979). If venue is improper in the district in which the case is originally filed, the court must dismiss the claims against the defendant or, in the interests of justice, transfer the case to a district in which the claims properly could have been filed. 28 U.S.C. § 1406(a). None of the three conditional bases set forth in 28 U.S.C. § 1391 are applicable here.

There is no allegation that either defendant resides in Rhode Island. In addition, to the extent there is any basis for plaintiff's claims that the non-competition agreement was violated, the violation occurred in Connecticut or New York, not Rhode Island. For the reasons set forth above, neither defendant is subject to jurisdiction in Rhode Island. Thus, plaintiff's claims against defendants should be dismissed or, in the alternative, transferred to the United States District Court for the District of Connecticut or, alternatively, the Northern District of New York.

## III. The Case Should Be Transferred to the District of Connecticut or the Northern District of New York Under 28 U.S.C. § 1404

Even if this Court deems that Rhode Island has jurisdiction over defendants, the balance of convenience weighs heavily in favor of venue in the state where the percipient witnesses are located and where any evidence of alleged bad acts would be found: the District of Connecticut or, alternatively, the Northern District of New York, the location of Regan's employment and alleged violation of the non-competition agreement. Under 28 U.S.C. § 1404(a), a district court may, in the interest of justice, transfer any civil action to any other

district court where the action may have been brought for the convenience of the parties and witnesses. See 28 U.S.C. § 1404(a). Transfer to another district court is appropriate if, as here: (1) the plaintiff could have filed in the venue where transfer is sought; and (2) the balance of convenience weighs in favor of transfer. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981). In this case, the balance of the private and public interests weighs definitively in favor of transfer to an alternate forum. Id.

**A. The Private Factors Favor Venue in Connecticut or New York**

The respective "private interests" of litigants is determined based upon:

(1) The relative ease of access to sources of proof;

(2) Availability of compulsory process for attendance of witnesses; and

(3) All of the practical problems that make conducting a trial in a particular venue easier, more expeditious and less expensive.

Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

All of the alleged non-compete violations occurred in Connecticut. Carbone's Connecticut and New York customers are potential witnesses and will likely be called by either or both parties to establish a violation of the non-compete or lack thereof. All of these witnesses would be forced to cross state lines if they are even subject to a Rule 45 subpoena, given the distance. Clearly, all of the third party witnesses are in Connecticut and New York. Connecticut and New York are therefore the appropriate fora.

**B. Public Factors Weigh in Favor of Trial in Connecticut or New York**

The public factors considered in determining the most convenient forum include:

(1) Administrative difficulties stemming from court congestion;

(2) [L]ocal interest in having localized controversies decided at home;

(3) The interest in having a diversity case tried in a forum that is familiar with the law that governs the action;

(4) Avoidance of unnecessary conflict of law problems, or problems applying foreign laws; and

(5) The fairness of imposing the burden of jury duty upon citizens of a forum that is less connected with the relevant facts than an alternative forum.

Id.

No "local" interest supports a trial in this Court. Plaintiff's allegations arise from the hiring, by a New Jersey corporation, of a Vermont resident to sell the Associated's products in Connecticut and New York. Associated never entered the State of Rhode Island, or even contacted anyone in Rhode Island in connection with Regan's employment. Plaintiff also respectfully submits that Connecticut, not Rhode Island, law should apply for the reasons set forth below. Therefore, Rhode Island is not an appropriate forum because this action does not involve a "localized controversy" and a trial would burden Rhode Island citizens by requiring jury duty service on a case relating to events that occurred in New York, Connecticut and New Jersey.

In addition to the lack of connection of plaintiff's claims to the State of Rhode Island, a trial outside of Rhode Island will not create unnecessary conflict of laws problems or contravene any interest Rhode Island may have in adjudicating plaintiff's claims. Connecticut and New York have trade secret laws and both states provide causes of action for intentional interference with contractual relationships. Plaintiff has even asserted a claim under Connecticut law. Moreover, because the alleged misappropriation of trade secrets (or the threatened misappropriation of trade secrets) could occur only in Vermont, Connecticut, New York or New Jersey, and the alleged interference with contract occurred in the same states, Rhode Island's interest in adjudicating Plaintiffs claims is remote. The case should therefore be transferred to the District of Connecticut or the Northern District of New York.

**IV Count IV Must Be Dismissed Because It Is Pled Under Rhode Island Law**

Plaintiff has pled two statutory counts, one under Connecticut law (Count VII) and one under Rhode Island law (Count IV). The same conduct is incorporated into each claim. The choice of law is potentially outcome determinative in this case on the most material claim, the breach of contract claim, since Connecticut provides for more limited enforcement of non-competition agreements. An overbroad, and therefore unreasonable, non-competition provision could therefore be void and unenforceable under Connecticut law but permissible under Rhode Island law. Plaintiff cannot avail itself of favorable Connecticut law with respect to it claim under the Connecticut Unfair Trade Practices Act and then Rhode Island law for the balance of its claims because it believes Rhode Island law is more favorable. The choice of law rules for Rhode Island provide that the Court should apply Connecticut law. Count IV must be dismissed because it fails to state a claim under Connecticut law.

A Rhode Island choice of law provision in an employment agreement will be enforced so long as the contract or the parties both have a "significant relationship" to the state. Microfibers, Inc. v. McDevitt-Askew, 20 F.Supp. 2d 316, 326 (D.R.I. 1998). In this case, the contract at issue does not even contain a choice of law clause.

There are two potential tests which the Court can apply in determining the appropriate law, the place of contract analysis and the interest weighing analysis. Rhode Island has not determined which test should apply. Nortek, Inc. v. Molnar, 36 F.Supp.2d 63, 66 (D.R.I. 1999). Under either test however, Connecticut law should apply. Under the place of contract test, the law of the state in which the contract offer is accepted generally applies, unless performance of the contract is intended by the parties to be undertaken in a different state, in which case the law where the contract is to be performed will govern. Id. citing Crellin Tech, Inc. Equipmentlease,

Corp., 18 F.3d 1, 6 (1st Cir. 1994). Here, there is no dispute that most of Regan's territory was in Connecticut and that none of it was in Rhode Island. All of the services to be performed were in Connecticut. The non-compete itself explicitly references Hartford, Connecticut when it limits Regan from competing within 100 miles from Hartford, Connecticut. Both Regan's obligations while working for Carbone and the prohibition for the year after his employment ended require or prohibit conduct in Connecticut, not Rhode Island. Connecticut law should therefore apply.

The interest weighing analysis requires the court to "makes a series of factual determinations and . . . evaluate several policy considerations." Nortek, 36 F.Supp.2d at 66. The interest weighing analysis has the following factors:

> 1) place of contracting; 2) situs of negotiations; 3) place of performance; 4) location of contract subject matter, if any; and 5) parties' business locations and states of incorporation. The policy considerations include 1) needs of the interstate system; 2) relevant policies of the forum; 3) policies of the other affected states and their interest in the outcome of the litigation; 4) protection of the parties' justified expectations; 5) uniformity and predictability of results; and 6) ease in determining and applying different bodies of law.

Id. at 66-67.

In Nortek, the issue was whether the contract of an employee of a company headquartered in Rhode Island who lived in New York and Ohio and worked in New York Pennsylvania, Ohio, Illinois Rhode Island and other states should be construed under New York or Rhode Island law. The court concluded that under either test, New York law should apply.

In this case, the first factor favors plaintiff since the contract was signed by Regan in Rhode Island. There is no evidence that the non-compete agreement was the result of negotiations between the parties. The place of performance is New York and Connecticut. The

location of the contract subject matter is also Connecticut and New York. The parties to the contract are located in Rhode Island and Vermont.

With respect to the second set of factors, the first and sixth factors carry the least weight. Id. at 68. Like the contract in Nortek, the fact pattern has a "truly inter-state quality." The remaining six factors are indeterminate, neither recommending Rhode Island nor Connecticut law, with a single exception. Factor four suggests that Connecticut law should apply. Carbone drafted the contract and did not include a choice of law clause when it had the opportunity to do so. It did not negotiate the agreement. The contract references Hartford, Connecticut, as the core of the non-competition provision. Plaintiff even tacitly admits that it expected Connecticut law to apply by including a claim under Connecticut statutory law. The performance was also supposed to be primarily in Connecticut, and not Rhode Island.

In taking both tests together, like the Court did in Nortek, this Court should apply the law of the state where the performance occurred. The Court should apply Connecticut law. As a result, plaintiff has failed to state a claim under Rhode Island law for violation of its Trade Secret Act under Connecticut law. Court IV should therefore be dismissed.

## CONCLUSION

For the forgoing reasons, the Complaint should therefore be dismissed or in the alternative transferred to the District of Connecticut or the Northern District of New York.

Respectfully submitted,

TIMOTHY J. REGAN and ASSOCIATED WHOLESALE FLORIST, INC. d/b/a Associated Wholesale Florist of New Jersey

By their attorneys

WINOGRAD, SHINE & ZACKS, P.C.

By: /s/ S. Michael Levin
S. Michael Levin, Esq. (#3796)
Winograd, Shine and Zacks, P.C.
123 Dyer Street
Providence, RI 02903-3980
Phone: 401-273-8300
Fax: 401-272-5728
mlevin@wszlaw.com

NEUBERT, PEPE & MONTEITH, P.C.

By: /s/ Simon I.Allentuch
Simon I. Allentuch, Esq. (Pro Hac Vice)
195 Church Street
New Haven, CT 06510
Phone: 203-821-2000
Fax: 203-821-2009
sallentuch@npmlaw.com

Date: August 8, 2008

**CERTIFICATION**

I hereby certify that August 8, 2008, a copy of the foregoing, was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

/s/ S. Michael Levin

UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF RHODE ISLAND

| | | |
|---|---|---|
| THE R.J. CARBONE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY J. REGAN & ASSOCIATED WHOLESALE FLORIST INC. d/b/a Associated Wholesale Florist of New Jersey,<br><br>Defendants. | : | C.A. No.: 08 CV 00291 S |

**AFFIDAVIT OF TIMOTHY J. REGAN**

Timothy J. Regan, being duly sworn, deposes and says:

1. I am a defendant in the above captioned lawsuit and make this Affidavit in support of Defendants' Motion to Dismiss or Transfer.

2. I first started working in the floral industry when I was about ten years old, in the late 1950s. I am currently sixty years old. My father owned a retail flower shop.

3. In or about 1971, I started working for a wholesaler named Nyren Brothers in Plantsville, Connecticut. I was a salesperson selling the same type of floral products and supplies I sold for The R.J. Carbone Company ("Carbone"). My territory was New York State.

4. In or about 1979, I accepted a position at Fall River Floral Supply in Massachusetts, selling the same type of floral products and supplies I sold for Carbone. My territory was primarily Connecticut and a small part of New York.

5. I brought all of the customers I developed at Fall River Floral Supplies to Carbone when I accepted a position at Carbone. Most of the customers I sold products to

at Carbone in 2008 were the same customers I worked with while at Fall River Floral Supplies. Obviously, there were some new clients as new flower shops opened and others went out of business but most of the customers remained the same during my employment with Carbone. I have always been paid on commission by Carbone.

6. At Carbone, my primary territory was Connecticut, excluding the strip of land near Rhode Island (except that I had customers in New London and Willimantic, Connecticut). Historically more than eighty percent of my sales were in Connecticut. In addition, I sold Carbone products to customers in New York near the Connecticut border and north of the Connecticut border. I also sold product for Carbone in Vermont but was asked to cede the territory to another salesperson.

7. When I left Carbone, my closest customers were about an hour away, in Cambridge, New York.

8. There are twelve to fifteen wholesalers who sell essentially the same products as Carbone in Connecticut. There are approximately three hundred flower shops and garden centers in Connecticut. They are all listed in the phone book so there is nothing confidential about the customer list. Carbone sells products to over half of them. Almost all of them buy products from competitor wholesalers.

9. Before I go to visit a customer, the customer has typically received a newspaper mailer from Carbone. Carbone also sends faxes to customers with sales. These documents contain some prices or I give customers an order sheet with prices. Therefore, pricing is not secret. I do not know the cost of goods sold for any product I sold for Carbone. I am not aware of any non-public confidential information given to me by Carbone.

10. I lived in Connecticut from the day I was born until 2003, when I moved to Vermont. I have never lived in Rhode Island nor do I own any property in Rhode Island.

11. Because I was a salesperson, substantially all of my work for Carbone was with customers, primarily in Connecticut. My house in Vermont was my office where I made my calls and did my paperwork. I was paid in Vermont for my work for Carbone. When I received orders, they were generally faxed directly from the customer to Carbone, or, on occasion, I would fax orders for customers from my house in Vermont to Carbone.

12. Each year, I did spend a few days at the Carbone offices in Rhode Island. Just before Valentines Day, Mother's Day, around Christmas/the second day after Christmas and occasionally before Thanksgiving, I would spend a day at their offices picking up product samples for the next season and having my truck serviced, if necessary. While in Rhode Island for those reasons, I typically used some of my time to call customers. There were no sales meetings. These four days a year (approximately) constituted my only time in Rhode Island for Carbone.

13. In 2007, I made approximately fifty thousand dollars working for Carbone but the compensation dropped in 2008. I am the sole bread winner for my family and I left Carbone because I could no longer afford to work there with the deductions from paycheck, higher health insurance costs, and reduced commissions. With respect to the benefits I received from Carbone, my doctors are all in Vermont and I had a 401K through the Great-West Retirement Services.

14. A few days before I gave notice to Carbone, I had lunch with Tom Pavlin of Associated in New York. He knew that I was unhappy in my job because money was very tight since Carbone had been taking money out of my check and reducing my commission rate. I received a job offer the next day and gave my notice to Tom Carbone by telephone from Vermont.

15. I told him that "I had enough. It's not worth it any more." He told me to take a week off and to call him in August. I repeated that "I had enough." We never spoke again. I left my Company car with samples at Wallingford Flower Shop in Connecticut because I could get a ride from there. Carbone makes three deliveries a week to Wallingford Flower Shop. Since I had sold product to Wallingford Flower shop for years before I worked for Carbone, they agreed to hold the key. I let Stuart Cohen know that I was leaving the car at Wallingford Flower shop, and he indicated that he was fine with this arrangement.

16. A week later, I dropped off most of the additional Carbone materials I had at Garden Path in Southington, CT. Carbone often left materials for me or picked up materials from me at this shop. It was standard procedure. I notified Carbone that I had dropped the materials off there.

17. I no longer have any Carbone materials in my possession nor have I given any Carbone materials to my new employer. I have not shown my new employer any Carbone documents or samples.

18. I did call some of my customers. Since I had worked with them, in some cases for over thirty years, I called them and thanked them for their business, told them that I had left Carbone, and said that I would see them in the future. It was a courtesy call. I did not solicit or receive any orders from any of them.

19. Before this lawsuit was filed, I did go to a few customers in New York only. According to mapquest.com, these customers were about 100 miles or more from Hartford. I did receive some orders. To my knowledge, the product has never been filed. In addition, products were delivered to two shops. According to mapquest.com, these stores are 122 and 132 miles by car from Hartford, CT.

20. Since this lawsuit was filed, I have not worked.

21. While I can't afford a lawyer, my son has been kind enough to pay for counsel for me. I just want to go back to work and do what I have been doing for my entire life so that I can support my family.

[signature]
Timothy J. Regan

Sworn to before me this 8th
day of August, 2008

[signature]
Notary Public

my commission expires 2/10/2011

UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF RHODE ISLAND

| | | |
|---|---|---|
| THE R.J. CARBONE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY J. REGAN and ASSOCIATED WHOLESALE FLORIST INC. d/b/a Associated Wholesale Florist of New Jersey,<br><br>Defendants. | : | C.A. No.: 08 CV 00291 S |

**AFFIDAVIT OF GEORGE KANTAKIS**

George Kantakis, being duly sworn, deposes and says:

1. I am the officer and principal of Associated Florist Supplies Incorporated ("Associated") improperly named as Associated Wholesale Florist Inc.

2. Associated sells cut flowers, dried flowers and floral supplies ("Products") in New Jersey, New York and Connecticut.

3. We do not sell Products in Rhode Island. We have no employees in Rhode Island or any offices in Rhode Island. In essence, we have no connection with the State, whatsoever.

4. Despite plaintiff's allegations to the contrary, Tim Regan has not given Associated a copy of any of Carbone's documents although I believe for those who have registered, Carbone makes its product list and pricing structure available on

the web to its customers.

George Kantakis

Sworn to before me this 8th
day of August, 2008

Notary Public

CAROLE A. DANSEN
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Sept. 10, 2008