**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| THE R.J. CARBONE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>TIMOTHY J. REGAN & ASSOCIATED WHOLESALE FLORIST, INC. d/b/a Associated Wholesale Florist of New Jersey,<br><br>Defendants. | : | C.A. NO. 08-291 S |

**PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION TO DISMISS OR TRANSFER**

Plaintiff The R.J. Carbone Company, Inc. ("Carbone") submits this Objection to Defendants' Motion to Dismiss or Transfer dated August 8, 2008, in compliance with the Court's Text Order dated August 6, 2008.

Defendants have moved to dismiss this action based on the lack of personal jurisdiction and improper venue, or in the alternative, have requested that this action be transferred to the District of Connecticut or the Northern District of New York. Carbone submits that defendants' motion should be dismissed in its entirety as Regan has more than sufficient minimum contacts to establish personal jurisdiction and as Associated's tortious actions outside of Rhode Island had a direct negative impact on Carbone, a R.I. Corporation headquartered in Cranston.

Defendants have also moved to dismiss Count IV asserted under R.I. Gen. Laws §§ 6-41-1, *et seq*.. Defendants' motion is improper as Connecticut and Rhode Island both interpret

the Uniform Trade Secrets Act in similar fashion and as Rhode Island law applies pursuant to the "interest weighing" test.

In the alternative, if this Court believes an issue exists with regards to jurisdiction, Carbone requests that it be allowed to conduct jurisdictional discovery and/or to amend its First Amended Verified Complaint.

In support of its objection, Carbone relies on the Memorandum of Law in Support of Plaintiff's Objection to Defendants' Motion to Dismiss or Transfer, and the Affidavit of Thomas J. Carbone filed herewith.

Respectfully submitted,

THE R. J. CARBONE COMPANY

By its Attorneys,

/s/ Stacey P. Nakasian

Stacey P. Nakasian, Esq. (#5069)
Duffy, Sweeney & Scott, Ltd.
One Turks Head Place
Providence, Rhode Island 02903
(401) 455-0700
(401) 455-0701 (Fax)

Dated: August 22, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of August , 2008, a true copy of the foregoing ***Plaintiff's Objection to Defendants' Motion to Dismiss or Transfer*** was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), including those listed below, and copies will be mailed to those indicated as non-registered participants.

S. Michael Levin, Esq.
Winograd, Shine & Zacks, P.C.
123 Dyer Street
Providence, RI 02903

Simon I. Allentuch, Esq.
Jarod F. Proto, Esq.
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
P.O. Box 1940
New Haven, CT 06509

/s/ Stacey P. Nakasian
Stacey P. Nakasian

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| THE R.J. CARBONE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>TIMOTHY J. REGAN & ASSOCIATED WHOLESALE FLORIST, INC. d/b/a Associated Wholesale Florist of New Jersey,<br><br>Defendants. | : | C.A. NO. 08-291 S |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION TO DISMISS OR TRANSFER**

Plaintiff The R.J. Carbone Company, Inc. ("Carbone") submits this Memorandum of Law in Support of Plaintiff's Objection to Defendants' Motion to Dismiss or Transfer dated August 8, 2008, in compliance with the Court's Text Order dated August 6, 2008.

**PRELIMINARY STATEMENT**

Carbone, a Rhode Island business headquartered in Cranston, Rhode Island, is a wholesale florist, which has been operating since 1953. The wholesale florist market is characterized by intense competition for customers and favorable agreements with floral brokers, growers, manufacturers and importers. Accordingly, Carbone's marketing strategies and sales data are all highly confidential.

Carbone actively protects its confidential information, its marketing strategies and the identity, pricing and terms of its contracts with its customers. It does so by, among other steps, requiring certain employees, as a condition of employment, to execute an agreement not

to disclose confidential information and not to compete with Carbone for a period of one year after employment termination within the geographic area in which Carbone competes.

On or about May 31, 1988, Carbone hired defendant Timothy J. Regan ("Regan") as a salesman. On joining Carbone, Regan executed an employee Agreement (the "Agreement"), a true copy of which is attached hereto as Exhibit A. The Agreement provides in pertinent part:

> 1. The Employee will not during the term of his or her employment or at any time thereafter divulge to any third party any trade secret of the Company or the names of any customers or suppliers of the Company or the methods of obtaining business or obtaining products used by the Company, or any other information which is proprietary to the Company, nor will the Employee solicit, induce or otherwise encourage any employee of the Company to leave the employ of the Company.
>
> 2. So long as the Employee is employed by the Company and for a period of one (1) year after the termination of such employment for any reason whatsoever, the Employee will not, within a radius of one hundred (100) miles of Hartford, Connecticut, render any service to, or have any interest or participation in, directly or indirectly, any corporation, partnership or business selling any products sold by, or in any manner substantially competing with, the business of the Company.
>
> 3. The Employee recognizes that in the event of the breach of his or her agreements set forth above, damages would be difficult, if not impossible, to ascertain, and that accordingly, the Company will have the right to an injunction against the Employee or other appropriate equitable relief issued by a proper court in order to prevent any further breach hereof, in addition to any other right or remedy provided by law.

(Exhibit A.)

In July 2008, Regan left the employment of Carbone, representing that he was retiring. Instead, he went to work for a competitor, defendant Associated Wholesale Florist, Inc., d/b/a Associated Wholesale Florist of New Jersey ("Associated"). Shortly thereafter, Carbone learned from its customers in Connecticut that Regan was contacting them in violation of the Agreement. Carbone immediately brought suit in an effort to enforce the terms of the

Agreement to prevent Regan and/or Associated from unfairly soliciting Carbone's customers, to prevent the further disclosure of Carbone's confidential and proprietary information and to seek the return of Carbone's property from Regan.

**COUNTERSTATEMENT OF FACTS**

It should be noted at the outset that defendants have moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), they have done so only as to Count IV of the First Amended Verified Complaint. The other Counts they seek to dismiss solely on jurisdictional and venue grounds. As for their Rule 12(b)(6) motion addressed to Count IV, it is based primarily on a choice of law argument. As such, Carbone maintains that most of the factual assertions contained in defendants' moving papers, many of which are facially inaccurate and are disputed by Carbone, are irrelevant in deciding whether personal jurisdiction exists and which ultimately pertain to the actual merits of the case. Carbone will be prepared to address any such facts at the hearing in the event the Court deems them relevant.

**ARGUMENT**

**I. Standard to Establish Specific Jurisdiction.**

The United States Supreme Court has rejected any resort to talismanic jurisdictional formulas for resolving questions of personal jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 485 (1985). Instead, it has expressly stated that "the facts of each case must be weighed in determining whether personal jurisdiction would comport with 'fair play and substantial justice.'" Id. at 485-86, *quoting* Kulko v. California Superior Court, 436 U.S. 84, 92 (1978). As Judge Selya succinctly stated "[d]etermining personal jurisdiction has always been more an art than a science." Donatelli v. Nat'l Hockey League, 893 F.2d 459, 468 n.7 (1st Cir. 1994).

The standard for deciding motions to dismiss for want of personal jurisdiction is commonly referred to as the "*prima facie*" standard that requires a court "to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Microfibres, Inc. v. McDevitt, 20 F. Supp. 2d 316, at 319 (D.R.I. 1998)(citations omitted). Personal jurisdiction is proper where the mandates of Rhode Island's long-arm statute are satisfied and hailing the defendant into court in the forum complies with the due process clause of the Fourteenth Amendment to the United States Constitution. Levinger v. Matthew Stuart & Co., 676 F. Supp. 437, 439 (D.R.I. 1988). As conceded by defendants in footnote 1 of their memorandum, since Rhode Island's long-arm statute reaches to the full extent allowable under the Fourteenth Amendment, it is only necessary to look to the due process requirements. Id., *citing* Conn v. ITT Aetna Finance Co., 105 R.I. 397, 402, 252 A.2d 184, 186 (1969). Due process requirements are satisfied when *in personam* jurisdiction is asserted over a defendant that has certain minimum contacts with the forum state, such that maintenance of the suit does not violate traditional notions of fair play and substantial justice. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984).

Although somewhat different in the contract and tort contexts, in deciding whether the *prima facie* standard is met, the Court must consider the following factors:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby involving the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.
>
> . . .

> The five Gestalt factors are: "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies."

Microfibres, 20 F. Supp. 2d at 329 (citations omitted).

It is important to note that the "focus of the 'minimum contacts' analysis is not *which* contacts with the forum are absent, nor *where* the contacts predominate, but only 'whether enough minimum contacts [with the forum] exist [such] that the district court's assumption of specific jurisdiction does not offend due process." Production Group Int'l, Inc. v. Goldman, 337 F. Supp. 2d 788 (E.D. Va. 2004)(citations omitted). It is also critical to evaluate a defendant's contacts with a forum in their entirety and not as isolated incidents in evaluating personal jurisdiction. See id.

## II. Regan Has Sufficient Minimum Contacts With Rhode Island to Establish Specific Jurisdiction.

### A. Regan's Contacts With Rhode Island.

Contrary to defendants' representations, Regan had substantial, daily contact with Rhode Island sufficient to establish specific jurisdiction. As sworn to by Thomas J. Carbone, Vice President of The R.J. Carbone Company, Regan would personally visit Carbone's Cranston office ("Headquarters") up to ten days a year, not four as claimed by defendants, during the twenty years he was employed by Carbone. See Affidavit of Thomas J. Carbone, filed in support of Carbone's opposition. Regan would travel to Carbone's Headquarters before major holidays (Mother's Day, Valentine's Day, Easter, Thanksgiving and Christmas). Id. at ¶6. Regan would then make telephone calls to customers from Carbone's Headquarters before these holidays. Id. Regan also would travel to Cranston every time he needed his company vehicle serviced, which was usually two to four times a year. Id. at ¶7. Until about

a year ago, the Carbone vehicle that Regan drove was registered in Rhode Island and had Rhode Island license plates. Id. Until the last couple years, every November Regan would invite all of Carbone's Connecticut customers to come to Rhode Island for Carbone's Open House/Sunday Sale, which he would also attend. Id. at ¶8. Lastly, Regan would also come to Rhode Island to pick up new product samples a couple times a year. Id. at ¶9.

During his twenty years with Carbone, Regan was in daily communication with, and was supervised from, Carbone's headquarters in Cranston. Id. at ¶10. Regan would call in at least once a day, sometimes several times a day, to talk to Marvin Ramirez, Carbone's Customer Service Supervisor. Id. He also would contact other Carbone employees in Cranston as needed. Id.

Regan was given a telephone voice mail account by Carbone. Id. at ¶11. Regan would call into Carbone's switchboard located at its Cranston headquarters to access his voice messages on a daily basis. Id. Carbone also paid for a facsimile machine and one phone line in Regan's home to facilitate daily communications between Regan and Carbone's headquarters. Id. Regan was also given personalized business cards which listed Carbone's Cranston business address. Id.

Regan used Carbone's administrative facilities in Rhode Island on a daily basis. Regan would submit all sales orders to Rhode Island by facsimile. Id. at ¶12. All sales and commission reports that Regan used were generated out of Cranston. Id. Regan would receive purchase receipts and information concerning product updates from Rhode Island. Id. All customer product was shipped out of Carbone's Cranston headquarters. Id.

Regan came to Rhode Island at least twice to interview for his job with Carbone. Id. at ¶13. He signed all initial employment documents, including his employment Agreement that is annexed hereto as Exhibit A, in Rhode Island. Id.

Regan was paid on a weekly basis by a Rhode Island bank through PayChex based in Rhode Island. Id. at ¶14. Regan's health insurance plan (Blue Cross Blue Shield of R.I.) was based and administered in Rhode Island. Id. For approximately ten years, Regan's 401(k) plan was administrated by Fleet/Bank of America based in Rhode Island. Id. For the last three years, the current sales agent for Great West Retirement, Carbone's current 401(k) administrator, has been located in Bristol, Rhode Island. Id. Regan was invited to every Carbone meeting in Rhode Island regarding employee and health benefits. Id. If he ever had any major employment issues, Regan always personally traveled to Carbone's headquarters to resolve these issues with management. Id.

As illustrated below, Regan's contacts with Rhode Island are substantially more significant than all of the precedent discussed below given Regan's roughly two hundred visits to Rhode Island, as his Agreement was negotiated and executed in Rhode Island, and given the frequency of his daily communication with Carbone's Headquarters.

### B. Carbone's Claims Relate to Regan's Forum-State Activities.

The first requirement of the tripartite Microfibres test is often described as a "relatedness" requirement. See Brian Jackson & Co. v. Eximias Pharm. Corp., 248 F. Supp. 2d 31, 35 (D.R.I. 2003). The "relatedness" requirement "focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." Id. (citations omitted). Importantly, tortious activity need not take place in the forum state to establish jurisdiction. Where a non-resident directs its tortious actions at a resident of the forum, it can "be fairly inferred that

they intended the brunt of the injury" to be felt in the forum state. Hugel v. McNell, 886 F.2d 1, 5 (1st Cir. 1989).

In this case, Carbone's contract and tort based claims against Regan directly arise out of, or relate to, Regan's forum state-activities. In the contract context, the terms of his employment were negotiated in Rhode Island, his Agreement was signed in Rhode Island, Carbone performed pursuant to the Agreement in Rhode Island and the Agreement clearly contemplated an "ongoing interaction between" Carbone and Regan in Rhode Island. See Eximias, 248 F. Supp. 2d at 35. In the tort context, Regan's intentional decision to solicit Carbone's customers, to misappropriate confidential business information developed and maintained by Carbone in Rhode Island and to otherwise unfairly compete with Carbone directly impacts Carbone's financial bottom line in Rhode Island and therefore, meets the "relatedness" requirement of the first prong.

### C. Regan Purposefully Injected Himself Into The Rhode Island Market by Working for Carbone.

The deliberateness of Regan's contacts with Rhode Island is the focus of the second prong of the Microfibres test. "The requirement of 'purposeful availment' necessitates a voluntary decision by the defendant to inject itself into the local economy as a market participant." Eximias, 248 F. Supp. 2d at 35-36.

Case law is replete with examples of courts exercising specific jurisdiction over out-of-state employees based on less extensive contacts than those in this case. In Equifax Services, Inc. v. Hitz, 905 F.2d 1355 (10th Cir. 1990), the Court of Appeals affirmed the lower court's enforcement of a restrictive covenant involving a California branch manager of a Kansas-based corporation. In that case, the defendant worked solely in California but was supervised from Kansas, had regular contact with plaintiff's employees in Kansas, customers

were invoiced from, and made payment to, plaintiff's offices in Kansas, and defendant was paid and provided necessary administrative support from Kansas. Defendant also negotiated the terms of his employment contract in Kansas.

In spite of having only been in Kansas two to three times and performing all of his duties exclusively in California, the Tenth Circuit affirmed the finding of specific personal jurisdiction over the defendant based on the facts described above. The Tenth Circuit rejected the employee's argument that none of his contacts with Kansas were purposeful because they were required by his employer, noting, "when forum contacts are a natural result of a contractual relationship, it indicates purposeful affiliation with the forum through an interstate contractual relationship." Id. at 1359.

In United Radio, Inc. v. Wagner, 448 F. Supp. 2d 839 (E.D. Ky. 2006), the district court asserted specific jurisdiction over a Michigan employee given the employee's continuous electronic mail and telephone contact with his Kentucky employer's home office, the fact that he made thirteen trips into Kentucky and earned a salary paid in Kentucky. In Production Group Int'l. v. Goldman, 337 F. Supp. 2d 788 (E.D. Va. 2004), personal jurisdiction was established where a Florida employee communicated regularly with his Virginia-based employer in spite of the employee actually signing his employment contract in Florida and traveling to Virginia only three times.[1] Finally, in Eximias, 248 F. Supp. 2d at 35, this Court found personal jurisdiction based only on a contract partially negotiated and executed in Rhode Island and the existence of correspondence in and out of Rhode Island. This Court correctly noted that "as technological progress has increased the flow of commerce

[1] As shown in Production Group Int'l., specific jurisdiction is not defeated because the contract at issue lacks a forum selection and/or choice-of-law clause.

between the states, the need for jurisdiction over nonresidents has undergone a similar increase." Id. (citations omitted).

Here, there is even stronger evidence that Regan meets the purposeful availment factor than the cases listed above based on his personal presence in Rhode Island alone. Assuming *arguendo* that defendants' representation that Regan was only in Rhode Island four times a year, a figure that is grossly misstated according to Thomas Carbone who stated that Regan was in Rhode Island up to ten times a year, that means Regan was in Rhode Island approximately eighty times during the course of his twenty year employment with Carbone. The frequency of Regan's personal presence in Rhode Island combined with his daily contact with Carbone's Headquarters alone warrants this Court finding specific jurisdiction. If all of Regan's contacts are considered as a whole, there can be no doubt that jurisdiction exists.

### D. The Gestalt Factors Favor Carbone.

The first two prongs of the *prima facie* test having been met, it becomes the defendants' burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" pursuant to the five Gestalt factors. Equifax, 905 F. 2d at 1359 (citations omitted).

#### 1. There is no Burden For Defendant to Appear.

In analyzing this "burden," the First Circuit recognizes the fact that "defending in a foreign jurisdiction almost always presents some measure of inconvenience." Sawtelle v. Farrell, 70 F.3d 1381, 1395 (1st Cir. 1995). As such, "this factor becomes meaningful only where a party can demonstrate a 'special or unusual burden.'" Id. (*quoting* Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994), *cert. denied* 514 U.S. 1108 (1995)).

The only "burden" that Regan can point to is the fact that he currently lives in Vermont. This argument is completely unavailing given his long standing relationship with Carbone which was consummated in Rhode Island and his frequent travel to Rhode Island. Regan is only being asked to appear in another New England state to resolve this dispute, not travel to Alaska or Hawaii. See Brian Jackson & Co. v. Eximias Pharm. Corp., *supra,* at 37 (no undue burden for a Pennsylvania defendant to litigate in Rhode Island). The bottom line is that defendants are going to have to travel over two hours no matter where the case is venued. The marginal increase in travel to Rhode Island is not significant enough to warrant a finding of this factor in defendants' favor.

**2. Rhode Island has a Substantial Interest.**

The second factor determines the extent to which Rhode Island has an interest in obtaining jurisdiction over Regan. Here, Regan breached his Agreement negatively affecting a Rhode Island company. The damage to Carbone resulting from these breaches, *i.e.* loss of revenue and the disclosure and use of proprietary business information, is significant. Without question, Rhode Island has a vested interest in protecting its residents from such egregious and flagrant contractual breaches. See Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 776 (1984)(state has a "legitimate interest in holding [defendants] answerable on a claim related to" the contacts in the state).

**3. Carbone's Choice of Forum is Entitled to Deference.**

Carbone's interest in obtaining convenient and effective relief is clear. It is well-settled that "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." Sawtelle, 70 F.3d at 1395 (*citing* Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d at 151); see also Asahi Metal Indus. Co. v. Superior

Court of Calif., 480 U.S. 102 (1987)("often the interests of the plaintiff ...will justify even the serious burdens" on the defendant). Carbone should not have to litigate this action in Connecticut or the Northern District of New York and incur additional expenses caused by defendants' misconduct.

**4. The Administration of Justice.**

This factor also favors jurisdiction in Rhode Island. This Court, when compared to outside forums, is best able to interpret a Rhode Island contract. Further, this Court, given its entering of a Temporary Restraining Order, is already familiar with the underlying facts and claims in this action. See Eximias, 248 F. Supp. 2d at 38 ("efficient administration of justice also favors Rhode Island, since this action is already proceeding here and this Court has become familiar with the claims involved"). It should also be noted that the majority of evidence and witnesses concerning Carbone's employment with Carbone is located in Rhode Island. To the extent testimony from Carbone's customers is necessary at trial, many of these witnesses are within the subpoena power of this Court. Carbone is interested in an efficient and swift resolution of this action which it believes can best be accomplished by this Court.

**5. Common Interests of the Sovereigns.**

The final factor requires the Court to consider the common interests of all sovereigns in promoting substantive social policies. See Sawtelle, 70 F.3d at 1395. Here, this implicates the ability of the State of Rhode Island to provide a convenient forum for its residents to redress injuries inflicted by non-resident actions. See id. Defendants' claims that Vermont has a stronger interest because Regan is "unemployable and subject to public support" are unsubstantiated.[2] Regan is capable of seeking employment that does not conflict with the

[2] To date, Regan and/or his son have been fully capable of paying significant litigation expenses necessary to vigorously litigate this matter.

terms of his Agreement and/or can wait a year before directly competing with Carbone, assuming he meets all of the other requirements of the Agreement. To the extent Rhode Island's social policies conflict with other states, these policies "can usually be accommodated through choice-of-law rules rather than through outright preclusion of jurisdiction in one forum." Equifax, 905 F. 2d at 1360 (*quoting* Burger King Corp. v. Rudzewicz, 471 U.S. 462, 483-84 (1985)).

In sum, all of the Gestalt factors favor Carbone, and assuming the balance of interests is close (and it is not), defendants cannot meet their burden to establish that jurisdiction is unreasonable. As compared to other discussed precedent, personal jurisdiction is more compelling in this case. Defendants' arguments to the contrary miss the point. First, defendants' consistently argue in their moving papers that jurisdiction does not exist because little to none of Regan's contacts took place "in" Rhode Island. This is not the proper test. Again, the "focus of the 'minimum contacts' analysis is not *which* contacts with the forum are absent, nor *where* the contacts predominate, but only 'whether enough minimum contacts [with the forum] exist [such] that the district court's assumption of specific jurisdiction does not offend due process.'" Production Group Int'l., 337 F. Supp. at 788 (citations omitted)("the mere fact that the greater part of defendant's involvement with plaintiff took place in Florida, not Virginia, does not make personal jurisdiction violative of due process"). Second, Regan's numerous contacts with Rhode Island are substantially more broad than a "single commercial contract with a resident of the forum state" as defendants suggest. Third, to the extent there are not enough minimum contacts with Rhode Island, and there definitely are, this Court has specific jurisdiction over Regan because his tortious conduct outside of Rhode Island affected Carbone in Rhode Island, as outlined below for defendant Associated.

## III. Specific Jurisdiction Exists Over Associated.

Carbone also has satisfied all three prongs of the Microfibres test establishing specific personal jurisdiction over Associated. First, Carbone's claims against Associated directly arise out of, or relate to, forum state activities. Among other counts, Carbone alleges that Associated has tortiously interfered with Carbone's business by inducing Regan to breach the terms of Regan's employment Agreement by unfairly soliciting Carbone's customers and by disclosing proprietary information to Associated and/or using Carbone's proprietary information for Associated's benefit. Where a non-resident like Associated directs its tortious actions at a resident of the forum, it can "be fairly inferred that they intended the brunt of the injury" to be felt in the forum state. See Hugel v. McNell, 886 F.2d 1, 5 (1st Cir. 1989). This Court, addressing this precise question has found that where a defendant tortiously interferes "with a Rhode Island corporation's business rights arising out of a Rhode Island contract, it [is] clearly foreseeable that such activity would have a direct effect in Rhode Island. Therefore, it is fair for this Court to exercise jurisdiction … ." Thompson Trading Ltd. v. Allied Lyons PLC, 123 F.R.D. 417, 428 (D.R.I. 1989); see also Equifax, 905 F.2d at 1358 ("if a defendant's actions cause foreseeable injuries in another state, it is, 'at the very least, presumptively reasonable for [the defendant] to be called to account there for such injuries.'" (*quoting* Burger King, 411 U.S. at 480). In short, to "be constitutionally significant, forum-state contacts need not involve physical presence." Phillips Exeter Academy, 196 F.3d 284, 290, citing Burger King, 471 U.S. at 476.[3]

[3] As a result, the United States Supreme Court has found personal jurisdiction over a non-resident defendant where the only connection between a Texas company and a California resident was the mailing of the certificate of insurance from Texas to California (McGee v. Int'l Life Ins. Co., 355 U.S. 220 (1957)); where the only general contact was selling a nationwide publication within the forum state (Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984)); and where the only specific contact was an article written in Florida and sold in the forum state of California (Calder v. Jones, 465 U.S. 783 (1984)).

Two cases decided by this Court are on all fours with the instant case. In Northeastern Land Services, Ltd. v. Schulke, 988 F. Supp. 54 (D.R.I. 1957), the plaintiff, a Rhode Island company, brought suit against a former executive for interference with contractual relations and misappropriation of trade secrets. The defendant, a resident of Texas, sought dismissal for lack of personal jurisdiction. While the defendant did have contacts with Rhode Island that gave rise to the claimed injuries, the physical contacts with Rhode Island were not necessary to the finding that specific personal jurisdiction could be asserted against the defendant. The Court made clear that "[t]he consequences of such misdoings, even if effected exclusively from within Texas, would necessarily effect this forum." Id. at 59. Because the defendant's tortious activities, including interference with a contract and misappropriation of trade secrets, negatively impacted a Rhode Island company, the out-of-state defendant could be haled into a Rhode Island court to answer for his conduct. See id.

In Thompson Trading, this Court found specific personal jurisdiction over two foreign corporations alleged to have interfered with a Rhode Island contract and prospective business relations in Rhode Island. See 123 F.R.D. at 428. In doing so, the Court made clear that it was not important to answer the question where the "tort of wrongful interference with a business relationship occurs." Id. Whether the wrongful acts were committed in the state or committed elsewhere through third parties was unimportant to the Court's inquiry. What *was* important was the effect the tortious activity had on Rhode Island. The Court held that "[b]ecause defendants allegedly tortiously interfered with a Rhode Island corporation's business rights arising out of a Rhode Island contract, it was clearly foreseeable that such activity would have a direct effect in Rhode Island. Therefore, it is fair for this Court to

exercise jurisdiction … because their alleged tortious conduct constitutes the requisite minimum contact for the exercise of special *in personam* jurisdiction ... ." Id.

Here, Carbone alleges that Associated, with full knowledge of the restrictions in the Regan's Agreement, hired Regan to gain access to Carbone's proprietary information which would be of significant value to Associated.[4] Associated interfered with Regan's employment Agreement to gain access to Carbone' customers, trade secrets and other proprietary and confidential business information, all of which was developed and is maintained in Rhode Island. Associated knew that employing Regan would give Associated an unfair advantage over Carbone and constitute actual or threatened misappropriation of Carbone's trade secrets and other proprietary information. All of the damages caused by Associated's tortious actions are directed at Carbone in Rhode Island, and the economic and intangible harm that will result from these actions will negatively impact Carbone in Rhode Island.[5] Based on well-settled principles established by this Court, jurisdiction is properly exercised over Associated in Rhode Island.

The second prong is also satisfied by Associated's tortious activity. "This district has previously recognized the limited relevance of the conventional availment inquiry in tort actions." Northeastern Land Services., 988 F. Supp. at 59. See also Thompson Trading, 123

---

[4] At the latest, Associated learned of Regan's contractual restrictions when notified of them by Regan's counsel in a letter dated July 22, 2008, annexed hereto as Exhibit B.

[5] Defendants wrongly focus on the physical location as to where the torts occurred and apply the wrong standard for assessing specific personal jurisdiction. According to defendants, specific personal jurisdiction only attaches when the claim against a defendant is based on the defendant's physical conduct in the forum state, and the defendant has purposely availed itself of the forum state's laws. But the First Circuit in Phillips Exeter expressly stated that "to be constitutionally significant forum-state contacts *need not* involve physical presence." Id. at 290 (emphasis supplied). Moreover, the purposeful availment test is inapplicable to tortious conduct directed at the forum-state. See Thompson Trading, 123 F.R.D. at 426 (finding that one committing a tort in a forum does not avail itself of that forum's laws, because those laws likely prohibit the defendant's tortious conduct). The appropriate question, as asked in Hugel, Northeastern Land Services, and Thompson Trading, *supra*, is whether the alleged tortfeasor has purposely directed its conduct at a resident of the forum, not whether the tortious conduct physically occurred in the forum.

F.R.D. at 426 ("one committing a tort in a forum does not purposefully avail himself of the benefits and protections of its laws, since such laws are not supporting and protecting his illegal activities"). While due process requires that a defendant have "fair warning" that a particular activity may subject it to the jurisdiction somewhere else (*see* Burger King, 471 U.S. at 472) the "fair warning" requirement is satisfied if the defendant purposely directs its activities at residents of the forum, and the litigation arises out of or relates to those activities. See Helicopteros Nacionales, 466 U.S. at 414; Hugel, 886 F.2d at 4; Northeastern Land Services, 988 F. Supp. at 59; Thompson Trading, 123 F.R.D. at 428, *reconsideration denied*, 124 F.R.D. 534 (D.R.I. 1989). As noted above, Associated tortiously interfered with Regan's employment Agreement, which tortious activity was directly aimed at Carbone, and will cause Carbone substantial damage in Rhode Island.

Finally, the Gestalt factors are satisfied for the same reasons they are satisfied for Regan as outlined above. This Court has specific jurisdiction over both defendants[6] and thus, defendants' pending motion should be denied in its entirety.

## IV. Venue is Proper Pursuant to 28 U.S.C. § 1406(a).

Defendants have improperly moved to dismiss on venue grounds pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a). 28 U.S.C. § 1391(a) provides the following forum choices in a diversity action:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

[6] To the extent this Court finds that personal jurisdiction does not exist over either defendant, Carbone requests that defendants' dismissal motion be held in abeyance until such time as to permit Carbone to conduct jurisdictional discovery.

> (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced.

28 U.S.C. § 1391(a). The venue statute was amended in 1990 to "liberalize" venue requirements. See General Latex and Chem. Corp. (of N.C.) v. Phoenix Med. Tech., Inc., 765 F. Supp. 1246, 1250-51 (W.D.N.C. 1991). Along those lines, official commentary to 28 U.S.C. § 1391(a)(2) notes that venue might be proper in more than one district:

> [t]he fact that substantial activities took place in district B does not disqualify district A as proper venue as long as "substantial" activities took place in A, too. Indeed, district A should not be disqualified even if it is shown that the activities in B were more substantial, or even the most substantial. Any other approach would restore the pinpointing problem that created the difficulties under the now discarded "claim arose" standard. If the selected district's contacts are "substantial," it should make no difference that another's are more so, or the most so.

Commentary on 1988 and 1990 Revisions of Section 1391.

Pursuant to 28 U.S.C. § 1391(c), "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction." Given this Court has jurisdiction over Associated, venue is proper against that defendant.

Similar to the arguments already made regarding specific jurisdiction, venue is proper for Regan because the claims related to him occurred as the result of his contacts with Rhode Island. Among other contacts, Regan negotiated and signed his employment Agreement in Rhode Island, Regan was supervised from Rhode Island, Regan traveled approximately two hundred times to Rhode Island during his twenty years of employment, Regan communicated on a daily basis with Carbone's employees in Rhode Island and used Carbone's administrative resources that were based in Rhode Island. Moreover, venue is proper against Associated

because for the reasons stated above, that corporate defendant is subject to personal jurisdiction in this district.

Given that venue properly lies over both defendants, § 1406(a) does not require or warrant dismissal. 28 U.S.C. § 1406(a) only applies if venue in the original district is "wrong" rather than merely inconvenient. See Van Dusen v. Barrack, 376 U.S. 612, 634 (1964)("[s]ection 1406(a) provides for transfer from forums in which venue is wrongly or improperly laid, whereas in contrast, Section 1404(a) operates on the premise that the plaintiff has properly exercised his venue privilege" and that venue is inconvenient for defendant); D'Antuono v. CCH Computax Sys., Inc., 570 F. Supp. 708, 711 (D.R.I. 1983). Because venue is proper in Rhode Island, § 1406(a) is not implicated.

## V. Defendants Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) Should be Denied as Rhode Island is the Appropriate Venue to Redress Harm to a Rhode Island Company.

Carbone is entitled to have its claims against the defendants, which are based on a Rhode contract and resulting from tortious conduct directed at Rhode Island, heard in its choice of forum. Defendants fail to meet the substantial burden to justify a change of venue, particularly where they offer choices of venue that are equally inconvenient.[7]

First, in spite of this Court having specific jurisdiction over both defendants, defendants request transfer of the claims against it to the District of Connecticut or the Northern District of New York pursuant to 28 U.S.C. § 1404. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

[7] When the balance of interests is equal or only slightly in favor of the moving party, the motion to transfer should be denied. LaPlante v. Am. Honda Motor Co., C.A. No. 91-0015T, 1992 U.S. Dist. LEXIS 10180, #4 (D.R.I. 1992).

Defendants bear a heavy burden of demonstrating the necessity of the transfer to either district. See Microfibres, 20 F. Supp. 2d at 323.

Second, while the decision to transfer is discretionary and decided on a case-by-case basis, cases recognize a presumption in favor of the plaintiff's choice of its home forum. Id. See also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981)("[t]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum"); Paradis v. Dooley, 774 F. Supp. 79, 82 (D.R.I. 1991)(denying motion to change venue)(*quoting* Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed"). This is especially so because Carbone is headquartered in Rhode Island. See LaPlante, C.A. 1992 U.S. Dist. LEXIS 10180 AT *4. "[I]f the plaintiff is a resident of the district where the suit is brought, the plaintiff's choice of forum is given even greater deference." Id. Here, defendants have failed to overcome this presumption.

Third, defendants have failed to show that "private and public interest factors clearly point towards trial in the alternative forum." Paradis, 774 F. Supp. at 82. The private factors include: (1) the availability of compulsory process to compel attendance of unwilling witnesses; (2) the cost of attendance of willing witnesses; (3) the relative ease of access to sources of proof; (4) the ease of a view of premises, if such a view would be appropriate to the action; and (5) all other practical problems that make trial of a case easy, expeditious and inexpensive. See Elbalah v. Republic Ins. Co., 879 F. Supp. 3, 5 (D.R.I. 1995)(*citing* Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). The public factors include: (1) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the

action; (2) the avoidance of unnecessary problems in conflict of law, or in the application of foreign law; (3) the local interest in having localized controversies decided at home; (4) the unfairness of burdening citizens in an unrelated forum with jury duty; and (5) administrative difficulties flowing from court congestion. Id.

**1. The Private Factors Do Not Favor Transfer.**

None of the private factors favor transfer. Compulsory process is equally available in Rhode Island, Connecticut, or New York to depose witnesses, and the cost of obtaining testimony should not be significantly different. Regardless of forum, the parties will be conducting discovery in more than one state. Because this action arose in Rhode Island, the majority of witnesses and proof are located in Rhode Island, and many, if not most, of the third party witnesses are within the subpoena power of this Court, the interests of justice favor this action remaining in Rhode Island.

A showing of inconvenience to the defendants is not sufficient to merit transfer where the transfer would merely shift the inconvenience to the plaintiff. See Blinzler v. Marriott Int'l, 857 F. Supp. 1, 3 (D.R.I. 1994). It should be noted that Carbone resides in Rhode Island whereas neither defendant resides in either of the purposed alternative venues - - the District of Connecticut or New York. As such, Carbone's choice of venue should be given even more deference given each defendants' nexus with each proposed forum is questionable at best. Obviously, either plaintiff or defendants will be inconvenienced regardless of whether the transfer motion is granted. Levinger, 676 F. Supp. at 441 (venue transfer denied with court noting that to tear either party away from their enterprises will cause the parties some inconvenience and expense).

Moreover, defendants' contention that it would be a burden on its witnesses to travel to Rhode Island is unavailing. With advances in communications and travel, a party's claim of burden associated with litigating in a foreign forum is rarely persuasive. See Burger King, 471 U.S. at 474.

Of importance, a party seeking transfer for convenience of witnesses must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover. See Eximias, 248 F. Supp. 2d at 38; see also Elbalah 879 F. 2d at 5. Other than identifying all of Carbone's customers in Connecticut and New York as potential witnesses, defendants did not specifically identify the "key" witnesses to be called or make a statement about what their testimony will cover. Defendants should not be given an opportunity to correct this deficiency on reply. Simple conclusory statements about the location of witnesses are insufficient to support a transfer from this Court based on witness convenience. See Levinger, 676 F. Supp. at 441. Further, Carbone's witnesses (possibly including Robert, Thomas and Stephen Carbone) live and work in Rhode Island. Carbone's primary anticipated witnesses who will testify at the preliminary injunction hearing will offer testimony as to Regan's Agreement with Carbone, Carbone's business interests that support the non-compete, the nature and extent of Carbone's proprietary information, including trade secrets, Regan's exposure to that information, how Carbone first learned of Regan's breaches of the Agreement and the harm resulting from the loss of a key salesperson and exposure of proprietary information and trade secrets to a competitor. These witnesses all live in Rhode Island and work at Carbone's Cranston headquarters.

**2. The Public Factors Do Not Favor Transfer.**

Rhode Island has a strong public interest in seeing that a complaint by a resident company against a foreign defendant is adequately resolved. See Paradis, 774 F. Supp. at 82. Rhode Island also has an obvious interest in providing a civil forum to litigate alleged encroachments upon the trade secrets and interference with the contracts of Rhode Island corporations. See Northeastern Land Services, 988 F. Supp. at 59. Carbone's claims involve Rhode Island's trade secret statute and interference with a Rhode Island contract, so conflict of law issues favor a Rhode Island venue. On the same basis, venue in Connecticut or New York would burden local jurors with deciding a case involving a Rhode Island contract involving harm to a Rhode Island company. There are also no administrative reasons to transfer this case. This Court's calendar is current and sufficient local interests exist to justify conducting a trial in Rhode Island. See Paradis, 774 F. Supp. at 82; Ryan, Klimek, Ryan P'ship v. Royal Ins. Co. of America, 695 F. Supp. 644, 648 (D.R.I. 1988).

**VI. Defendant's Motion to Dismiss Count IV Should be Denied.**

Defendants' motion to dismiss Carbone's Rhode Island Uniform Trade Secrets Act ("UTSA") claim pursuant to Fed. R. Civ. P. 12(b)(6) should be denied in its entirety for two reasons.

First, Dismissal of Carbone's UTSA claim is improper because there is no actual conflict between Rhode Island and Connecticut law with respect to interpretation of the UTSA. If the laws of a state are not in conflict, the result is deemed a "false conflict" or no conflict at all, "and no choice of law analysis need be made." 15A C.J.S. Conflict of Laws § 28 (2008); see also Engine Specialties, Inc. v. Bombardier Ltd., 605 F.2d 1, FN26 (1st Cir. 1979)(false conflicts exist when "the laws of the two states are found to be compatible").

> The principle that a court may eschew a choice of law is grounded in the pragmatic notice that federal courts, sitting in diversity, should do no more than is necessary to decide the case … [t]he protypical example in this context is when there is no material conflict between the definitive law of the competing forums in terms of resolving the claims at issue.

Robertson Stephens, Inc. v. Chubb Corp., 473 F. Supp. 2d 265, 269 (D.R.I. 2007); see also Fashion House, Inc. v. K Mart Corp., 892 F.2d 1076, 1092 (1st Cir. 1989)("[w]hen a choice-of-law question has been reduced to the point where nothing turns on more precise refinement, that should be the end of the matter").

No conflict of laws analysis should be applied in this case which warrants dismissal of Count IV because both Rhode Island and Connecticut have adopted the UTSA. In comparing Conn. Gen Stat. § 35-51 *et seq.* to R.I. Gen. Laws § 6-41-1 *et seq.*, both statutes: (1) are cited as the "Uniform Trade Secrets Act," (2) define "misappropriation" and "trade secret" similarly, (3) mandate claims be brought within three years, (4) provide for injunctive relief, (5) compensatory damages for actual loss and unjust enrichment caused by misappropriation, (6) punitive damages for willful and malicious conduct, and (7) attorney's fees if the misappropriation was made in bad faith. Answering the question of whether an actual conflict exists, both statutes state precisely that "[t]his chapter shall be applied and construed to effectuate its general purpose *to make uniform the law with respect to the subject of this chapter among states enacting it.*" See Conn. Gen Stat. § 35-58 and R.I. Gen. Laws § 6-41-8 (emphasis supplied). Again, any differences between the two statutes must be "material" to warrant a court conducting conflicts of law analysis. As shown, there is no material difference between the Connecticut and Rhode Island trade secrets statutes, and therefore, defendants' argument that Count IV should be dismissed because Connecticut law is "potentially outcome determinative" is simply not accurate.

Second, the extent this Court feels a choice of law analysis is required, the proper analysis is the "interest weighing" analysis, not defendants "place of contract" analysis. See Magnum Defense, Inc., v. Harbour Group Ltd, 248 F. Supp. 2d 64 (D.R.I. 2003)("Rhode Island has adopted an interest-weighing analysis to choose between the conflicting tort law of two or more states").

> T[he] Court must make a series of factual determinations and must evaluate several policy considerations. The factual decisions are 1) place of contracting; 2) situs of negotiations; 3) place of performance; 4) location of contract subject matter, if any; and 5) parties' business locations and states of incorporation. The policy considerations include 1) needs of the interstate system; 2) relevant policies of the forum; 3) the policies of the other affected states and their interest in the outcome of the litigation; 4) protection of the parties' justified expectations; 5) uniformity and predictability of results; and 6) ease in determining and applying different bodies of law.

(citations omitted.)

The first two factors (place of contracting and situs of negotiations) favor Carbone given the Agreement was executed in Rhode Island and negotiated in Rhode Island as sworn to by Thomas Carbone. For the third and fourth factors, the place of performance was also Rhode Island as all of Carbone's proprietary information, including the identify of Carbone's customers, was disclosed to Regan from Rhode Island and as all Carbone product was shipped out of Carbone's Headquarters in Cranston. Further, Carbone performed pursuant to Regan's employment Agreement in Rhode Island. As to the fifth factor, Carbone is a Rhode Island corporation with its principal place of business in Cranston. Regan is a Vermont resident and Associated is a New Jersey corporation, so neither defendant is formally a domiciliary of either Connecticut or New York.

The policy considerations of the "interest weighing" test also weigh heavily towards Carbone for the same reasons specific jurisdiction is proper and transfer of venue would be a

mistake. Rhode Island has a substantial state interest in protecting its citizen's trade secrets and proprietary materials, as shown in Northeastern Land Services.

Finally, assuming this Court is inclined to dismiss Count IV, defendants' motion is premature at this juncture, and Carbone would request the opportunity to conduct jurisdictional discovery. In the alternative, Carbone would request the opportunity to assert a UTSA claim based on Connecticut law, although doing so is unnecessary given the law is exactly the same.

## CONCLUSION

For the foregoing reasons, Carbone respectfully requests that the defendants' Motion to Dismiss or Transfer be denied.

Respectfully submitted,

THE R. J. CARBONE COMPANY

By its Attorneys,

/s/ Stacey P. Nakasian

Stacey P. Nakasian, Esq. (#5069)
Duffy, Sweeney & Scott, Ltd.
One Turks Head Place
Providence, Rhode Island 02903
(401) 455-0700
(401) 455-0701 (Fax)

Dated: August 22, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of August, 2008, a true copy of the foregoing ***Memorandum of Law in Support of Plaintiff's Objection to Defendants' Motion to Dismiss or Transfer*** was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), including those listed below, and copies will be mailed to those indicated as non-registered participants.

S. Michael Levin, Esq.
Winograd, Shine & Zacks, P.C.
123 Dyer Street
Providence, RI 02903

Simon I. Allentuch, Esq.
Jarod F. Proto, Esq.
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
P.O. Box 1940
New Haven, CT 06509

/s/ Stacey P. Nakasian
Stacey P. Nakasian