UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF RHODE ISLAND

| | | |
|---|---|---|
| THE R.J. CARBONE COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No.: 08 CV 00291 S |
| | : | |
| TIMOTHY J. REGAN and | : | |
| ASSOCIATED WHOLESALE FLORIST | : | |
| INC. d/b/a Associated Wholesale Florist | : | |
| of New Jersey, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN**
**OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

Defendants, Timothy J. Regan and Associated Wholesale Florist, Inc. d/b/a Associated Wholesale Florist of New Jersey (individually "Regan" and "Associated") (collectively "Defendants"), respectfully submit this Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction.

**PRELIMINARY STATEMENT**

Defendants respectfully submit that the Agreement dated May 26, 1988 (the "Non-compete") is unenforceable because it is unreasonable and broader than necessary to protect the R.J. Carbone Company's ("Carbone") interests. In addition, Mr. Regan did not receive adequate consideration for entering into the Non-compete. Finally, the balance of the equities, including the fact that Mr. Regan will be unable to support himself or his family, strongly favor Mr. Regan over Carbone. For all of these reasons, the Court should deny plaintiff's Motion for Preliminary Injunction.

## COUNTER STATEMENT OF FACTS

**Regan's Employment History**

Regan first started working in the floral industry when he was about ten years old, in the late 1950s. He is currently sixty years old. Par. 2, Regan Affidavit.[1] In or about 1971, he accepted a position at a floral wholesaler named Nyren Brothers in Plantsville, Connecticut. He was a salesperson selling the same type of floral products and supplies that he eventually sold for Carbone. His territory was New York State. Par. 3, Regan Affidavit.

During 1979, he accepted a position at Fall River Floral Supply in Massachusetts, again selling the same type of floral products and supplies that he eventually sold for Carbone. His territory was primarily Connecticut and a small part of New York. Par. 4, Regan Affidavit. When he accepted a position at Carbone, he brought to Carbone all of the customers he developed at Fall River Floral Supplies. The customers he sold products to when he joined Carbone in 1988 were the same customers he sold products for Carbone in 2008. Par. 5, Regan Affidavit. In May, 1988, when Regan started his employment at Carbone, he signed a non-compete agreement. The agreement was signed in Rhode Island. A copy is attached to the Complaint and the Allentuch Declaration.

While he was employed by Carbone, Regan's primary territory was Connecticut, excluding a strip of land near Rhode Island. He also sold Carbone's merchandise to customers in New London and Willimantic, Connecticut. Historically more than eighty percent of his sales were in Connecticut. In addition, he sold Carbone products to customers in New York near the Connecticut border and north of the Connecticut border.

---

[1] The defendants respectfully refer to the Affidavit of Timothy Regan, the (the "Regan Affidavit") which was previously submitted to the Court in connection with the pending Motion to Dismiss.

He also sold product for Carbone in Vermont but was asked to cede the territory to another salesperson. Par. 6, Regan Affidavit. When he left his employment with Carbone, Regan's nearest customers were in Cambridge, New York, about an hour away from his home. Par. 7, Regan Affidavit.

There are twelve to fifteen wholesalers who sell essentially the same products as Carbone in Connecticut. These wholesalers sell similar products to approximately three hundred flower shops and garden centers in Connecticut. They are all listed in the phone book so there is nothing confidential about the customer list. Carbone sells products to over half of them. Almost all of these stores buy products from competitor wholesalers. Par. 8, Regan Affidavit.

Carbone sends newspaper mailers listing its products to its customers. It also sends faxes to customers with sales information. These documents contain some prices or Regan gives customers an order sheet with prices. Therefore, pricing is not secret. Regan does not know Carbone's cost of goods sold for any product. He is not aware of any non-public confidential information belonging to Carbone. Par. 9, Regan Affidavit. As required by the Court's order, Regan has returned all Carbone documents to Carbone.

**Regan's Termination of Employment With Carbone**

In 2007, Regan made approximately fifty thousand dollars working for Carbone but the compensation dropped in 2008. He is the sole breadwinner for his family and he left Carbone because he could no longer afford to work there with the deductions from his paycheck, the higher health insurance costs, and the reduced commissions that Carbone imposed. With respect to any benefits he received from Carbone, his doctors

are all in Vermont and he had a 401K through the Great-West Retirement Services. Par. 13, Regan Affidavit.

A few days before he gave notice to Carbone, Regan had lunch with Tom Pavlin of Associated in New York. Regan was unhappy in his job because money was very tight since Carbone had been taking money out of his paycheck and reducing his commission rate. Regan received a job offer the next day and gave his notice to Tom Carbone by telephone from Vermont. Par. 14, Regan Affidavit.

Regan told Tom Carbone on or about July 19, 2008, "I had enough. It's not worth it any more." Mr. Carbone told Regan to take a week off and to call him in August. Regan repeated that he had had enough. They never spoke again. Par. 15, Regan Affidavit. Regan left his company car with product samples at the Wallingford Flower Shop in Connecticut because he could get a ride from there. Carbone made three deliveries a week to the Wallingford Flower Shop. Since Regan had sold product to the Wallingford Flower shop for years even before he worked for Carbone, the Wallingford customer agreed to hold the car keys. Regan informed Stuart Cohen at Carbone that he was leaving the car at the Wallingford Flower shop, and Mr. Cohen indicated that he was fine with this arrangement. Id.

A week later, Regan dropped off most of the additional Carbone materials he had at Garden Path, a customer in Southington, CT. Because Carbone often left materials for Regan or picked up materials from Regan at this shop, it was a standard procedure to utilize this customer as a drop-off. Regan notified Carbone that he had dropped the materials off there. Par. 16, Regan Affidavit. Any other Carbone materials he had were delivered to Carbone's counsel.

Regan no longer has any Carbone materials in his possession and has not given any Carbone materials to his new employer. Par. 17., Regan Affidavit. Regan did call some of his customers after he left Carbone. Since he had worked with them, in some cases for over thirty years, he called them and thanked them for their business, told them that he had left Carbone, and further said that he would see them in the future. Regan did not solicit or receive any orders from any of them. Par. 17, Regan Affidavit.

Before this lawsuit was filed, Regan did go to a few customers in New York only. According to mapquest.com, these customers were about 100 miles or more from Hartford. Regan did receive some orders. To his knowledge, the orders have never been filled. In addition, products were delivered to two other shops. According to mapquest.com, these stores are 122 and 132 miles by car from Hartford, CT. Par. 19, Regan Affidavit.

Thereafter, plaintiff commenced this litigation. Since it was filed, Regan has not worked. Par. 20, Regan Affidavit. A temporary restraining order was entered by the Court prohibiting Regan from selling floral products to Carbone's customers in Rhode Island and New York. The temporary restraining order contains a different restriction from the Non-compete. The Non-compete prohibits Mr. Regan from working within a "radius of one hundred (100) miles of Hartford, Connecticut" for any entity competing in any manner with Carbone for a one year period.

## ARGUMENT

## I. The Non-compete Is Unenforceable

Under Rhode Island law, covenants not to compete are disfavored by the courts

and are carefully scrutinized Dial Media v. Schiff, 612 F.Supp. 1483, 1488-89 (D.R.I. 1985); Home Gas Corp. of Mass, Inc. v. DeBlois Oil Co., 691 F.Supp. 567, 572 (D.R.I. 1987). As a result, the Rhode Island Supreme Court has found that only reasonable non-competition agreements may be enforced. Cranston Print Works Co. v. Pothier, 848 A.2d 213, 219 (2004). (Emphasis added.) As plaintiff readily concedes, it must demonstrate a likelihood of success on the merits and this likelihood is dependant on whether the Court finds that the Non-compete is enforceable. See P. 6, Plaintiff's Memo of Law. Plaintiff cannot satisfy its burden.

Relying on Durapin, Inc. v. American Products, Inc., 559 A.2d 1051, 1053 (R.I. 1989), plaintiff admits that a non-compete is only enforceable to the extent necessary to protect a legitimate interest. P. 7, Plaintiff's Memo of Law. Plaintiff argues that the non-compete protects a legitimate interest in its "existing customer arrangements." P. 7, Plaintiff's Memo of Law. Plaintiff ignores the fact that the Non-compete is broader than necessary to protect its interest.

There is no dispute that the geographic scope of the Non-compete far exceeds Mr. Regan's territory. As set forth in the Counter Statement of Facts, Mr. Regan's territory is primarily Connecticut and includes a small piece of New York near and just north of the Connecticut border. By contrast, the Non-Compete restricts Mr. Regan from working, in any capacity, for a competitor, within a one hundred mile radius from Hartford, Connecticut. This area includes New York City and Long Island (as well as other parts of New York where Mr. Regan did not work), parts of New Jersey, most of Massachusetts, Rhode Island, and parts of Vermont and New Hampshire. Mr. Regan did

not work in the most of the territory covered by the Non-compete. The evidence will even show that plaintiff does not sell to customers in some of these areas.

When the Court heard these facts on August 5, 2008, it fashioned a temporary restraining order that prevented Mr. Regan from soliciting plaintiff's customers in New York and Connecticut with whom Mr. Regan worked. The restriction in the temporary restraining order is wholly different than what the parties had agreed to.

Under Rhode Island Law, the Court may not rewrite an unreasonable non-compete agreement in the employment context. It must blue pencil the agreement.[2] "According to this doctrine, a restraint's validity depends upon a mechanical-divisibility test whereby a covenant would be enforceable only if it remains grammatically meaningful after striking out any offending provisions." Durapin, Inc. v. American Prods., 559 A.2d 1051, 1058 (R.I. 1989). In other words, a court could strike out the unreasonable part of a non-compete to make it enforceable. For example, if the geographic scope of the non-compete was defined by listing counties it encompassed, and the scope was overbroad, the Court could strike out the offending unreasonable counties from the list. The Non-compete at issue is plainly overbroad and it is impossible to strike out the unreasonable portion and have a grammatically meaningful restriction.

Under Durapin, Rhode Island law provides that this Court may reform an unreasonable business or transactional non-compete pursuant to the partial enforcement

[2] Courts in the First Circuit presented with restrictive covenants containing unenforceable provisions have taken three approaches: (1) the "all or nothing" approach, which would void the restrictive covenant entirely if any part is unenforceable, (2) the "blue pencil" approach, which enables the court to enforce the reasonable terms provided the covenant remains grammatically coherent once its unreasonable provisions are excised, and (3) the "partial enforcement" approach, which reforms and enforces the restrictive covenant to the extent it is reasonable, unless the "circumstances indicate bad faith or deliberate overreaching" on the part of the employer. Ferrofluidics Corp. v. Advanced Vacuum Components, Inc., 968 F.2d 1463, 1469 (1st Cir. 1992)

approach. However, non-compete agreements in the employment context are treated differently than the same type of agreement in a business or transactional context. Specifically, while a party may sell a business and include a non-compete provision in the asset purchase agreement or stock purchase agreement, a non-compete in that context merely creates issues concerning restraint of trade and a potential effect on the public. In addition, the purchaser may be buying good will associated with an individual, especially when the sale concerns a small non-public corporation. However, when applied to an individual employee, a non-compete limits the employee's ability to earn a living and, in this case, support his family. See, e.g., North Shore Dye House, Inc. v. Rosenfield, 53 R.I. 279, 287; 166 A. 346, 349 (1933).

The Supreme Court of Rhode Island has long held that covenants not to compete in the employment area must be treated much more critically than a restrictive covenant created in connection with the sale of a business. The Supreme Court held:

> In many jurisdictions such agreements have been held to stand on a different basis from one where the respondent for an adequate consideration sells the good will of his business. In some cases the agreement has been held void or voidable for lack, or for inadequacy, of consideration. In § 1643 of his work on contracts, Williston says: "Courts are less disposed to sustain an agreement which forms part of a contract of employment to refrain from subsequently engaging in competitive occupation than where a similar agreement is attached to a contract of sale."

Id.

Contrary to plaintiff's arguments, Durapin was not an employment case and it applies only by analogy to employment cases. Specifically, in Durapin, the Rhode Island Supreme Court examined under what circumstances a court can fix an unreasonable non-

compete. The Durapin court rejected the "all or nothing" approach and the "blue pencil" approach in a business context but not in an employment context. Durapin had entered into a distributorship agreement with American Products that contained a non-compete provision. In analyzing this provision, the Supreme Court "adopt[ed] the partial – enforcement approach rather than the blue-pencil doctrine." Id. at 1059.

Demonstrating its limited applicability to employment cases, the Rhode Island Supreme Court applied the blue pencil approach in an employment related case. In Cranston Print Works Co. v. Pothier, 848 A.2d 213 (2004), the court examined the reasonableness of a non-compete in a settlement agreement with a former employee of Cranston Print Works. The non-compete at issue there did not contain a geographical or temporal limitation, and the court indicated that the provision may be unreasonable. Id. at 220. The Court then remanded the case to the trial court, instructing the "hearing justice" below to apply a "free hand to take a 'blue pencil'" to the non-compete, "if necessary." Id. Plainly, the Rhode Island Supreme Court did not instruct the lower court to apply the partial enforcement approach.

The Court cannot blue pencil the Non-compete at issue. As stated above it is overly broad and unreasonable. There is no portion of it that can be stricken to make the clause reasonable. Over twenty years, Carbone had the opportunity to pay Mr. Regan money in exchange for signing a new non-compete. It did not do so. It cannot rescue its fatal error at this late day. For this reason, the Motion for Preliminary Injunction should be denied.

**A. Under Connecticut Law, The Non-Compete Is Unenforceable**

Defendant has articulated at length in Defendants' Memorandum In Support of Motion to Dismiss or Transfer why the Court should apply Connecticut law. See pp. 19-21. These arguments are incorporated herein as if fully set forth. Like Rhode Island, Connecticut is a blue pencil state and for the same reasons set forth above, the non-compete is unenforceable because it is impossible to blue pencil this agreement. See Beit v. Beit, 135 Conn. 195, 205 (Conn. 1948) (adopting blue pencil rule and finding that partial enforcement rule would require the court "to make an agreement for the parties into which they did not voluntarily enter."). For this reason as well, the Motion for Preliminary Injunction should be denied.

**II. The Non-compete Was Not Supported By Adequate Consideration**

Quoting Durapin, plaintiff admits that it must demonstrate that Mr. Regan received adequate consideration for entering into the Non-compete. See P. 7, Plaintiff's Memo of Law. The evidence will show that Carbone, rather than Regan, received most of the consideration at the commencement of their employment relationship. The evidence will show that Mr. Regan has been paid solely by commission. When he accepted his employment with Carbone over twenty years ago, he brought all of his customers with him. The evidence will show that most of the sales in his territory when he joined were attributable to customers Mr. Regan brought with him. The evidence will also show that Mr. Regan received approximately the same commission at Carbone as he did when he worked at his prior employer. Carbone received a huge windfall when it hired Mr. Regan. He had his own clients and created a substantial presence for Carbone in his territory. Regan received no additional consideration for entering into the Non-

compete. In sum, Carbone enjoyed a substantial windfall and Mr. Regan, who was not represented by counsel when he signed the Non-compete, received little in exchange.

There is no Rhode Island precedent that would address whether the consideration Mr. Regan received was adequate. However, the evidence will show that substantially all of the benefit went to Carbone, not Regan.

**III. The Balance of the Equities Favor Mr. Regan**

The evidence will show that plaintiff has incorrectly characterized the events leading to Mr. Regan's resignation and the statements he made when he resigned. The evidence will also show that Carbone repeatedly decreased Regan's compensation such that it became difficult for him to support his family. As a result, he was forced to leave his job. The evidence will also show that Mr. Regan, contrary to plaintiff's filings, did not tell Carbone that he was going to retire. Importantly, the balance of the equities favors Mr. Regan because he will be unable to support his family.

While most unemployed former employees confronting a non-compete face financial hardship, in this case the hardship will be punitive. Mr. Regan has spent his entire life selling floral products in Connecticut and part of New York. He is now sixty years old and is the sole wage earner in his family. He lives in rural Vermont. The economy is in recession and finding employment is very difficult. He was not a highly compensated employee by Carbone; so he has no savings either for retirement or to live on. There is no other territory available for him at his new employer. There are few jobs near his place of residence, and he has been unable to find an unskilled job farther away that can justify the cost of commuting. In sum, if the Non-compete is enforced, he and his wife will have no income and are likely to become destitute.

In addition, Carbone repeatedly violated 21 V.S.A. § 344 when it illegally withheld funds from Mr. Regan's paycheck. Section 344 prohibits an employer from requiring an employee to assign his wages to his employer as a condition of employment. Regan lived in Vermont and Vermont taxes were taken out of his paycheck. Carbone unilaterally removed funds from his compensation because it contended that Regan was using too much gas. The evidence will show that he lived approximately an hour or less drive time from the edge of his territory.

If the Court is inclined to enforce the Non-compete and believes that it may rewrite the Non-compete, it should do so equitably and give Mr. Regan a portion of his old territory. For example, if he were permitted to sell product to his former customers in New York, he could potentially earn enough to meet his basic needs until July, 2009, when the Non-compete would expire. The New York area is a small part of his territory and at the outer edge of Carbone's sales area. Carbone has presumably hired a new salesperson who is selling products in that area for the past month. It will continue to do so. Carbone benefited greatly from its relationship with Mr. Regan. He brought customers to them in 1988 for which he was not compensated except by the commissions on his sales. Carbone did not pay him for this good will. Moreover, Carbone unilaterally reduced his commission. The balance of the equities favor Mr. Regan and if the Court is inclined to re-write the Non-compete, Mr. Regan submits that the Court should take these circumstances into account.

**CONCLUSION**

For the forgoing reasons, the Court should deny the Motion for Preliminary Injunction.

Respectfully submitted,

TIMOTHY J. REGAN and ASSOCIATED WHOLESALE FLORIST, INC. d/b/a Associated Wholesale Florist of New Jersey

By their attorneys

WINOGRAD, SHINE & ZACKS, P.C.

By: /s/ S. Michael Levin
S. Michael Levin, Esq. (#3796)
Winograd, Shine and Zacks, P.C.
123 Dyer Street
Providence, RI 02903-3980
Phone: 401-273-8300
Fax: 401-272-5728
mlevin@wszlaw.com

NEUBERT, PEPE & MONTEITH, P.C.

By: /s/ Simon I. Allentuch
Simon I. Allentuch, Esq. (Pro Hac Vice)
195 Church Street
New Haven, CT 06510
Phone: 203-821-2000
Fax: 203-821-2009
sallentuch@npmlaw.com

Date: August 29, 2008

**CERTIFICATION**

I hereby certify that August 29, 2008, a copy of the foregoing, was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ S. Michael Levin