UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THE R.J. CARBONE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>TIMOTHY J. REGAN &<br>ASSOCIATED WHOLESALE<br>FLORIST, INC. d/b/a Associated<br>Wholesale Florist of New Jersey,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | C.A. NO. 08-291 S |

**<u>STIPULATIONS OF FACT</u>**

The parties to this action stipulate to the following facts:

1. Plaintiff Carbone is a Rhode Island corporation with its principal place of business at One Goddard Drive, Cranston, Rhode Island.

2. Defendant Timothy J. Regan ("Regan") resides at 2608 Route 144, Benson, Vermont.

3. Defendant Associated Florist Supply Incorporated, referred to as Associated Wholesale Florist, Inc. d/b/a Associated Wholesale Florist of New Jersey ("Associated"), is a New Jersey corporation, with its principal place of business at 320 West Passaic Street, Rochelle Park, New Jersey.

4. Carbone is a wholesale florist that has been operating since 1953. It is a family-run business with approximately 140 full and part-time employees.

5. The wholesale florist market is characterized by competition for customers.

6. Carbone endeavors to identify and market to retail florists with good credit and the highest volume of purchases.

7. Carbone works to distinguish itself from other competitors by the variety and uniqueness of the products it offers as well as by its pricing of those products.

8. Carbone invests time and resources to learn and anticipate customer buying patterns and preferences, so that it can most efficiently and effectively anticipate and fill customer's needs.

9. Part of Carbone's business is the sale of Christmas greens.

10. Carbone works to identify and develop customers, in addition to florists, for its Christmas greens and related holiday products. Such customers are not limited to retail florists.

11. Carbone develops and maintains information about its customers, including their identity, their product preferences and purchasing patterns regarding Carbone's products.

12. Carbone provides sales, pricing and customer information to its employees only on as-needed basis.

13. Carbone requires its key employees, including all its sales personnel, as a condition of employment with Carbone, to execute an agreement not to disclose confidential information and not to compete with Carbone for a period of one year after employment.

14. Defendant Regan joined Carbone on or about May 31, 1988, as a salesperson.

15. At the time he accepted Carbone's offer of employment, Regan executed an agreement with Carbone in Rhode Island. A true copy of the agreement is Plaintiff's Exhibit 3.

16. Prior to being hired, Regan was interviewed twice in Rhode Island.

17. At the time he was hired, Regan lived in Middlebury, Connecticut.

18. Regan's employment responsibilities at Carbone included selling floral supplies and Christmas greens to retail florists, greenhouses and garden shops.

19. Regan's geographic sales territory was all of Connecticut west of Groton, Connecticut and a portion of eastern New York around the Hudson River and adjacent to the Connecticut border. Regan also serviced some customers in Massachusetts and Vermont.

20. Throughout his employment, Regan submitted all product orders to Carbone's offices in Rhode Island. The orders were processed, filled and shipped by Carbone from Rhode Island.

21. Regan was in almost daily contact with Carbone's offices in Rhode Island.

22. As a Carbone employee, Regan's compensation and benefits package were provided from and administered in Rhode Island.

23. As a sales representative, Regan was intimately familiar with (a) the selling prices of Carbone's products in his territory; (b) Carbone's active customers in his territory; and (c) the product preferences and purchasing history of Carbone products by Carbone's customers in his territory.

24. As a sales representative, Regan was furnished with and used Carbone's marketing and selling price information.

25. Regan received weekly commission reports from Carbone which listed his sales.

26. On or about July 19, 2008, Regan verbally notified Thomas J. Carbone, Vice President of Carbone, that he "had enough." Mr. Carbone told Regan to take some time off to think about his decision.

27. On July 21, 2008, Regan left his company vehicle at a customer's business in Connecticut and phoned Carbone's sales manager, Stuart Cohen, to tell him he was quitting and to inform Cohen about where he had left the Carbone vehicle.

28. Very soon after leaving Carbone, Regan went to work for Associated.

29. Associated hired Regan based on his experience and contacts in the industry.

30. Associated expected that Regan would open doors with customers in Connecticut and New York.

31. Regan did not tell Carbone that he intended to work for Associated.

32. On and around July 21, 2008, Regan contacted customers in New York and Connecticut with whom he worked while at Carbone to inform them that he had left Carbone and that he would be contacting them in the future.

33. The customers Regan contacted were all within 100 miles of Hartford Connecticut.

34. On July 22, 2008, Regan received a letter dated July 21, 2008, a true copy of which is Plaintiff's Exhibit 4.

35. By overnight letter dated July 22, 2008, Carbone sent Associated a letter indicating that Regan was bound by the Agreement not to compete with Carbone. Carbone also

informed Associated about the non-disclosure covenant of the Agreement as described in paragraph 13 herein.

36. The document introduced as Plaintiff's Exhibit 1 is a list of customers with whom Regan worked during his employment with Carbone.

37. Carbone believes Regan still has commission or sales reports.

38. It is common for floral retailers to buy products from different wholesalers.

39. It is common for floral retailers to buy some of the same products from different wholesalers.

40. Regan did not have information regarding Carbone's profit margin, its costs to purchase products he sold for Carbone or how Carbone determined its pricing.

41. Regan was not involved in determining what products Carbone would carry or how Carbone determined its pricing.

42. Carbone set different prices for the same product depending on the sales territory.

43. Regan had no information about Carbone's prices to customers other than the information Carbone provided him for the customers in his territory.

44. Regan returned to Carbone the reports for Christmas 2007 greens.

45. Carbone transferred customers Regan was servicing in Vermont to another salesperson.

THE R. J. CARBONE COMPANY

/s/ Stacey P. Nakasian

Stacey P. Nakasian, Esq. (#5069)
Duffy, Sweeney & Scott, Ltd.
One Turks Head Place
Providence, Rhode Island 02903
(401) 455-0700
(401) 455-0701 (Fax)

TIMOTHY J. REGAN and ASSOCIATED WHOLESALE FLORIST, INC. d/b/a Associated Wholesale Florist of New Jersey

/s/ S. Michael Levin

S. Michael Levin, Esq. (#3796)
Winograd, Shine & Zacks, P.C.
123 Dyer Street
Providence, RI 02903
(401) 273-8300
(401) 272-5728

Simon I. Allentuch, Esq. (pro hac vice)
Jarod F. Proto, Esq.
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
P.O. Box 1940
New Haven, CT 06509

Dated: September 11, 2008