UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| THE R.J. CARBONE COMPANY,<br>Plaintiff,<br><br>v.<br><br>TIMOTHY REGAN and ASSOCIATED<br>WHOLESALE FLORIST, INC., d/b/a<br>Associated Wholesale Florist of<br>New Jersey,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 08-291 S |

**DECISION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

This matter is before the Court on Plaintiff R.J. Carbone Company's ("Carbone") motion for a preliminary injunction and Defendants' motions to dismiss or transfer for lack of personal jurisdiction, improper venue, and failure to state a claim with respect to R.I. Gen. Laws § 6-41-1. Carbone seeks to bar former employee Timothy Regan ("Regan") from working in his prior sales territory for competitor Associated Wholesale Florist, Inc. ("Associated"). The Court heard testimony over several days, and considering the record as well as the parties briefs and argument, the Court concludes that personal jurisdiction is present regarding Defendant Regan, but not Associated. The Complaint is thus DISMISSED as to Associated, and Regan's motion to dismiss for lack of personal jurisdiction and improper venue is DENIED. The Court declines to transfer the case or dismiss Carbone's Rhode Island statutory claim, but does DISMISS Count VII under Connecticut law.

Finally, the Court GRANTS Carbone's motion for an injunction on the terms set forth below.

I.   BACKGROUND

Carbone is a family-owned wholesale floral distributor headquartered in Rhode Island and operating throughout New England since approximately 1953.   Regan is an individual residing in Vermont who has over 40 years experience in the floral industry. On or about May 31, 1988, Regan joined Carbone as a salesman.   In a signed employment agreement similar to that which Carbone requires of all its key employees, including salespersons, Regan agreed (a) not to compete with Carbone for one year within 100 miles of Hartford, Connecticut, and (b) not to divulge Carbone trade secret or proprietary information during or after his employment.   With Carbone, Regan serviced all of Connecticut west of Groton, a portion of eastern New York and, at one time, some areas in Massachusetts and Vermont.   He had a consistent customer base that included some retail florists to whom he had sold prior to joining Carbone in 1988.   On or about July 21, 2008, Regan left Carbone and soon went to work for Associated, a New Jersey floral distributor that had not previously sold to customers in Regan's Connecticut territory.[1]   Regan testified that he took orders from at least two customers whom he had previously serviced on behalf of

_____

[1] There is a dispute over whether Regan indicated to Carbone that he was retiring or quitting, but the Court need not resolve that factual question for purposes of this decision.

Carbone.  On or about August 4, 2008, Carbone sued in state court for a temporary restraining order and injunction barring Regan from violating the agreement.  Defendants removed, and on August 8, 2008 this Court temporarily enjoined Regan from soliciting customers with whom he worked while at Carbone and from using any confidential information.

II.  DISCUSSION

A.   Personal Jurisdiction

Carbone has the burden of establishing personal jurisdiction over both Regan and Associated.  Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).  The Court considers Carbone's jurisdictional facts on a prima facie standard, accepts properly documented evidentiary proffers as true, and construes the facts in the light most favorable to its jurisdictional claim.  Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 45 (1st Cir. 2002); Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).  Because Rhode Island's long-arm statute extends to that allowed under the Fourteenth Amendment, the Court turns to familiar due process analysis for specific personal jurisdiction.[2]

The "minimum contacts" inquiry first involves whether Carbone's claims relate to or arise out of Defendants' contacts

---

[2] Carbone does not make a general jurisdiction argument for either Defendant, and the Court finds none.

with Rhode Island.  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  Second, the Court examines whether the contacts constitute purposeful availment of the benefits and protections of Rhode Island law.  Sawtelle, 70 F.3d at 1389.  If the answer to both questions is yes, the Court analyzes the reasonableness of exercising jurisdiction.  Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999) (describing Gestalt "fairness" factors for third prong).  Questions of specific jurisdiction are always tied to the particular claims asserted. Id. at 289.

      1.   Regan

    Regan's nexus with Rhode Island is sufficiently close for the Court to exercise personal jurisdiction.  His employment relationship with Carbone and the tort and contract claims at issue here have revolved around Rhode Island for twenty years.  At minimum, the parties agree that Rhode Island is where he interviewed, signed his employment agreement, submitted customer product orders, and had almost daily contact with Carbone's offices.  The absence of Rhode Island customers does not diminish the quality of Regan's ongoing in-state employment ties, which go beyond a "single commercial contact" and demonstrate that he purposefully availed himself of Rhode Island law.  Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928 (1st Cir. 1985) (nonresident contract with forum state resident alone is not necessarily

sufficient for specific jurisdiction). Although perhaps inconvenient, it would not be unduly burdensome for Regan to litigate in Rhode Island. He has continued to travel to Connecticut and New York for his sales calls and new employment since moving from Connecticut to Vermont; being present in Rhode Island for this litigation poses no greater burden. Finally, Rhode Island has a sufficient interest in resolving this dispute between a Rhode Island company and its former employee.

       2.  Associated

Carbone concedes that Associated has no business presence in Rhode Island, is not a party to the agreement, and had no contact with Carbone or Regan here. It nonetheless urges the Court to exercise jurisdiction because Associated allegedly targeted its out-of-forum tortious acts at Rhode Island, and this interference affected Carbone's "bottom line." Even with the benefit of the prima facie standard, however, this argument fails.

The "effects test" Carbone posits is narrowly construed and disfavored in this Circuit. See, e.g., United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 624 (1st Cir. 2001) (limiting to defamation cases and noting application to tort and contract is unclear); Mass Sch. of Law, 142 F.3d at 36 ("We have wrestled before with this issue of whether the in-forum effects of extra-forum activities suffice to constitute minimum contacts and have found in the negative."). There is no deliberateness to whatever

tenuous relationship Associated has with Rhode Island as Regan's new employer. Any "at home" impact due to alleged interference in Connecticut or New York or New Jersey does not create a meaningful connection with Rhode Island, such that Associated could foresee being haled into this forum. Given its lack of offices or contacts or sales in Rhode Island, Associated's burden of appearing is not insubstantial. And, unlike with Regan, Rhode Island has a minimal interest in exercising jurisdiction over a company that never purposefully reached into the state to conduct <u>any</u> economic activity, much less the tortious activity at issue here.

B.    Venue and Transfer

Because the Court finds that it has personal jurisdiction over Regan but not over Associated, and dismisses the Complaint against Associated, venue is proper in this diversity action under 28 U.S.C. § 1391(a)(2) or (3). The Court declines to exercise its discretion to transfer for convenience under 28 U.S.C. § 1404(a). This is an interstate matter, and without a compelling reason to select New York or Connecticut, the Court will not substitute its judgment for Carbone's as to where the litigation should most appropriately occur.

C.    Preliminary Injunction

To obtain a preliminary injunction, Carbone must show (1) it will likely succeed in its case against Regan; (2) that irreparable harm would result if the injunction were denied; (3) that the

balance of equities favors it; and (4) that the status quo should be preserved. See Leone v. Town of New Shoreham, 534 A.2d 871, 873 (R.I. 1987). Likelihood of success is the critical factor. See Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993) (first factor is the "sine qua non" of the test).

To succeed on the merits and enjoin Regan, Carbone must prove that (1) the provision is ancillary to an otherwise valid transaction or relationship; (2) the provision is supported by adequate consideration; and (3) it has a legitimate interest that the provision is designed to protect. Durapin, Inc. v. Am. Prods., Inc., 559 A.2d 1051, 1053 (R.I. 1989). The first requirement is undisputed, and requires no discussion. As to the second, Regan's continued employment provides adequate consideration to support the agreement. See Nestle Food Co. v. Miller, 836 F. Supp. 69, 77 & n.32 (D.R.I. 1993) (continuation of salesman's employment adequate consideration for non-compete agreement). Thus, the real controversy is the legitimacy of the interest that the contract seeks to protect.

Carbone's primary concern is losing the goodwill that Regan developed. See Nestle, 836 F. Supp. at 75 (special relationship salesmen create with customers was protectable goodwill for employer). The fact that Regan brought some customers to Carbone in 1988 does not eliminate its interest today. Regan cultivated these relationships using the Carbone name, its products, services,

prices, deliveries, etc.   He testified that one advantage in his territory was knowing most of his current customers on a personal level, and being able to slide in the "back door" for sales calls. Even if a new salesperson memorized the details of Carbone's thousands of products, Carbone has lost its friendly foothold, at least for those customers with whom Regan had recent personal contact.   Among competing distributors with similar products and pricing, this is not insignificant.   Carbone may safeguard that goodwill for a reasonable amount of time to give a new salesperson an opportunity to create a relationship.   This is not to suggest that Carbone has a right to match the special bond Regan has developed over 20 years; indeed, it would be hard pressed to do so. But, Carbone's interests warrant some protection through a narrowed enforcement of Regan's agreement.   See Leone, 534 A.2d at 874 (loss of goodwill may constitute irreparable harm for which there is no adequate legal remedy).

By all accounts, Regan was a successful salesman who took with him years of knowledge about customer location, preferences, unique patterns, and ordering history.   While pieces of this may be public,[3] it is, to some extent, confidential and proprietary

---

[3] Customer related information generally is not protectable unless it is confidential and proprietary; i.e., not readily ascertainable through independent investigation or ordinary business channels.   See Home Gas Corp. of Mass., Inc. v. DeBlois Oil Co., 691 F. Supp. 567, 574-575 (D.R.I. 1987) (competitors could not obtain additional "trade information" about customers such as product use and credit history through ordinary means).   Testimony

customer information Regan acquired while at Carbone that is not readily available to competitors like Associated through ordinary business means. See Rego Displays, Inc. v. Fournier, 379 A.2d 1098, 1102 (R.I. 1977) (enjoining employee from soliciting former customers due to special knowledge of customer needs). Because needs and preferences undoubtedly change, however, this information quickly can become outdated and may not have as much long term value as Carbone suggests. Id. at 1102-03. Nevertheless, the testimony established that Regan does possess some current proprietary customer information of which Carbone's competitors, including Associated, are not aware. It is appropriate to enforce the agreement to protect this information.

The next inquiry is whether the agreement between Regan and Carbone, as drafted, is reasonable. The Court will uphold it only insofar as is necessary to protect the specific interests described above - the goodwill and, to a lesser degree, confidential customer information. Durapin, 559 A.2d at 1053. Reasonableness turns on: (1) whether the provision is narrowly tailored to protect the legitimate interests; (2) whether it is reasonably limited in

---

by Thomas Carbone and Regan revealed knowledge of something more than simply a list of florists from the phonebook. For example, Regan testified that learning whether a customer is "worth it" often requires spending time with the customer and continuously going to the retail locations. Regan's approximately 250 customers were identified over time as worthwhile based on their purchasing history, consistent sales volume, good credit, and accessible locations. The parties stipulated that Regan was "intimately" familiar with this type of information.

activity, geographic area and time; (3) whether the promisee's interests are not outweighed by the hardship to the promisor; and (4) whether the restriction is likely to injure the public.[4] Nestle, 836 F. Supp. at 75. Regan's agreement is acceptable as to activity and time, as Carbone presented sufficient evidence that one year is an appropriate period within which a new salesperson can re-enter the territory. Id. (year restriction reasonable). However, as Carbone essentially conceded, the geographic scope is overbroad because the 100 mile radius needlessly includes potential customers to whom Regan never sold, and prior customers to whom he has not recently sold.

Regan contends that the Court may not reform the agreement but must strike it down as unenforceable unless it can "blue-pencil" the document to omit the unreasonable portion, which, Regan says, cannot be done here without rendering the remaining document meaningless. But this misstates the law in Rhode Island, and absent bad faith or deliberate overreaching, the Court may modify and reasonably enforce the agreement.[5] See Durapin, 559 A.2d at 1058-59 ("this is the appropriate time to choose the route that

---

[4] Neither party focused its argument on this public injury factor.

[5] The choice of law issue is addressed in part D herein. Despite argument to the contrary, Regan seems to recognize that the agreement "could be enforceable under Rhode Island law since its non-competition law permits the court to modify the terms." Document No. 18, Defendants' Motion to Dismiss or Transfer, p.2.

permits unreasonable restraints to be modified and enforced, whether or not their terms are divisible"); <u>Cranston Print Works Co. v. Pothier</u>, 848 A.2d 213, 220 (R.I. 2004) (unlimited geographic restriction "should be tailored by the court to a narrower fit if the . . . legitimate commercial interests warrant[] such a resizing"); <u>Nestle</u>, 836 F. Supp. at 78 (court may modify and enforce an agreement as reasonably necessary to protect legitimate interests).[6]

Finally, the potential hardship from Regan's limited savings and need to earn a living do not outweigh Carbone's protectable interests after 20 years. While the restraint as modified temporarily cuts off most prior customers to whom Regan recently sold, it leaves open other geographic regions and opportunities for new business development on behalf of Associated, difficult as it may be for Regan to become the new salesman on the block.

D.   Choice of Law

The parties raise two choice of law issues. The first involves modification of the agreement and the second is the claim under R.I. Gen. Laws § 6-41-1 <u>et seq</u>. and its broader parallel in

---

[6] The Court rejects the contention that the concluding "blue-pencil" direction in <u>Cranston Print Works</u> overruled an unambiguous announcement of the partial enforcement rule. <u>See</u> <u>Durapin</u>, 559 A.2d at 1059 ("[i]n choosing to adopt the partial-enforcement approach rather than the blue-pencil doctrine. . ."). Simply referring to the "blue pencil" term of art, given its varying meanings, does not make it so, especially where the court described partial enforcement both before and after it used the term.

Count VII, Conn. Gen. Stat. § 42-110a et seq.  Applying Rhode Island choice of law principles to this diversity case, with no choice of law provision in the agreement, Rhode Island law applies under the "interest weighing" test and as the place of contract. See Crellin Techs., Inc. v. Equipmentlease Corp., 18 F.3d 1, 4 (1st Cir. 1994) (collecting state cases).  While Connecticut has a relationship to this case because of Regan's customer base, it does not have the most significant interest, outweighing that of Rhode Island. See Taylor v. Mass. Flora Realty Inc., 840 A.2d 1126, 1129 (R.I. 2004).  Carbone may maintain its Rhode Island trade secret statutory claim, but it cannot have it both ways; the Connecticut unfair practices statutory claim is thus dismissed.

III. CONCLUSION

For the foregoing reasons, this Court holds as follows:

1.  Carbone's motion for preliminary injunction is GRANTED and it is hereby ORDERED:

a)  Timothy J. Regan and those in active concert or participation with him, are enjoined and restrained from (i) soliciting current Carbone customers (customers which Carbone has invoiced within the past 24 months from the date of this Order) with whom Regan worked during his employment at Carbone; and (ii) using any confidential information about recent Carbone customers that Regan derived from his employment at Carbone for any purpose, including to personally solicit or assist others in soliciting

current Carbone customers in the sales territory in which Regan worked (most of Connecticut, and part of New York).

b)    The parties shall consult and, if necessary, modify the Carbone Customer List previously prepared in these proceedings and introduced as Plaintiff's Exhibit 1 so it reflects only current Carbone customers (as defined above) with whom Regan worked.  Regan and his counsel shall not (i) disclose, discuss or disseminate any information in the Customer List with or to any person or entity (other than each other) including, but not limited to, Associated Wholesale Florist, Inc.; or (ii) use the information in the Customer List for any purpose other than compliance with this injunction.

c)    If Regan or Carbone dispute whether customers on the Customer List are or are not current Carbone customers with whom Regan worked, the parties shall confer and, if unable to resolve the dispute themselves, notify this Court.

d)    Unless otherwise modified by the Court, this Order will remain in effect until July 21, 2009, after which the obligation and restriction described herein will no longer be in effect.

e)    Regan shall return to Carbone or its counsel all Carbone property and documents in his custody or control, and shall have a continuing obligation to do so in the event he locates

additional documents, including sales and commission reports, during the period this injunction remains in effect.

2.    Defendants' motion to dismiss for lack of jurisdiction or to transfer is DENIED with respect to Regan but GRANTED with respect to Associated, and the complaint against Associated is DISMISSED.

3.    Defendants' motion to dismiss Count IV is DENIED.

4.    Count VII is DISMISSED.

IT IS SO ORDERED.


_____
William E. Smith
United States District Judge
Date: 10/14/08